# EXHIBIT B

1

2

3

4

5

6

7

**WASHINGTON STATE SUPERIOR COURT**
**KING COUNTY**

8

9

GEOFFREY GRAY, AARON MILLER,
BRANDON WHEELER, ADAM BOGLE,
ANDRE LYLE, BLAINE SCHIESS,
BRADLEY SAWAYA, CASEY BURNS,
CAITLYN LOMEN-CARR,
CHRISTODOULOS PANERIS, DANIEL
HJELMESETH, DAVID LAWTON,
DEBORAH FLETCHER, DONNA
TEGNELL, DYLAN BECKNER, ERIC
HANSEN, GARY GORDON, JAMES
HOWARD, JANA CRAWFORD, JAY
SARVER, JEREMY BIRCHFIELD,
JEREMY GREENE, JOE DEGROAT,
JOHN WINSTON, JORDAN LONGACRE,
JOSEPH GREENE, JUSTIN COCHRAN,
KERRY STRAWN, LARRY FROSTAD,
LYNN NOWELS, MERRIEGRACE LA
PIERRE, MICHAEL BROWN, MICHAEL
URIBE, MICHAEL WATKINS, NATHAN
KESLER, NICHOLAS AUCKLAND,
NICOLE PREZIOSI, PETER DUNCAN,
RICHARD OSTRANDER, ROBERT
WASHABAUGH, RODNEY PELHAM,
RONALD VESSEY, RYAN EUBANK,
SCOTT SCHUTT, SEAN MORGAN,
SHASTA ATKINS, SHERI FERGUSON,
SOMMER BECKNER, STACY
KATYRYNIUK, STEPHEN AUSTIN,
STEVE TURCOTT, STEVE WALKER,
TERRY DUNN, TODD HUMPHREYS,
TYLER RATKIE, WENDY PUNCH,

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CASE NO. 24-2-29324-8 SEA**

**FIRST AMENDED COMPLAINT**

JURY DEMANDED

FIRST AMENDED COMPLAINT                    1          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1  WILLIAM DUBOSE, VICTORIA
   GARDNER, BRION HOGAN, BRADY
2  TODHUNTWER, CRAIG HENRIKSEN,
   GABRIEL NEWMAN, LAVORN CHETH,
3  PAM WHORALL, MIROSLAV TSANEV,
   SHAUN BUKOVNIK, ROBERT
4  COVINGTON.

5
                              Plaintiffs,
6
7      v.

8  WASHINGTON STATE DEPARTMENT
   OF TRANSPORTATION, a Washington
9  State Agency; AMY M. SCARTON, an
   individual, KIMBERLY MONROE FLAIG
10 an individual.

11
                              Defendant.
12

13        Plaintiffs hereby sue the Defendants the State of Washington, by and through its

14 Department of Transportation (WDOT), Amy M. Scarton in her official and personal capacity,

15 and Kimberly Monroe Flaig in her official and personal capacity. Plaintiffs seek prospective

16 injunctive relief of reinstatement under Washington's Law Against Discrimination, Ch. 29.60

17 (WLAD), and damages for violating WLAD and other State law.

18

19                    **I.        PARTIES, JURISDICTION, AND VENUE**

20   1.    Plaintiffs, at all material times, are natural persons who all resided in Washington

21         during all material time to the facts alleged in this First Amended Complaint (FAC).
22

23   2.    Defendant the State of Washington is a sovereign state formed in 1889 that has

24         various administrative agencies that are part of the Governor's Cabinet, WSDOT is

25         one of those agencies.
26

3.      WSDOT employs    eight or more persons, and is not a religious or sectarian organization not organized for private profit

4.      Defendant Amy Scarton is a natural person who resides in King County, Washington.

5.      Kimberly Monroe Flaig is a natural person who conducts business in King County, Washington.

6.      This Court has subject matter jurisdiction pursuant to Article IV, §6 of the Washington State Constitution and RCW 2.08.010.

7.      One or more Defendants reside in King County, Washington.

8.      Most of the action giving rise to this action occurred in King County, Washington.

## II.      FACTS

**A.      Individual Defendants**

9.      Defendant Scarton is, and at all material times, was the appointed Deputy Secretary of WSDOT.

10.     Defendant Scarton directly participated in the acts and omissions complained of herein.

11.     Defendant Scarton had the authority to prevent the injury caused to each Plaintiff but failed to so act.

12.     Defendant Scarton, at all times relevant, was an "Employer" as defined in RCW 49.60.040.

13.     Defendant Monroe is, and at all material times, was the HR Deputy Director.

14. Defendant Monroe directly participated in the acts and omissions complained of herein.

15. Defendant Monroe explicitly expressed animus toward the religious objectors in social media posts denigrating the religious beliefs that WSDOT found to be sincere.

16. Defendant Monroe had the authority to prevent the injury caused to each Plaintiff but failed to so act.

17. Defendant Monroe, at all times relevant was acting in the interest of WSDOT.

**B.    Plaintiff Geoffrey Gray:**

18. On August 14, 2021, The Governor issued Proclamation 21-14 that imposed upon each State employee a job requirement that they be injected with the primary series of the Moderna, Pfizer, or Janssen (J&J) COVID-19 vaccine (Vaccine Requirement) or be granted an exemption from the Vaccine Requirement that the State accommodated pursuant to WLAD.

19. Plaintiff Geoffrey Gray sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

20. Plaintiff Gray is a Bible-believing, born again, child of God. A Christian indwelt by the Holy Spirit, his worldview is grounded on God's Word (the Authorized King James Bible), and he lives his life to please God, as the Spirit leads him. He believes that his body is the temple of the Holy Spirit (1 Corinthians 6:19-20) and if any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are." (1 Corinthians 3:16-17). He believes he is neither to defile the temple

of the Holy Spirit nor allow his body to be brought under the power of any food, drink, or chemical substance, including vaccines (1 Corinthians 6:12).

21.   On August 27, 2021, Plaintiff Gray submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

22.   Subsequently, Defendants requested additional information from Plaintiff Gray regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

23.   On August 31, 2021, Plaintiff Gray complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

24.   Defendants then considered Plaintiff Gray's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

25.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

26.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

27.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

28.   In fact, there was no reassignment positions available to which Plaintiff could have been transferred based on the reassignment limitations.

29.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption having not been accommodated.

**C.    Plaintiff Aaron Miller**

30.   Plaintiff Miller sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

31.   Plaintiff Miller is a Catholic Christian, and sincerely held a religious belief that life begins at conception, and God's Commandment that "Thou Shall not Murder" applied to fertilized human cells." Consistent with that religious belief, the religious practices and observances  included not receiving a single injection of any of the three COVID vaccines because they were developed or tested using cell lines derived from an aborted fetus.

32. Plaintiff Miller also sincerely held a religious belief that the human body is sacred. The religious practice and observance associated with that belief forbade introducing foreign substances, including the COVID-19 vaccine, into the sacred human body. violates his religious principles about bodily integrity.

33. On August 25, 2021, Plaintiff Miller submitted a religious exemption request form to Defendants that notified them about the sincerely held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

34. Defendants then considered Plaintiff Miller's religious exemption request, they determined a sincerely held religious belief conflicted with the ability to comply with the Vaccine Requirement, Defendants granted the religious exemption, and on September 14, 2021, they notified the Plaintiff about their decision.

35. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious practices and observances in the Plaintiff's current job because "the essential functions of [the] position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

36. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, and available job that had no job duty requiring the possibility of interactions with co-workers or the public for which Plaintiff was qualified to perform.

FIRST AMENDED COMPLAINT

7

37.    Defendants warned, however, that job reassignments were limited, and there was no guarantee that any such job was available.

38.    Based on these reassignment limitations, there was no reassignment position available to the Plaintiff

39.    Defendants sent a letter on September 27, 2021, that stated his request for a religious exemption had not been approved.

40.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**D.    Plaintiff Adam Bogle**

41.    Plaintiff Bogle sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

42.    Plaintiff Bogle accepted Jesus Christ as his personal savior as a very young child. In 2016, he became an ordained minister. Minister Bogle adheres to the tenets of faith of the Dutch Reform Church of America. Amongst his sincerely held religious beliefs is Divine providence. Accordingly, Minister Bogle sincerely held a religious belief that I Corinthians 6:19–20 and 10:31 require humans to regard their bodies as a temple of God's Holy Spirit and creator and possessor of their very bodies and that they should not defile them.

43.    Minister Bogles religious practices and observances with his beliefs are that he could not be injected with a COIVD-19 vaccine because they contained neurotoxins,

FIRST AMENDED COMPLAINT                8        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

hazardous substances, attenuated viruses, animal cells, foreign DNA, albumin from human blood, carcinogens, and chemical wastes that would defile the body. If he were to do so, then Minister Bogle could not, in good faith, counsel others about these religious beliefs.

44.   On September 13, 2021, Minister Bogle submitted a religious exemption request form that notified the Defendants about the sincerely held religious beliefs and how the conflicted with the ability to comply with the Vaccine Requirement.

45.   Defendants then considered Minister Bogle's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified Minister Bogle about the decision.

46.   In the same notice, and without further input from Minister Bogle regarding accommodating the exemption, Defendants determined they could not accommodate Minister Bogle's religious belief in Minister Bogle's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

47.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that could require interactions with co-workers or the public, and for which Minister Bogle was qualified to perform.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

48.    Defendants warned, however, that reassignment positions were limited, and there was no guarantee that any such job was available.

49.    Based on these reassignment limitations, there was no job reassignment possible for Minister Bogle.

50.    October 18, 2021, the State terminated Minister Bogle's continued public employment without his consent for not complying with the Vaccine Requirement and for the religious exemption having not been accommodated.

E.    **Plaintiff Andre Lyle**

51.    Plaintiff Lyle sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

52.    Plaintiff Lyle is a Christian. He sincerely held a religious belief that a person was required to protect their body from defilement according to God's law.

53.    Consistent with his religious belief, Plaintiff Lyle had a religious practice or observance that he could not be injected with a COVID-19 vaccine because they contained neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign DNA, albumin from human blood, carcinogens and/or chemical wastes because they would defy the body. The vaccines identified in the Vaccine requirements contained one or more of the things identified in the prior sentence and, therefore, being injected with any one of these vaccines would cause his to abandon his sincerely-held religious belief. \

FIRST AMENDED COMPLAINT                    10        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                            720 Seneca Street, Ste. 107, No. 393
                                                            Seattle, WA 98101
                                                            (206) 799-4221

54. On October 1, 2021, Plaintiff Lyle submitted a religious exemption request form that notified the Defendants about the sincerely held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

55. Defendants then considered Plaintiff Lyle's request for a religious exemption, they determined a sincerely held religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and on September 14, 2021, and they notified the Plaintiff about the decision.

56. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current job because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

57. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that could require interaction with co-workers or the public, and that Plaintiff was qualified to perform.

58. Defendants warned, however, that reassignment positions were limited, and there was no guarantee that any such job was available.

59. Based on these reassignment limitations, there was no reassignment position available to which Plaintiff could be transferred.

FIRST AMENDED COMPLAINT    11    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

60.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption having not been accommodated.

**F.    Plaintiff Blaine Schiess**

61.    Plaintiff Schiess sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

62.    Plaintiff Schiess believes in a higher power whose guidance directs spiritual understanding and religious practices, particularly concerning matters of life, health, and bodily integrity. Plaintiff sincerely held a religious belief that healing comes through prayer and divine intervention, and that a person's body should not be violated by substances that raise spiritual distress. Plaintiff

63.    Plaintiff also sincerely held a religious belief that  when something evokes fear or a sense of danger to the soul, it is a sign from God to abstain.

64.    Plaintiff sincerely held a religious belief, based on Proverbs 2:1–9, that God provides wisdom and protection,

65.    Plaintiff's religious practices or observances that emanate from these sincerely held religious beliefs include: avoiding fear-based thinking and modern medical interventions rely on thought, love, and spiritual discernment for healing. They believe, based on Proverbs 2:1–9, that God provides wisdom and protection, and that accepting the vaccine would violate their religious understanding and relationship

with God. and that accepting the vaccine would violate their religious understanding and relationship with God.

66.    On August 26, 2021, Plaintiff Schiess submitted a religious exemption request form that notified the Defendants about the sincerely held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

67.    Subsequently, Defendants requested additional information from Plaintiff Schiess regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

68.    On August 27, 2021, Plaintiff Schiess complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

69.    Defendants then considered Plaintiff Schiess's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

70.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

FIRST AMENDED COMPLAINT            13    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

71. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

72. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

73. In fact, there were no reassignment position available to the Plaintiff based on the reassignment limitations.

74. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

75. After Plaintiff Schiess' religious exemption was granted, on information and belief, approximately four different times, Plaintiff Schiess' supervisor visited him at various jobsites applying pressure to get the COVID-19 vaccine.

76. Plaintiff Schiess' supervisor asked Plaintiff to reconsider his religious beliefs and get the COVID-19 vaccine.

77. On or about September 30, 2021, Plaintiff Schiess' direct supervisor and his supervisor showed up at Plaintiff's residences unannounced and openly asked Plaintiff four or five times to change his religious beliefs and get the COVID-19 vaccine because of the negative impact it would have on the office.

78. During that conversation, Plaintiff's supervisors stated they could get Plaintiff's position changed to work from home permanently if Plaintiff could just change his religious beliefs and get the COVID-19 vaccine.

79. Plaintiff Schiess received notice of separation from Defendants effective October 18, 2021.

80. On or about October 18, 2021, Plaintiff Schiess was terminated from his job.

## G.    Plaintiff Bradley Sawaya

81. Plaintiff Sawaya sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

82. Plaintiff Sawaya is a Christian. Although not baptized as child, in 2010 at approximately 28 years old, he was baptized by Pastor Bruce Campbell of the Grace Community church and publicly professed his faith and love for Jesus. Plaintiff Sawaya was vaccinated as a child with all the usual vaccines. He did not know then what he knows now about vaccines and aborted fetal cells. He would likely never take vaccines again. But his main reason for not taking the Covid-19 Experimental MRNA gene therapy is much, much deeper and important: his reasoning was not only for the potential health dangers of this gene therapy but was more of a spiritual concern. Plaintiff Sawaya believes that the entire COVID-19 scandal was merely part of Satan's plan to lay the foundations of his "Beast System." He saw the Governor of New York stating that if you didn't take the shot, you would not be able to go anywhere, even the grocery store, no travel, etc., and he knew it was time to make a

conscious decision to stand up to Satan and say NO, by drawing a clear line in the sand, so to speak, with a decision to not take such a symbolic experimental bodily injection, which apparently gives you all this freedom to live and embrace the things of this world, which is what Jesus warns about.

83. On August 22, 2021, Plaintiff Sawaya submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

84. Subsequently, Defendants requested additional information from Plaintiff Sawaya regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

85. On August 29, 2021, Plaintiff Sawaya complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

86. Defendants then considered Plaintiff Sawaya's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

87. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

88. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

89. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

90. In fact, there were no reassignment position available to the Plaintiff based on the reassignment limitations.

91. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

92. Plaintiff Sawaya submitted a Statement of Declination of COVID-19 Vaccine Product on or about October 13, 2021.

**H.    Plaintiff Casey Burns**

93. Plaintiff Burns sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

94. Plaintiff Burns is a Baptist. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, the COVID-19 vaccines conflict with his religion because of the contents including fetal cells. Moreover, he has the religious beliefs

that his body is a temple to Jesus Christ, so anything he puts in his body must glorify Him. Corinthians 3:16-17, Cor. 6:19-20.

95. On September 2, 2021, Plaintiff Burns submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

96. Subsequently, Defendants requested additional information from Plaintiff Burns regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

97. On September 4, 2021, Plaintiff Burns complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

98. Defendants then considered Plaintiff Burns's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

99. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

FIRST AMENDED COMPLAINT                    18         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                        720 Seneca Street, Ste. 107, No. 393
                                                        Seattle, WA 98101
                                                        (206) 799-4221

100. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

101. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

102. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

103. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

104. Plaintiff Burns submitted a Reasonable Accommodation Reassignment Form on or about October 14, 2021.

I.    **Plaintiff Caitlyn Lomen-Carr**

105. Plaintiff Lomen-Carr sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

106. Plaintiff is a Jehovah's Witness In 2010, after receiving her final flu shot, she ceased to inject foreign matter into her body, due to not knowing the true ingredients of vaccines. As she tried to explain to WSDOT when COVID-19 vaccination was demanded, there was the possibility that the COVID-19 vaccines could have fetal cells, and injecting that into her body would go against her religion; and injecting

FIRST AMENDED COMPLAINT                    19        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                      720 Seneca Street, Ste. 107, No. 393
                                                      Seattle, WA 98101
                                                      (206) 799-4221

fetal cells would be similar to taking blood (which is forbidden to Jehovah's Witnesses). Ms. Lomen-Carr refuses to inject anything into her body that represents life.

107.    On September 9, 2021, Plaintiff Lomen-Carr submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

108.    Subsequently, Defendants requested additional information from Plaintiff Lomen-Carr regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

109.    On September 14, 2021, Plaintiff Lomen-Carr complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

110.    Defendants then considered Plaintiff Lomen-Carr's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

111.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

112.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

113.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

114.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

115.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**J.    Plaintiff Christodoulos Paneris**

116.    Plaintiff Paneris sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

117.    As a Christian, Plaintiff Paneris believes his body is the temple of the Holy Spirit and must be kept clean and holy in obedience to God, as taught in 1 Corinthians 6:19–20 and other scriptures. He believes the COVID-19 vaccines contain toxins, contaminants, and may involve the use of aborted fetal cell lines, all of which violate his conscience and faith. His religion requires that decisions affecting his body and

health be led by God alone, not by coercion or fear. Plaintiff's spiritual relationship with God, Jesus Christ, and the Holy Spirit is central to his faith, and maintaining a clear conscience before God is essential. Based on these beliefs, receiving the vaccine would have defiled his body and violated his religious convictions.

118.    On or about September 24, 2021, Plaintiff Paneris submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

119.    Subsequently, Defendants requested additional information from Plaintiff Paneris regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

120.    On or about September 24, 2021, Plaintiff Paneris complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

121.    Defendants then considered Plaintiff Paneris's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

122.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

123.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

124.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

125.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

126.    On or about September 28, 2021, Plaintiff Paneris went on approved medical leave, due to a non-COVID related medical condition.

127.    Due to his approved leave, Plaintiff Paneris was not terminated on October 18, 2021.

128.    On March 4, 2022, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**K.    Plaintiff Daniel Hjelmeseth**

129.    Plaintiff Hjelmeseth sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

130.    Plaintiff Hjelmeseth was raised Catholic. His faith requires obedience to God and Jesus over all things of mankind. His upbringing has instilled in him a sincere religious belief in the sanctity of human life from the moment of conception. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, as a God-fearing Christian, he believes his body belongs to God as told in 1 Corinthians 6:19-20 NIV. Because the COVID-19 vaccines were developed using aborted fetal cells, Mr. Hjelmeseth could not in good conscience ignore the fact that another God created human life was literally sacrificed in the creation of this vaccine. His faith prohibits him from participating in or benefiting from an abortion, no matter how remotely in time that abortion occurred.

131.    On August 21, 2021, Plaintiff Hjelmeseth submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

132.    Subsequently, Defendants requested additional information from Plaintiff Hjelmeseth regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

133.    On August 25, 2021, Plaintiff Hjelmeseth complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

134.    Defendants then considered Plaintiff Hjelmeseth's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to

comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

135.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

136.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

137.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

138.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

139.   On or about October 11, 2021, under duress, Plaintiff Hjelmeseth submitted his intent to retire from his job.

140.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**L.    Plaintiff David Lawton**

141.    Plaintiff Lawton sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

142.    Plaintiff Lawton is a baptized Catholic whose sincerely held religious beliefs prohibit him from receiving the COVID-19 vaccine. Plaintiff Lawton believes it is a moral obligation to reject any medical product developed or tested using abortion-derived cell lines, which he considers a violation of human dignity and conscience. Guided by Catholic doctrine and his own informed judgment, he believes the vaccine's association with unborn life is fundamentally incompatible with his faith. Mr. Lawton's convictions are grounded in a lifetime of spiritual belief, including during his decades of service in the U.S. military, and reflect both his commitment to the teachings of the Catholic Church and his personal relationship with God.

143.    On September 10, 2021, Plaintiff Lawton submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

144.    Subsequently, Defendants requested additional information from Plaintiff Lawton regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

145.    On September 11, 2021, Plaintiff Lawton complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

146. Defendants then considered Plaintiff Lawton s request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

147. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

148. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

149. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

150. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

151. On or about September 20, 2021, under duress, Plaintiff Lawton submitted his intent to retire under protest on December 31, 2021.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

152. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**M.    Plaintiff Deborah Fletcher**

153. Plaintiff Fletcher sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

154. Plaintiff Fletcher is a Christian, born and raised in a Nazarene denominational church. She accepted God's gift of Jesus being her Savior and taking her place of punishment when she was five. As she grew older, she learned how to hear from the Holy Spirit through His Word, other disciples of Jesus Christ, and in her own being. She believes that Jesus is the essence of life, is everywhere, created everything, knows all things, and gives us the very air that we breathe, and that Jesus took our place, knowing we couldn't live a perfect life nor pay for our innumerable sins that go against God's perfect way of living. Therefore, she serves Him to the best of her ability, out of pure gratitude and love for what He has done for her. Ms. Fletcher's faith requires obedience to Him and what He has told mankind in the Bible. That includes the Bible's teachings against the taking of a human life. Therefore, as she tried to explain to WSDOT when COVID-19 vaccination was demanded, she cannot condone or benefit from anything having to do with taking a human life. Ms. Fletcher understands that the manufacturers of the COVID-19 shots used aborted fetal cell lines as part of their development and/or testing of the vaccines. Her faith prohibits her from participating in or benefiting from an abortion, no matter how remotely in

28    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

time that abortion occurred, therefore, she is morally opposed to vaccines which derive from aborted fetal tissues. Also, she prayed to God asking for direction regarding the COVID-19 "vaccination" requirement, and the Holy Spirit moved on her heart and conscience that she must not accept the COVID-19 shot. If she were to go against the moving of the Holy Spirit, she would be sinning and jeopardizing her relationship with God.

155.    On August 30, 2021, Plaintiff Fletcher submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

156.    Subsequently, Defendants requested additional information from Plaintiff Fletcher regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

157.    On September 1, 2021, Plaintiff Fletcher complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

158.    Defendants then considered Plaintiff Fletcher's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

159.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate

Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

160.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

161.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

162.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

163.    Plaintiff submitted a Reasonable Accommodation Reassignment Form on or about September 16, 2021.

164.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**N.    Plaintiff Donna Tegnell**

165.    Plaintiff Tegnell sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

166.    Plaintiff Tegnell is a Christian whose sincere religious beliefs prohibit her from receiving any mRNA COVID-19 vaccines due to it use of aborted fetal cell lines,

FIRST AMENDED COMPLAINT          30     **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

which she believes violates God's commandments against murder and defiles her obligation to honor God through her body. She has spent considerable time in prayer and study of scripture and is convicted by the Holy Spirit that receiving an mRNA vaccine would be a sin. Plaintiff Tegnell believes accepting such a vaccine would directly conflict with her duty to follow God's law and not man's mandate. While she is not categorically opposed to all vaccines, expressing willingness to take Novavax, a non-mRNA vaccine without fetal cell lines, she cannot, in good conscience, accept an mRNA vaccine and requested reasonable accommodation from her employer based on these sincerely held religious beliefs.

167. On September 13, 2021, Plaintiff Tegnell submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

168. Defendants then considered Plaintiff Tegnell's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

169. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

170. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

171. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

172. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

173. Plaintiff stated she would like to wait for the Novavax, a non mRNA vaccine,

174. Upon being made aware of a Facebook post by WSDOT/WSF Human Resources Deputy Director that Kimberly Monroe Flaig, which stated, "Those who choose not to vax in the name of stupidity can stand in line to get paid for their shot after they no longer have a paycheck to cash," Plaintiff Tegnell, who had submitted a religious exemption and requested accommodation while awaiting availability of a non mRNA vaccine, Novavax, requested a *Loudermill* hearing and sought to use her FMLA as a temporary solution while she awaited Novavax to be ready for distribution in the United States.

175. This comment made by the Human Resources Director at WSDOT/WSF, caused Plaintiff Tegnell concern that individuals asserting religious objection to the vaccine were being publicly mocked or targeted, and that her job was in jeopardy.

176.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**O.    Plaintiff Dylan Beckner**

177.    Plaintiff Dylan Beckner sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

178.    Plaintiff Dylan Beckner has always believed in God. From a young age, his grandmother played a central role in shaping his faith by instilling in him the importance of prayer, trusting in God's plan, and living according to the teachings of their religion. Her spiritual guidance laid the foundation for his lifelong relationship with God, and her influence continues to anchor his conscience and decisions. Based on these sincerely held religious beliefs, Plaintiff Dylan Beckner objected to receiving a COVID-19 vaccine that he believes would violate that spiritual foundation and his obligation to honor God's design for his body and life

179.    On September 8, 2021,Plaintiff Dylan Beckner submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

180.    Defendants then considered Plaintiff Dylan Beckner's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

181.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

182.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

183.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

184.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

185.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**P.    Plaintiff Erik Hansen**

186.    Plaintiff Hansen sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

187.    Plaintiff Hansen is a Christian. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, Mr. Hansen believes that human blood is sacred, and life

is found in the blood, that salvation was purchased by the spilt blood of Jesus Christ, and that the body is the temple of the Holy Spirit and as such, should not be used for medical treatment that is experimental and has unknown side effects. 1 Corinthians 6:19-20. Furthermore, fetal cell lines were used during the research, development, and testing of the vaccine, which goes against Mr. Hansen's religious and personal views about abortion.

188. On September 20, 2021, Plaintiff Hansen submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

189. Defendants then considered Plaintiff Hansen's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

190. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

191. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job

duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

192.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

193.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

194.    On or about October 7, 2021, Plaintiff Hansen requested a *Loudermill* hearing.

195.    HR Deputy Director Monroe responded that Plaintiff Hansen would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

196.    On or about October 13, 2021, based upon Deputy Monroe's Facebook post described above, and the fact that Monroe's religious exemption letter misstated Plaintiff Hansen's job, Plaintiff Hansen requested someone else evaluate his accommodation request.

197.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## Q.    Plaintiff Gary Gordon

198.    Plaintiff Gordon sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

199. Plaintiff Gordon is a Christian. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, the human body is the temple of God and the Spirit of God dwells within. (1 Corinthians 3:16). Therefore, as a religious necessity, Mr. Gordon cannot take anything into his body that contains or used fetal line cells in its creation or testing, since he considers abortion to be murder, which is forbidden. (Deuteronomy 5:17). He learned that the COVID-19 vaccines were created with the use of fetal line cells, cells from an aborted baby. Specifically, the Pfizer and Moderna COVID-19 vaccines used fetal cells for proof of concept during early development of mRNA vaccine technology; and the Johnson & Johnson non-replicating viral vector vaccine required the use of fetal cell cultures in order to produce and manufacture the vaccine. Mr. Gordon believes strongly in the sanctity of life as it is the Sixth Commandment, "You shall not murder" (Exodus 20:13). It is his sincere belief that God knew us before we were born, "Thus says the LORD who made you and formed you from the womb..." (Isaiah 44:2); "...The LORD has called me from the womb; from the matrix of my mother He has made mention of my name." (Isaiah 49:1); "Before I formed you in the womb I knew you; before you were born I sanctified you..." (Jeremiah 1:5), and life begins at the point of conception, therefore a fetus within the mother's womb is a baby, a living human being, not mere tissue.

200. On August 28, 2021, Plaintiff Gordon submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it

conflicted with the ability to comply with the Vaccine Requirement. which included a letter from his pastor, Tadd Scheffer, Sr.

201.    Defendants then considered Plaintiff Gordon's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

202.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

203.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

204.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

205.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

206. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**R.    Plaintiff James Howard**

207. Plaintiff Howard sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

208. Plaintiff Howard is a lifelong Christian whose sincerely held religious beliefs prohibit him from receiving the COVID-19 vaccine. From the age of four, his faith has been foundational to his life, guiding his daily decisions, morals, and values through biblical scripture and the teachings of his church. Plaintiff believes that his body is the temple of God (1 Corinthians 3:17), and to inject a substance such as the COVID-19 vaccine into his body would violate this sacred principle. He further grounds his objection in verses such as Leviticus 17:11 and 19:28, which inform his belief that altering or defiling his body is contrary to God's will. For Plaintiff, trust in divine protection (Psalm 118:8; Exodus 23:25) takes precedence over human mandates. Receiving the vaccine would force him to act against his conscience and deeply held religious convictions.

209. On September 10, 2021, Plaintiff Howard submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

210.  Defendants then considered Plaintiff Howard's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

211.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

212.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

213.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

214.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

215.  Plaintiff Howard submitted a reasonable accommodation reassignment form on or about September 23, 2021.

216.  Plaintiff Howard requested a *Loudermill* hearing.

217.  HR Manager Sarah Smith responded that a *Loudermill* hearing was not warranted.

218. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**S.    Plaintiff Jana Crawford**

219. Plaintiff Crawford sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

220. Plaintiff Crawford is a devout Christian whose religious beliefs are central to her life and decision-making. Guided by prayer and Biblical teachings, Plaintiff believes that human life is sacred and created in God's image, and that her body is a temple protected by God. Based on these beliefs, she cannot in good conscience receive a COVID-19 vaccine developed or tested using fetal cell lines, as doing so would violate her moral and religious convictions regarding the sanctity of life. Plaintiff has consistently avoided unnecessary medications for ethical reasons and only takes necessary treatment due to a medical condition. She expressed that if she learned even that her existing medication involved fetal cell research, she would seek alternatives. Plaintiff believes that God grants each person the authority to make health decisions according to their conscience, and that government coercion in violation of those beliefs constitutes a moral and constitutional infringement. Her request was rooted in a sincere desire to honor God, not in opposition to public health.

221. On September 4, 2021, Plaintiff Crawford submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

222. Subsequently, Defendants requested additional information from Plaintiff Crawford regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

223. On September 11, 2021, Plaintiff Crawford complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

224. Defendants then considered Plaintiff Crawford's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

225. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

226. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

227. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

FIRST AMENDED COMPLAINT          42          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

228. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

229. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

230. Plaintiff Crawford submitted a reasonable accommodation reassignment form on or about September 26, 2021.

231. Plaintiff Crawford requested a *Loudermill* hearing on or about November 16, 2021.

**T.     Plaintiff Jay Sarver**

232. Plaintiff Sarver sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

233. Plaintiff Sarver is a dedicated Christian whose spiritual and religious beliefs are central to every aspect of his life. He has proudly served in the WSF Engine Department for nearly eight years and values his job and colleagues, but he cannot compromise his sincerely held beliefs to comply with a government vaccine mandate. Plaintiff believes that receiving any COVID-19 vaccine, or any substance containing mRNA or foreign DNA, would violate the core of his faith. He holds a deep conviction that his body, and its God-given DNA, must remain as created by the Lord. Altering that through vaccination would break his spiritual promise to honor his Creator. For Plaintiff, this belief is not abstract or political, it is rooted in a personal, unwavering devotion to Jesus Christ, whom he credits with giving his life purpose

and meaning. To submit to vaccination would be to act in direct opposition to his religious belief.

234.    On August 29, 2021, Plaintiff Sarver submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

235.    Defendants then considered Plaintiff Sarver's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

236.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

237.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

238.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

FIRST AMENDED COMPLAINT                44        **ARNOLD JACOBOWITZ & ALVARADO PLLC**

239. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

240. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## U.    Plaintiff Jeremy Birchfield

241. Plaintiff Birchfield sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

242. Plaintiff Birchfield is a devout Christian who sincerely believes that God is the sole author of life and that human life is sacred from the moment of conception. Guided by Biblical teachings and the authority of scripture, Plaintiff cannot, in good conscience, accept any COVID-19 vaccine developed or tested using aborted fetal cell lines or containing foreign DNA or ingredients derived from human or animal tissues. These include the mRNA vaccines by Pfizer and Moderna, which he specifically identifies as violating his deeply held religious convictions. Plaintiff's objection is rooted in longstanding Biblical principles, including Psalm 139:13–14 ("For you created my inmost being; you knit me together in my mother's womb"), Jeremiah 1:5 ("Before I formed you in the womb I knew you"), and Psalm 127:3 ("Children are a gift from the Lord"). These scriptures, central to his beliefs, compel him to reject any substance that originates from or is associated with abortion or the destruction of human life. He believes God created his DNA and body in His image, and altering that through injections containing MRC-5, HEK-293, or any other

FIRST AMENDED COMPLAINT        45        **ARNOLD JACOBOWITZ & ALVARADO PLLC**

foreign or aborted human cell line would defile the sacred form in which he was created. To receive such a vaccine would violate his covenant with God and compromise his moral integrity. Plaintiff emphasizes that he loves his job, values the people he works with, and has a strong record of service. However, he could not put his job above his sacred religious beliefs. For him, this was never a political or philosophical stance, it was a deeply spiritual decision.

243.  On August 22, 2021, Plaintiff Birchfield submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

244.  Subsequently, Defendants requested additional information from Plaintiff Birchfield regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

245.  On August 26, 2021, Plaintiff Birchfield complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

246.  Defendants then considered Plaintiff Birchfield's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

247.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate

Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

248. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

249. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

250. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

251. Plaintiff Birchfield requested a *Loudermill* hearing multiple times, with no response.

252. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## V.    Plaintiff Jeremy Greene

253. Plaintiff Jeremy Greene sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

254. Plaintiff Jeremy Greene believes that his body and its biological integrity are sacred and uniquely created by God. As such, any attempt to alter, access, or influence that creation, whether through vaccination or other medical interventions, violates his

spiritual convictions and his understanding of divine ownership and stewardship over his body.

255. On October 15, 2021, Plaintiff Jeremy Greene submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

256. Defendants then considered Plaintiff Jeremy Greene's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

257. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

258. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

259. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

260. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

261. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

262. On or about February 2, 2022, Plaintiff Jeremey Green was given a conditional offer of employment for the On-Call Oiler 21.6 position with WSDOT, WSF from HR Consultant Renee Mason.

263. Plaintiff Jeremy Greene then requested an exemption from the COVID-19 vaccination and submitted a Statement of Declination of COVID-19 Vaccine Product on or about February 14, 2022.

264. On or about February 21, 2022. WSF Deputy Director Kim Monroe acknowledged Plaintiff Jeremy Greene's exemption request and employment file.

265. On the same day, Defendants determined, based upon the information Plaintiff Greene provided, that Plaintiff's request for a religious exemption is based on a sincerely held religious belief that prevents Plaintiff from being vaccinated against COVID-19.

266. However, despite this finding, Defendants determined that no accommodation could be made and rescinded the offer of employment.

FIRST AMENDED COMPLAINT                49      **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

267. In the months following, Plaintiff Jeremy Greene repeatedly sought clarification from WSDOT regarding his eligibility for rehire or temporary assignments through the MEDBA hall.

268. Plaintiff Jeremy Greene's inquiries were met with delay, vague responses, and eventually internal communications.

269. On or about April 18, 2022, in internal correspondence between WSF Deputy Director Eben Phillips and Director Eric Visser, Mr. Phillips expressly discouraged responding to Plaintiff Jeremy Greene, stating: "While tempting, I don't see any benefit of a response. He remains unvaccinated, and has a 10+ year of playing games and making accusations against WSF supervisors and management… Anything I say will reappear in an additional form of harassment, so I've simply ignored his harassing emails."

270. Mr. Phillips' email shows a clear retaliatory motive, revealing that the decision to cut off communication and reemployment consideration stemmed not from any formal misconduct, but from long-standing personal animus toward Plaintiff Jeremy Greene's persistent assertion of his rights.

271. On or about November 10, 2022, internal emails between WSDOT and WSF leadership revealed that senior staff explicitly discussed barring Plaintiff Greene from any future employment opportunities, despite his qualifications and eligibility for temporary reemployment via MEBA dispatch.

272. WSF Senior Port Engineer Bill Schweyen, inquired that "If Jeremy meets the requirements to work, how would he go about taking temporary jobs?"

273. WSF Deputy Director Eben Phillips stated: "Jeremy Greene has been harassing Kim Monroe, Eric Visser and I for the last 11 months. It would be completely unacceptable for him to ever work on board another WSF as long as I work here."

274. Mr. Phillips further asked staff to " confirm that we could bar him from being temporarily dispatched from the MEBA hall."

275. Mr. Phillips' request was made absent any documented disciplinary proceedings, formal investigations, or prior notice to Plaintiff Jeremy Greene.

276. HR Manager Sarah Smith responded internally, "We can confirm there will be no interest in rehiring Mr. Greene for the reasons you've stated above.

277. These communications occurred shortly after Plaintiff Jeremy Greene requested clarification about vaccine exemptions and sought to invoke his rights to reemployment via MEBA temporary positions.

278. On or about December 12, 2022, WSDOT personnel confirmed that employees, including former employees, could seek reemployment with religious or medical accommodations, subject to a "file review" by Kim Monroe and Sarah Smith prior to receiving contingent offers.

279. On or about December 14, 2022, internal WSDOT communications between Mr. Visser, Ms. Kim, and Mr. Phillips, confirm WSDOT's intention to permanently

refuse to rehire Plaintiff Jeremey Greene, with WSF Director Eric Visser stating unequivocally, "[T]he message needs to be very strong: we will not rehire you."

280. In subsequent correspondence, on or about December 19, 2022, WSF Director Eric Visser informed Plaintiff Jeremey Greene that, regardless of his qualifications, WSF would consider Plaintiff's tone, perceived "disrespect for chain of command," and prior communications as grounds to reject future employment.

281. Mr. Visser's email was sent despite no record of formal discipline or misconduct findings.

282. These communications show that Plaintiff Jeremy Greene was blacklisted from reemployment as a direct result of asserting his protected rights, including religious objection and continued advocacy for a reasonable accommodation.

283. Defendants' stated justifications were vague, subjective, and inconsistent with WSDOT's own public statements and prior willingness to rehire him.

284. The "file review" process was weaponized to exclude Plaintiff Jeremy Greene in retaliation for protected conduct, not based on objective or lawful criteria.

285. For instance, on or about February 9, 2023, Plaintiff Jeremy Greene was contacted by WSDOT Human Resources Consultant Mariah Ayers regarding a professional reference check for a pending application for the On-Call Oiler/Wiper position (22DOT-WSF-Oiler 22.7)

286. Plaintiff initially raised concern that this reference check requirement was not previously disclosed in the job posting or interview process.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

287.  After clarification from Ms. Ayers, Plaintiff consented in writing to the reference check and associated file review on February 15, 2023.

288.  On or about February 17, 2023, WSDOT HR Manager Sarah Smith initiated a reference check request with WSF Director Eben Phillips regarding Plaintiff Jeremy Greene.

289.  On February 20, 2023, Mr. Phillips responded, citing alleged emails from Plaintiff between March and May of both 2022 and 2023 as evidence of "combativeness, abrasiveness and hostility," and specifically described receiving "over 63 daily emails" in 2023 in which Plaintiff Jeremy Greene allegedly criticized WSDOT leadership and demanded accountability, referencing those communications as justification for marking Plaintiff ineligible for rehire.

290.  Ms. Smith forwarded Mr. Phillips' evaluation and explicitly instructed, "Please see the reference check for Jeremy Greene and the request to not allow for rehire with WSF."

**W.    Plaintiff Joe DeGroat**

291.  Plaintiff DeGroat sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

292.  Plaintiff DeGroat is a Catholic Christian who is therefore staunchly against abortion. For that reason, he cannot in good conscience benefit from the act. All of the available COVID-19 vaccines either used aborted fetal cell lines during research and development or production and manufacture.

293. On September 1, 2021, Plaintiff DeGroat submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

294. Subsequently, Defendants requested additional information from Plaintiff DeGroat regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

295. On or about September 1, 2021, Plaintiff DeGroat complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

296. Defendants then considered Plaintiff DeGroat's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

297. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

298. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job

duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

299. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

300. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

301. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## X.    Plaintiff John Winston

302. Plaintiff Winston sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

303. Plaintiff Winston had no opportunity to fully describe his relevant religious beliefs to Defendants. Nevertheless, WSDOT determined that he had a sincerely held religious belief which entitled him to an exemption to mandatory COVID-19 vaccination. WSDOT was correct. Mr. Winston is a Christian, and pro-life for religious reasons. When confronted with a demand to accept vaccination, he went back to the teaching of Christ for guidance. In particular, he followed Proverbs 6:16-19: "There are six things that the Lord hates, seven that are an abomination to him: haughty eyes, a lying tongue, and hands that shed innocent blood, a heart that devises wicked plans, feet that make haste to run to evil, a false witness who breathes out lies

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

, and one who sows discord among brothers," and Exodus 20:13: "You shall not murder." Mr. Winston had been informed that the creators of the vaccines had used stem cells from unborn fetuses. His faith also preaches that the human body is a temple it is sacred and that he is responsible for his body's well-being.

304.    On August 30, 2021, Plaintiff Winston submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

305.    Defendants then considered Plaintiff Winston's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

306.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

307.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

308.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

309.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

310.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

Y.   **Plaintiff Jordan Longacre**

311.   Plaintiff Longacre sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

312.   Plaintiff Longacre explained that his sincerely held religious beliefs prohibit him from receiving mRNA vaccines. He further stated that his creed also prevents him from injecting any medication, vaccine, or substance into his body without his written consent for an indefinite period of time. Plaintiff affirmed that receiving the COVID-19 vaccine would violate these beliefs.

313.   On August 25, 2021, Plaintiff Longacre submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

314.   Subsequently, Defendants requested additional information from Plaintiff Longacre regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

315.  On August 30, 2021, Plaintiff Longacre complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

316.  On or about August 25, 2021, Plaintiff Longacre submitted his exemption forms, including a personal statement and a letter from his pastor, via his personal email because he had been unexpectedly locked out of his work account.

317.  On or about August 30, 2021, Defendants requested that Plaintiff Longacre complete an additional exemption form.

318.  Plaintiff Longacre complied and submitted both the WSDOT religious exemption form and a supplemental form, including a letter from his pastor.

319.  In response, Defendants requested Plaintiff Longacre to answer further questions concerning his religious beliefs, including whether he had received other vaccines in the past.

320.  Plaintiff Longacre objected to the relevance and legality of these additional questions and declined to respond to that particular item and asserted that the information he had already submitted was sufficient.

321.  Plaintiff Longacre requested that Defendants explain why the additional questionnaire was necessary.

322.  Plaintiff Longacre maintained that his previously submitted documentation fulfilled WSDOT's stated requirements.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

323.  Defendants then considered Plaintiff Longacre's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

324.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

325.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

326.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

327.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

328.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

59

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

329.  On or about August 24, 2021, Plaintiff Longacre was placed on administrative leave was placed on administrative leave for the duration of the religious exemption and accommodation process under the Proclamation.

330.  During this administrative leave, Defendants retained Plaintiff Longacre's work laptop and restricted access to his WSDOT email account.

331.  Despite knowing Plaintiff Longacre could not access his WSDOT email, Defendants continued to send critical communications related to the exemption process, including requests and notices, to that email address.

332.  On September 24, 2021, WSDOT notified Plaintiff Longacre via his work email that he had not completed the validation process for vaccination or received an approved exemption and was given until September 29, 2021, to respond.

333.  Plaintiff Longacre did not receive this communication at the time it was sent due to being locked out of his WSDOT email account.

334.  Defendants knew or should have known that Plaintiff Longacre could not access his WSDOT email account and did not have his work laptop.

335.  Despite this, Defendants proceeded to issue a notice of separation and terminated Plaintiff Longacre effective October 18, 2021, citing non-compliance with Proclamation.

336.  Plaintiff Longacre subsequently applied for unemployment benefits, which Defendants opposed, asserting that Plaintiff failed to complete the exemption process and had engaged in misconduct and insubordination.

337.  Plaintiff Longacre appealed the denial of his unemployment benefits and, on or about April 27, 2023, an Administrative Law Judge ("ALJ") with the Washington Office of Administrative Hearings ("OAH") issued a decision reversing the denial of those benefits.

338.  The ALJ found that Plaintiff Longacre had submitted adequate documentation in support of his religious exemption, and that WSDOT failed to properly communicate with Plaintiff Longacre after placing him on administrative leave and revoking his access to work email.

339.  The ALJ's ruling concluded that Plaintiff Longacre did not commit misconduct and was entitled to unemployment benefits.

## Z.     Plaintiff Joseph Greene

340.  Plaintiff Joseph Greene sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

341.  Plaintiff Joseph Greene was raised as a Catholic Christian. submitted a written religious exemption request on or about October 16, 2021, formally declining receipt of the COVID-19 vaccine. In his submission, Plaintiff cited deeply held religious and moral beliefs that prohibit the introduction of any substance that may alter his biological or physiological systems, systems which he believes are uniquely crafted by his Creator and for which he maintains sole stewardship. Plaintiff Joseph Greene also explained that his objection stemmed from the use or association of the COVID-19 vaccine with aborted fetal cells, which he finds incompatible with his faith.

Plaintiff affirmed that although he could not in good conscience accept the vaccine, he remained willing to support public health efforts within the bounds of his religious convictions and offered to continue performing his duties at Washington State Ferries in a manner that aligned with those beliefs.

342. On October 16, 2021, Plaintiff Joseph Greene submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

343. Defendants then considered Plaintiff Joseph Greene's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

344. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

345. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

346.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

347.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

348.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

AA.    **Plaintiff Justin Cochran**

349.    Plaintiff Cochran sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

350.    Plaintiff Cochran is a Christian started following God's way as a young boy. He further became closer with his religious when he met his wife, who also comes from a Christian family. His religious beliefs prohibit any vaccine developed with or containing components derived from aborted fetal cells. (Exodus 20:15, 1 Corinthians 3:16-17).

351.    On August 29, 2021, Plaintiff Cochran submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

352.    Subsequently, Defendants requested additional information from Plaintiff Cochran regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

353. On September 12, 2021, Plaintiff Cochran complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

354. Defendants then considered Plaintiff Cochran's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

355. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

356. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

357. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

358. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

359. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

360. Plaintiff Cochran submitted a reasonable accommodation reassignment form on or about October 7, 2021.

361. However, Plaintiff Cochran did not receive a response to his reassignment request prior to his termination.

362. It was only after making a records request following his separation that Plaintiff Cochran discovered that Defendants had responded during the week of October 16, 2021, when he was off work due to the ferry schedule and had no access to his work email.

363. As a result, Plaintiff Cochran was not aware of the response and never had an opportunity to rebut the decision.

364. Defendants' response claimed that a "job search" had been conducted and no alternative positions were available.

BB.    **Plaintiff Kerry Strawn**

365. Plaintiff Strawn sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

366. Plaintiff Strawn is a Christian who held a sincerely held religious belief that receiving a COVID-19 vaccine would violate his religious convictions. After researching the vaccine's development, he and his wife learned that fetal cells were used in the

process, which he found deeply disturbing and incompatible with his faith. He considered the vaccine an abomination.

367. On September 3, 2021, Plaintiff Strawn submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

368. Subsequently, Defendants requested additional information from Plaintiff Strawn regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

369. On September 13, 2021, Plaintiff Strawn complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

370. On or about September 23, 2021, Plaintiff Cochran also submitted a reassignment request form.

371. Defendants then considered Plaintiff Strawn's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

372. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

373. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

374. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

375. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

376. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine

## CC.    Plaintiff Larry Frostad

377. Plaintiff Frostad sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

378. Plaintiff Frostad is a Christian who holds sincere and long-standing Christian beliefs that guide how he cares for his body, which he views as a temple belonging to God. (1 Corinthians 3:16) Based on scripture and his faith, he believes it is a sin to knowingly violate his conscience or act against Christ's teachings. After prayer, study, and reflection with his family, he concluded that the COVID-19 vaccines conflict with his sincerely held personal religious beliefs of how Christ's

commandments, and teachings related to our bodies (they are not our own, but of God) and our physical and religious health apply to my walk with Christ though life to return to Him. It is a sin to knowingly go against His teachings. He also objects to pharmaceutical interventions as a default, preferring approaches aligned with Biblical principles. (2 Corinthians 6:16) His objection to the vaccine stems from his belief that it undermines God's design for the body, poses unnecessary risks, and would compromise his ability to serve God faithfully.

379. On August 27, 2021, Plaintiff Frostad submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

380. Subsequently, Defendants requested additional information from Plaintiff Frostad regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

381. On September 7, 2021, Plaintiff Frostad complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

382. Defendants then considered Plaintiff Frostad's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

383.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

384.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

385.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

386.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

387.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**DD.    Plaintiff Lynn Nowels**

388.    Plaintiff Nowels sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

389.    Plaintiff Nowels is a Christian who holds sincere Christian beliefs that prohibit her from receiving the COVID-19 vaccine. She believes that God created the human

body in His image and endowed it with a natural immune system capable of healing, and that introducing the vaccine would betray her faith in divine design. She further believes that global vaccine mandates reflect prophetic warnings about government control and the conditioning of society for the biblical "Mark of the Beast." While she does not believe the vaccine itself is the mark, her religious convictions warn against participating in what she sees as a precursor. Plaintiff consistently complied with WSDOT's safety protocols, including masking and temperature checks, and remains willing to follow those measures. However, based on her deeply held beliefs, she could not accept the vaccine in good conscience. Further, as her pastor has explained, her church believes that COVID-19 vaccinations are synonymous with sorcery, defined as magic potions that alter the body's natural system and are specifically forbidden in Galatians 5:20.

390.    On August 21, 2021, Plaintiff Nowels submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

391.    Subsequently, Defendants requested additional information from Plaintiff Nowels regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

392.    On August 25, 2021, Plaintiff Nowels complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

393. Defendants then considered Plaintiff Nowels' request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

394. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

395. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

396. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

397. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

398. Plaintiff Nowels initially participated in Defendants' reassignment process but ultimately withdrew from further meetings after concluding they would not lead to a meaningful accommodation.

FIRST AMENDED COMPLAINT    71    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

399. In an email to Defendants sent on or about September 17, 2021, Plaintiff Nowels expressed that the process appeared predetermined and that religious exemptions were being disregarded.

400. Plaintiff Nowels described the significant mental and physical toll the mandate had taken on her and other employees.

401. Plaintiff Nowels stated she would continue performing her duties with integrity until WSDOT terminated her employment.

402. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine

EE. **Plaintiff Merriegrace LaPierre**

403. Plaintiff LaPierre sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

404. Plaintiff LaPierre is a Christian who believes that receiving the vaccine would violate her faith and moral code, citing concerns over bodily integrity and the use of aborted fetal cell lines. Taking a vaccine with aborted fetal cell lines is hugely offensive and disturbing to her as a Christian.

405. On August 26, 2021, Plaintiff LaPierre submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

406. On September 13, 2021,  Plaintiff LaPierre provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

407. On or about September 27, 2021, Plaintiff LaPierre received an email that stated "a review of records indicates you have not been approved for an authorized medical and/or religious vaccination exemption..."

408. This termination notice was issued despite Plaintiff LaPierre's pending exemption request and without any interactive process regarding possible reasonable accommodation.

409. On or about October 8, 2021, Plaintiff LaPierre requested a *Loudermill* hearing via email to Plaintiff's HR representative, Kim O'Neil and asked that her Union Representative, Ryan Brazeau, be allowed to attend.

410. Ms. O'Neil responded the same day, stating she has been instructed to send all employee communications to the exemption box (exemption@wsdot.wa.gov), which she included in the response, in addition to the Deputy Director HR (Kim Monroe) and Manager HR (Sarah Smith) whom Ms. O'Neil also included on the email reply.

411. On or about October 12, 2021, Plaintiff LaPierre responded to Ms. O'Neil's October 8 email that she didn't see an exemption response and sought guidance on how to obtain a *Loudermill* meeting.

412. On or about October 13, 2021, Ms. O'Neil responded that Plaintiff LaPierre should communicate directly with the exemption team and included the exemption alias and HR leadership (Monroe and Smith) in her response.

413. Ms. O'Neil, a Senior HR Consultant, and Plaintiff LaPierre's HR representative, stated "I am not involved in this process and does not need to be included."

414. On October 16, 2021, Plaintiff sent a follow-up email to the exemption team reiterating her request for a *Loudermill* hearing.

415. In her October 16 email, Plaintiff LaPierre repeated that she had not received any response from her HR contacts, including Monroe and O'Neil, and again requested a meeting before her pending termination.

416. Plaintiff LaPierre's email reiterated her request to be heard.

417. In that same email, Plaintiff LaPierre requested a Zoom meeting as she "will not have gas money or transportation to get all the way to Seattle due to mandated termination."

418. In that same email, Plaintiff LaPierre noted that she had become aware of Facebook posts made by Deputy Director Monroe and felt harassed by the content.

419. Plaintiff LaPierre's email also stated that Plaintiff was offered no reasonable accommodation despite offering possible accommodations.

420. Plaintiff LaPierre's email attached her resume for consideration of remote working of administrative duties.

74

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

421.    Plaintiff LaPierre's email also attached her religious exemption again.

422.    On or about October 19, 2021, Plaintiff LaPierre sent a follow-up email to Deputy Monroe that she "emailed the exemption Saturday. I got an autoreply. I was wondering if anyone had a chance to review my exemption and read my letter? Please keep me informed so I am not just hanging."

423.    On information and belief, Defendants did not engage in any interactive process with Plaintiff LaPierre.

424.    On information and belief, Defendants were on notice of Plaintiff LaPierre's request for religious exemption from the COVID-19 vaccination and ignored that request.

425.    Despite Plaintiff LaPierre's multiple outreach efforts, Defendants never provided confirmation that her exemption or accommodation request was received or reviewed, nor did they schedule a *Loudermill* hearing.

426.    Plaintiff LaPierre reached out to her representative, to the exemption alias, to the exemption team, and her requests for exemption, *Loudermill* hearing, and general requests to be heard went ignored.

427.    At no point did Defendants acknowledge receipt of Plaintiff's religious exemption request or engage in a timely, good-faith, interactive process to evaluate possible accommodations.

428.    Plaintiff LaPierre's repeated efforts to communicate with HR representatives, the exemption team, and union contacts went largely unanswered, resulting in procedural confusion and distress.

429.   Upon information and belief, this procedural confusion led to Plaintiff LaPierre's unlawful termination.

430.   Upon information and belief, Plaintiff LaPierre believes that her bringing up HR Deputy Monroe's Facebook post may have also contributed to Defendants' refusal to engage with Plaintiff.

431.   Upon information and belief, Defendants retaliated against Plaintiff LaPierre for raising concerns about Monroe's Facebook post in her October 16, 2021, email, and denied her the opportunity to be heard before the October 18 deadline.

432.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## FF.   Plaintiff Michael Brown

433.   Plaintiff Brown sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

434.   Plaintiff Brown is a Christian whose religious beliefs do not allow him to take any substance that can potentially alter his DNA, MRNA, or any other parts of his god-given physical being, or to knowingly participate in the killing of an unborn baby by using a product that was derived from the cells obtained aborting a child.

435.   On September 13, 2021, Plaintiff Brown submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

436. Initially, on or about September 14, 2021, Defendants stated that WSDOT HR did not receive sufficient information to determine whether Plaintiff's request was based on a sincerely held religious belief that prevented him from being vaccinated and therefore could not be approved.

437. On or about September 15, 2021, Plaintiff Brown again restated his religious beliefs that conflicted with receiving the COVID-19 vaccination and asked for Defendants to re-evaluate their decision following both federal and state law.

438. On or about September 16, 2021, HR Manager Merlinda Sain responded, "There is no doubt that you have a sincerely held religious belief…" and asked Plaintiff Brown to provide additional information to re-evaluate his request.

439. On or about September 23, 2021, Plaintiff Brown responded stating that, "My beliefs do not allow me to take any substance that can potentially alter my DNA, MRNA, or any other parts of my god given physical being. I also object to the source of the fetal cells than [sic] were used in either development, testing, or manufacture of the vaccines."

440. Defendants then considered Plaintiff Brown's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

441. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate

77    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

442. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

443. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

444. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

445. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

446. Plaintiff Brown requested a *Loudermill* hearing but was not given one.

## GG.   Plaintiff Michael Uribe

447. Plaintiff Uribe sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

448. Plaintiff Uribe is a lifelong practicing Catholic who holds a sincerely held religious belief that prohibits him from receiving the COVID-19 vaccine. Plaintiff Uribe believes that the available COVID-19 vaccines were developed or tested using

abortion-derived fetal cells, which he finds morally objectionable and incompatible with Catholic doctrine. The use of these vaccines would be a violation of Catholic Doctrine on the duty to adhere to moral conscience and in contraindication with instruction of the Vatican and under the teaching of the Catholic Church which he follows. Therefore, Plaintiff Uribe is religious and morally bound from receiving this vaccine.

449. On or about September 10, 2021, Plaintiff Uribe submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

450. Subsequently, Defendants requested additional information from Plaintiff Uribe regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

451. On or about September 10, 2021, Plaintiff Uribe complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

452. Defendants then considered Plaintiff Uribe's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

453. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

454. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

455. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

456. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

457. In or about January 2023, Plaintiff Uribe reapplied to WSDOT and received conditional offer of employment with WSDOT.

458. Based on this religious conflict, Plaintiff Uribe submitted a religious exemption request form on or about January 3, 2023.

459. Defendants determined, based upon the information Plaintiff Uribe provided, that Plaintiff's request for a religious exemption is based on a sincerely held religious belief that prevents Plaintiff from being vaccinated against COVID-19.

460.    In determining Plaintiff Uribe's accommodation, Defendants determined, "After carefully reviewing your job classification, essential functions, and working environment, we have determined there are possible accommodations that can be considered and offered in the position which you have received a conditional offer of employment, which can sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position."

461.    Defendants determined, "Based on Center for Disease Control (CDC) and the Washington State Department of Health (DOH) determination of COVID-19 transmission and fatality levels, you may be required to follow further safety restrictions as an unvaccinated employee at the workplace as outlined by the WSDOT publication, "Beyond COVID, the Road Forward" or as determined by yourself, Safety, HR, and Management as part of the interactive Reasonable Accommodation process.

•   You will be allowed to be present at the worksite as frequently and necessary to meet business needs without restrictions or limitations. Daily Ready Op health screenings and Safety guidelines apply to all employees reporting to a WSDOT facility or worksite.
•   WSDOT will monitor the Center for Disease Control CDC COVID Data Tracker: County View map. If weekly case rates increase to the high level in a specific county, employees who have an approved Reasonable Accommodation may be restricted from coming to the worksite, working at the worksite, or may be required to use PPE. Additionally, per Labor and Industries (L&I), if there is an outbreak of ten (10) or more test confirmed employee COVID-19 infections in a specific workplace, employees who have an approved Reasonable Accommodation may be restricted

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

> from coming to the worksite, working at the worksite, or may be required to use PPE.
> • Your Reasonable Accommodation will be reviewed annually, unless, as stated above, the county that you work in is elevated to the high level according to the CDC COVID Data Tracker: County View map ."

462. On or about June 20, 2023, Plaintiff Uribe received correspondence from HR Manager Travis Vanderpool stating that based on Gov. Inslee's rescission of Directive 22-13.1, COVID-19 vaccination is no longer a condition of employment, and therefore his Religious Accommodation for exemption form COVID-19 vaccination as a condition of employment was being closed effective the date on this letter.

463. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

HH.   **Plaintiff Michael Watkins**

464. Plaintiff Watkins sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

465. Plaintiff Watkins is a Christian whose faith tells him that the human body is a temple of the holy spirit (1 Corinthians 6:19-20), and that the whole spirit, soul and body is to be kept blameless (1 Thessalonians 5:23), so injecting stem cells of unknown origins is religiously wrong; moreover, in his prayers, God revealed that he must not take the experimental drug that is the COVID-19 vaccines. Based on these sincerely

held religious beliefs, Mr. Watkins is unable to take the COVID-19 vaccines currently available.

466. On September 10, 2021, Plaintiff Watkins submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

467. Defendants then considered Plaintiff Watkins's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

468. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

469. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

470. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

471.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

472.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## II.    Plaintiff Nathan Kesler

473.    Plaintiff Kesler sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

474.    Plaintiff Kesler is a Christian. Taking the Covid-19 vaccines would conflict with his strongly held religious beliefs, because the vaccines in question have been produced and tested with fetal cell lines from aborted babies; and as a faithful Christian opposed to abortion, he cannot use any product that takes its origin in abortion.

475.    On August 31, 2021, Plaintiff Kesler submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

476.    Subsequently, Defendants requested additional information from Plaintiff Kesler regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

477.    On September 24, 2021, Plaintiff Kesler complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

478. Defendants then considered Plaintiff Kesler's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

479. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

480. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

481. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

482. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

483. Plaintiff Kesler received notice of separation from Defendants effective October 18, 2021.

484. On or about September 30, 2021, Plaintiff Kesler applied for Paid Family and Medical Leave unrelated to the COVID-19 vaccine.

FIRST AMENDED COMPLAINT
85

485. One or about October 25, 2021, Plaintiff Kesler's PMFLA request was approved from October 1, 2021, to January 1, 2022.

486. On or about October 15, 2021, Secretary of Transportation, Robert Millar rescinded Plaintiff Kesler's termination notice based on information Defendants had received and Plaintiff Kesler could continue his employment.

487. On or about January 20, 2022, Plaintiff Kesler received notice that his termination would be effective at the end of his PMFLA on January 2, 2022.

488. On January 2, 2022, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## JJ.    Plaintiff Nicholas Auckland

489. Plaintiff Auckland sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

490. Plaintiff Auckland is a Christian who believes in God, Jesus Christ, and the Holy Spirit as one. He holds a sincerely held religious conviction, supported by scripture such as 1 Corinthians 6:19–20, that his body is a temple and that he must not defile it by injecting unknown substances, especially those connected to aborted fetal cell lines. Plaintiff Auckland believes that receiving the COVID-19 vaccine would violate his faith and moral conscience.

491. Despite holding these religious beliefs, Plaintiff Auckland did not formally submit a religious exemption request because he reasonably believed, based on WSDOT's

pattern and practice of denying accommodation of nearly all such requests without meaningful review, that doing so would be futile.

492.   Plaintiff Auckland was aware of multiple coworkers whose exemption requests were granted but unable to be accommodation and observed that the agency had predetermined outcomes without engaging in good faith or individualized evaluation.

493.   Plaintiff Auckland's decision not to submit a formal exemption was the result of a chilling effect created by WSDOT's conduct, not a lack of religious conviction.

494.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**KK.   Plaintiff Nicole Preziosi**

495.   Plaintiff Preziosi sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

496.   On September 15, 2021, Plaintiff Preziosi submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

497.   Initially, on or about September 21, 2021, HR Director Jeff Pelton sent correspondence where Defendants stated that WSDOT HR did not receive sufficient information to determine whether Plaintiff's request was based on a sincerely held religious belief that prevented him from being vaccinated and therefore could not be approved.

FIRST AMENDED COMPLAINT                 87        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

498.    On or about September 23, 2021, Plaintiff Preziosi responded to the denial stating, "Your response is not only disrespectful, but inappropriate based on your original request. The Religious Exemption form was completely perfectly on my end. If there was not enough information provided than you should either expand the scope of the form, and/or request more information from me."

499.    Deputy Kim Monroe responded the same day, apologizing and validating the information Plaintiff Preziosi provided and approved her religious exemption but was unable to accommodate.

500.    Defendants then considered Plaintiff Preziosi's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

501.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

502.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

503.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

504.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

505.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**LL.    Plaintiff Peter Duncan**

506.  Plaintiff Duncan sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

507.  Plaintiff Duncan is a practicing Catholic who holds a sincerely held religious belief that receiving the COVID-19 vaccine would violate his conscience and moral teachings of his faith. His objection stems from core Catholic doctrines that vaccination must be voluntary, that it may be morally impermissible to use medical products derived from aborted fetal cell lines, and that individual conscience must be respected when it leads a person to decline such interventions. His pastor supported this objection,

508.  On August 25, 2021, Plaintiff Duncan submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

509. Defendants then considered Plaintiff Duncan's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

510. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

511. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

512. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

513. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

514. Plaintiff Duncan also submitted a medical exemption request. When asked by WSDOT whether he intended to proceed with both requests, Plaintiff Duncan expressly confirmed that he wished to move forward with both the medical and religious exemption processes as both applied.

515. However, upon information and belief, Defendants never acknowledged or processed Plaintiff Duncan's medical exemption request.

516. Instead, Defendants only granted Plaintiff Duncan's religious exemption without providing any explanation as to why the medical exemption was disregarded.

517. Plaintiff Duncan was never given an opportunity to have both requests fairly evaluated, and Defendants failed to engage in a good faith interactive process regarding potential accommodations under either exemption.

518. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## MM.  Plaintiff Richard Ostrander

519. Plaintiff Ostrander sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

520. Plaintiff Ostrander is a Lutheran Christian who held a sincere religious belief that receiving the COVID-19 vaccine would violate his faith. Plaintiff Ostrander expressed a belief that his body is a temple of God and must be treated as such, citing scripture and spiritual conviction as the basis for rejecting the vaccine. Plaintiff believed that being forced to take the vaccine, particularly one associated with fetal cell lines, would compromise his moral and religious integrity.

521. On September 7, 2021, Plaintiff Ostrander submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

522. Defendants then considered Plaintiff Ostrander's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

523. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

524. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

525. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

526. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

92         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

527.  Plaintiff Ostrander submitted a Reassignment Request From on or about September 30, 2021.

528.  On or about October 6, 2021, Plaintiff Ostrander requested a *Loudermill* hearing.

529.  On or about October 7, 2021, HR Manager Kirors-Sweet responded that Plaintiff Ostrander would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

530.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**NN.    Plaintiff Robert Washabaugh**

531.  Plaintiff Washabaugh sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

532.  Plaintiff Washabaugh is a Catholic Christian. Plaintiff believes that the human body is sacred and that altering it with substances developed using fetal cell lines violates his religious convictions. Plaintiff feels a deep spiritual obligation to preserve the body as created by God, and believes that reliance on pharmaceutical interventions, particularly vaccines developed or tested using methods contrary to his religious teachings, conflicts with his faith. These beliefs have guided the Plaintiff's medical choices for years, and Plaintiff has consistently strived to follow Biblical principles when making health-related decisions. Plaintiff's decision not to receive the vaccine

FIRST AMENDED COMPLAINT                          93          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                             720 Seneca Street, Ste. 107, No. 393
                                                             Seattle, WA 98101
                                                             (206) 799-4221

stems directly from prayer, spiritual discernment, and their desire to act in accordance with their conscience and God's guidance.

533. On September 2, 2021, Plaintiff Washabaugh submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

534. Subsequently, Defendants requested additional information from Plaintiff Washabaugh regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

535. On September 10, 2021, Plaintiff Washabaugh complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

536. Defendants then considered Plaintiff Washabaugh's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

537. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

538. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

539. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

540. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

541. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

OO.    **Plaintiff Rodney Pelham**

542. Plaintiff Pelham sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

543. Plaintiff Pelham is a lifelong Jehovah's Witness who was baptized at the age of 11 and has consistently structured his moral and medical decisions around his faith and study of the Bible. He believes that his body is a temple and that he must care for it in a way that honors God. Drawing from scriptural principles such as Proverbs 14:15, Titus 2:12, and 1 Timothy 5:8, Plaintiff exercised caution regarding the COVID-19 vaccine, viewing it as a serious, permanent medical decision that must be made with spiritual discernment and personal responsibility.

FIRST AMENDED COMPLAINT                95        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                720 Seneca Street, Ste. 107, No. 393
                                                Seattle, WA 98101
                                                (206) 799-4221

544. Plaintiff Pelham viewed submitting to a government mandate under threat of job loss as a violation of his duty to make medical decisions based on his faith and responsibility to provide for his family.

545. Plaintiff Pelham's decision not to receive the vaccine was not political or medical alone, but a deeply personal act of spiritual obedience and religious conviction.

546. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**PP.    Plaintiff Ronald Vessey**

547. Plaintiff Vessey sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

548. Plaintiff Vessey believes the body is a temple of the Holy Spirit and that the mRNA and adenovirus-based vaccines defile this temple by overriding God's perfect, natural immune design. Unlike traditional vaccines that supplement the immune system, these new vaccines are, in his view, designed to reprogram it, an act Plaintiff considers a sin. His objection is based on scriptural guidance, including 1 Corinthians 3:16–17 and 2 Corinthians 7:1, and a belief that submitting to such a vaccine would violate his moral obligation to honor God's creation. Plaintiff is aware that the Covid-19 vaccines use a brand-new vaccine technology that contain synthetic and other objectionable unknown proprietary ingredients; and it is his sincerely held religious belief that these synthetic and other objectionable unknown proprietary ingredients

(contaminants) will defile his body. Furthermore, unlike conventional vaccines, these new mRNA and Adenovirus vaccines are designed to override or replace his God-given natural immunity by encoding a spike protein or a variant of the spike protein. He believes that if God wanted his body to produce this foreign protein, God would have designed him to do so. In contrast, conventional vaccines, like those used for polio and influenza, use a weakened or inactivated version of a pathogen that causes a disease, to provoke a natural, God-given immune response. This type of a vaccine is designed to enhance or supplement the God-given natural immune system. He believes that to knowingly try to override God's perfect design to keep him healthy, and not simply supplement it by exposing himself to a harmless virus, defiles the temple that the Holy Spirit dwells in and commits a sin against God.

549.    On August 26, 2021, Plaintiff Vessey submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

550.    Subsequently, Defendants requested additional information from Plaintiff Vessey regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

551.    On September 3, 2021, Plaintiff Vessey complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

552.  Defendants then considered Plaintiff Vessey's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

553.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

554.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

555.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available. d

556.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

557.  When inquiring about retirement, on or about August 23, 2021, before any religious exemption determination was made, Plaintiff Vessey had stated to his assigned HR Consultant, Alana Neal, "Can you tell me if a decision has been made regarding the timing of retirement? Specifically, can my official retirement date be December 1

while I am on annual leave beginning mid or early October? Please be aware this is my worst case scenario as I do not want to retire and face a significant financial penalty for retiring before 62. This is only a backup in case my exemption request is denied."

558.    Plaintiff Vessey submitted a Reassignment Request From on or about September 24, 2021.

559.    On or about September 30, 2021, WSDOT sent Plaintiff Vessey written notification that the agency was "not able to identify any vacant funded positions that meet your skills and abilities" for a job reassignment.

560.    After receiving this denial, Plaintiff Vessey believed he had no viable path to accommodation and began discussing retirement options with WSDOT personnel.

561.    Upon information and belief, on or about October 13, 2021, Mr. Vessey communicated with HR Manager Alana Neal, who informed him that if he planned to retire, he should do so immediately ("this morning") to avoid receiving a separation letter.

562.    That same morning, Plaintiff Vessey officially retired and forwarded confirmation of his retirement to WSDOT.

563.    Later that evening, WSDOT emailed Plaintiff Vessey acknowledging receipt of his retirement notice.

564.    However, on October 14, 2021, after Plaintiff Vessey had already retired, he received another email from WSDOT stating that a Transportation Engineer 3 position had

been identified as a potential reassignment opportunity and offered to him as a reasonable accommodation.

565.    Plaintiff believed this was a job he was unqualified for and placed him in a much greater health risk than if he remained in his current job.

566.    Plaintiff Vessey expressed frustration and confusion, stating that the agency's conflicting communication caused him emotional distress and led him to believe retirement was his only viable option to protect his pension.

567.    WSDOT initially denying a reassignment and then offering a position after Plaintiff Vessey's retirement was acknowledged, undermined the interactive process and deprived Mr. Vessey of a meaningful opportunity to consider the accommodation.

568.    On information and belief, WSDOT's delayed and contradictory actions effectively forced Plaintiff Vessey into a premature retirement, amounting to a constructive discharge.

569.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## QQ.    Plaintiff Ryan Eubank

570.    Plaintiff Eubank sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

571.    Plaintiff Eubank's religion states that his is living to please God and it is God's will that he must sanctity his body in a way that is holy and honorable to Him. Further

based on his religion, Plaintiff believes that his body is temple and that he must treat it as such to preserve its sanctity. Injecting foreign and unnatural substances, such as the COVID-19 vacccine, would violate his religious beliefs before God. This sancity is fundamental to his beliefs in the scriptures of his religion and in accordance with his convictions before God.

572. On September 12, 2021, Plaintiff Eubank submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

573. Defendants then considered Plaintiff Eubank's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

574. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

575. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

576. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

577. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

578. Plaintiff Eubank submitted a Reassignment Request From on or about September 27, 2021.

579. Plaintiff did not receive a response to his reassignment request.

580. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**RR.   Plaintiff Scott Schutt**

581. Plaintiff Schutt sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

582. Plaintiff Schutt is a Christian who attends the Assembly of God Church. Plaintiff's religious belief is that medicine derived from aborted fetuses is morally and spiritually wrong, and it is his duty as a Christian to protect his body, a temple for the holy spirit, from defilement. Based on his sincerely held religious beliefs, Mr. Schutt is unable to take the COVID-19 vaccines currently available.

583. On August 26, 2021, Plaintiff Schutt submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

584. Defendants then considered Plaintiff Schutt's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

585. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

586. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

587. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

588. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

589. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1  **SS.    Plaintiff Sean Morgan**

590.    Plaintiff Morgan sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

591.    As a Christian, Plaintiff Morgan believes his body is a temple of the Holy Spirit and that he must not defile it by introducing substances like the vaccine, which he considers unclean and potentially harmful. Furthermore, many years ago, Plaintiff became deeply convicted in his faith, regarding vaccines to artificially override his body's natural immune stated as reall as reading the use of aborted fetal tissue in the production and testing of vaccines. He pledged to never again participate in something that would support taking anything from an unborn child and placing it inside his body, which would be detestale to God. Plaintiff Morgan explained that his faith teaches him to rely on God for protection and healing, and that accepting the vaccine would demonstrate a lack of faith and disobedience to biblical principles.

592.    On August 30, 2021, Plaintiff Morgan submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

593.    Subsequently, Defendants requested additional information from Plaintiff Morgan regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

594.    On September 10, 2021, Plaintiff Morgan complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

104    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

595.  Defendants then considered Plaintiff Morgan's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

596.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

597.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

598.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

599.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

600.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## TT.    Plaintiff Shasta Atkins

601.    Plaintiff Atkins sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

602.    On September 13, 2021, Plaintiff Atkins submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

603.    Defendants then considered Plaintiff Atkins's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

604.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

605.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

606.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

607.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

608.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

609.    Prior to the mandate, Plaintiff Atkins was granted 100% telework.

610.    This included field work being waived and office work being waived for the foreseeable future.

611.    In fact, Plaintiff Atkin's supervisor, George, conceded that filed work was not an essential part of her work duties and that Plaintiff Atkins has never performed field work as my essential duties or any duties since hired for the bridge office.

612.    Despite the above, Plaintiff Atkins received notice of separation from Defendants effective October 18, 2021.

613.    On or about October 18, 2021, Plaintiff Atkins was terminated from her job.

## UU.    Plaintiff Sheri Ferguson

614.    Plaintiff Ferguson sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

615.    Plaintiff Ferguson is a Christian who based on her religion, believes as it is stated in the Bible that each person is a child made in the image of God (Psalm 127:3; Romans 12 :1–2) , and she believes that the usage of aborted human fetuses cells in the

COVID-19 vaccine development is abhorrent and directly at odds with her religion. Plaintiff Ferguson cannot adhere to any policy that fuels and supports an unlawful persecution of her religious rights.

616. On September 9, 2021, Plaintiff Ferguson submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

617. Defendants then considered Plaintiff Ferguson's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

618. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

619. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

620. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

FIRST AMENDED COMPLAINT                    108        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                     720 Seneca Street, Ste. 107, No. 393
                                                     Seattle, WA 98101
                                                     (206) 799-4221

621.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

622.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## VV.    Plaintiff Sommer Beckner

623.   Plaintiff Sommer Beckner sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

624.   Plaintiff Sommer Beckner is a Christian who is religiously opposed to abortion derived vaccines, like the COVID-19 vaccine. Partaking in a vaccine made from aborted fetuses makes her complicit in an action that offends her religious faith.

625.   On September 8, 2021, Plaintiff Sommer Beckner submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

626.   Defendants then considered Plaintiff Sommer Beckner's request for a religious exemption, they determined a sincerely held religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

627.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

628.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

629.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

630.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

631.    On or about October 6, 2021, Plaintiff Sommer Beckner requested a *Loudermill* hearing.

632.    HR Deputy Director Monroe responded that Plaintiff Sommer Beckner would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

633.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## WW.   Plaintiff Stacy Katyryniuk

634.   Plaintiff Katyryniuk requested a *Loudermill* hearing by writing on or about October 13, 2021, prior to her termination to provide additional notice to WSDOT and discuss accommodation.

635.   Despite this request, no *Loudermill* hearing was ever provided.

636.   Plaintiff Katyryniuk was denied the opportunity to be heard regarding her separation from employment, in violation of her constitutional right to due process.

637.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## XX.   Plaintiff Stephen Austin

638.   Plaintiff Austin sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

639.   Plaintiff Austin Plaintiff Austin holds a sincerely held religious belief that he was made in the image of God, and that injecting foreign biological and technological substances, such as the COVID-19 vaccine, into his body defiles God's creation. He believes this form of pharmakeia is warned against in the Bible and is a means through which Satan misleads and corrupts humanity. Austin's belief is that the modern medical and pharmaceutical systems are Ahrimanic, materialist, and spiritually corrupt. He objects to vaccines produced by materialist science, viewing them as unnatural and not divinely ordained. Though vaccinated as a child, he has

111          **ARNOLD JACOBOWITZ & ALVARADO PLLC**

refused vaccines and medical interventions since turning eighteen. His convictions deepened after studying the Christian tradition and were solidified with the birth of his son in 2019.

640.   On or about August 26, 2021, Plaintiff Austin submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

641.   Subsequently, Defendants requested additional information from Plaintiff Austin regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

642.   On or about August 26, 2021, Plaintiff Austin complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

643.   Defendants then considered Plaintiff Austin's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

644.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

645.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

646.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

647.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

648.  Plaintiff Austin also submitted a disability exemption request, which was granted on or about September 28, 2021.

649.  Defendants determined that Plaintiff Austin had a disability the prevented him from being vaccinated against COVID-19 and in the same letter, Defendants determined that no accommodation could be made.

650.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## YY.    Plaintiff Steven Turcott

651.  Plaintiff Turcott sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

652. Plaintiff Turcott is a Christian whose faith in Jesus Christ requires him to be a good steward of his body, which he understands to be a temple of the Holy Spirit. Guided by scriptural teachings, including 1 Corinthians 6:19–20 and Matthew 25:14-30, Mr. Turcott believes he is accountable to God for what he puts into his body and for decisions that affect his health. His faith does not universally prohibit all vaccines or medications but requires case-by-case discernment using God-given wisdom, experience, and scriptural principles. In this case, he could not in good conscience receive a COVID-19 vaccine due to unresolved concerns about the potential use of aborted fetal tissue in its development, which would violate his sincerely held religious beliefs.

653. On August 25, 2021, Plaintiff Turcott submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

654. Subsequently, Defendants requested additional information from Plaintiff Turcott regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

655. On August 27, 2021, Plaintiff Turcott complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

656. Defendants then considered Plaintiff Turcott's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply

114     **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

657.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

658.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

659.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

660.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

661.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## ZZ.   Plaintiff Steven Walker

662.   Plaintiff Walker sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

FIRST AMENDED COMPLAINT                    115      **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

663.   Plaintiff Walker's faith is rooted in a lifelong belief in Jesus Christ, which he understands to have been predestined by God before his birth, as reflected in Ephesians 1:4–5 and Psalm 22:9–10. He believes that God established his belief system before he was even conceived, and that he is accountable to God alone for how he lives, including decisions affecting his health and body. Mr. Walker's convictions are shaped by his understanding of Galatians 5:18–21, which warns against the works of the flesh, including "witchcraft," translated from the Greek word pharmakeia, historically associated with the use or administration of drugs. Based on this interpretation and related scriptural guidance, he believes that to follow the Holy Spirit, he must abstain from participating in pharmaceutical-based gene therapies such as the COVID-19 vaccines. Mr. Walker also cites Romans 14:5–9 to support the principle that each person is individually accountable to God and must be fully persuaded in their own mind about matters not explicitly addressed in Scripture.

664.   On August 23, 2021, Plaintiff Walker submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

665.   Subsequently, Defendants requested additional information from Plaintiff Walker regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

666.   On September 1, 2021, Plaintiff Walker complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

667.  Defendants then considered Plaintiff Walker's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

668.  In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

669.  The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

670.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

671.  In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

672.  Plaintiff Walker submitted a Reassignment Request From on or about October 15, 2021.

673.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**AAA.  Plaintiff Terry Dunn**

674.    Plaintiff Dunn sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

675.    Plaintiff Dunn is a Christian who has lived with faith-based values for most of his life, but in the past several years made a serious, transformative decision to follow Jesus Christ with complete trust and obedience. Plaintiff Dunn no longer "practices religion" but instead seeks to live a life led entirely by faith. This recommitment was shaped by personal loss and spiritual growth and now governs all aspects of his conduct, including his health decisions. Mr. Dunn's religious beliefs compel him to avoid any medical intervention he believes would violate God's commandments or compromise his spiritual integrity. Specifically, he cannot permit any vaccine into his body that was developed, tested, or produced using cells derived from aborted fetal tissue. He views this connection to abortion as incompatible with his faith and considers any participation in such a system as morally equivalent to complicity in murder. His objection is not speculative or political, it is rooted in his understanding of scripture, including Hebrews 11:6, which states that "without faith it is impossible to please God," and John 8:24, which emphasizes the eternal consequences of disbelief. Mr. Dunn believes that taking the COVID-19 vaccine would represent a

FIRST AMENDED COMPLAINT            118         **ARNOLD JACOBOWITZ & ALVARADO PLLC**

failure to fully trust in God's protection and would force him to break a promise he made to his dying father to never turn his back on his faith.

676.    On or about August 26, 2021, Plaintiff Dunn submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

677.    Subsequently, Defendants requested additional information from Plaintiff Dunn regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

678.    On or about August 26, 2021, Plaintiff Dunn complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

679.    Defendants then considered Plaintiff Dunn's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

680.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

681.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

682.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

683.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

684.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**BBB.   Plaintiff Todd Humphreys**

685.    Plaintiff Humphreys sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

686.    Plaintiff Humphreys is a Christian who sincerely objected to getting the COVID-19 vaccine on religious grounds. Although he did not submit a written religious exemption request, he communicated his objection to the mandate to his supervisor and others at WSDOT prior to his retirement. While he did not publicly disclose the full basis for his objection in fear of losing his retirement benefits, he made it clear that he did not agree with the mandate and wished his objection to be noted before leaving his position.

FIRST AMENDED COMPLAINT                    120          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

687.   Under duress, Plaintiff Humphreys chose to retire rather than violate his beliefs, and his actions reflect the sincerity of his religious conviction.

688.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**CCC.  Plaintiff Tyler Ratkie**

689.   Plaintiff Ratkie sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

690.   Plaintiff Ratkie Plaintiff Ratkie holds a sincerely held religious belief rooted in their Christian faith that prohibits taking the COVID-19 vaccine. Plaintiff believes the vaccine is not a true necessity and that Plaintiff must rely on faith in God for protection and health, rather than on human-developed interventions like the COVID-19 vaccine. Plaintiff believes his body is a temple of the Holy Spirit and that he is called to honor God with it. Taking the vaccine would violate his conscience, which is guided by scripture, including 1 Corinthians 6:19-20. Plaintiff has prayed for guidance and believes firmly that abstaining from the vaccine is the right decision according to his faith.

691.   On August 30, 2021, Plaintiff Ratkie submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

692. Subsequently, Defendants requested additional information from Plaintiff Ratkie regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

693. On September 9, 2021, Plaintiff Ratkie complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

694. Defendants then considered Plaintiff Ratkie's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

695. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

696. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

697. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

FIRST AMENDED COMPLAINT                    122        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                              720 Seneca Street, Ste. 107, No. 393
                                                              Seattle, WA 98101
                                                              (206) 799-4221

698.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

699.    On or about October 12, 2021, Plaintiff Ratkie requested a *Loudermill* hearing.

700.    HR Manager Merlinda Sain responded that Plaintiff Ratkie would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

701.    On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**DDD.  Plaintiff Wendy Punch**

702.    Plaintiff Punch sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

703.    Plaintiff Punch is an independent Christian. Not only does the aborted fetal cells use in the COVID-19 vaccines' development go against her religious beliefs, but she also believes that God built her and her immune system, and the vaccines would alter what God created. Based on her sincerely held religious beliefs, Ms. Punch is unable to take the COVID-19 vaccines currently available.

704.    Despite holding these religious beliefs, Plaintiff Punch did not formally submit a religious exemption request because she reasonably believed, based on WSDOT's pattern and practice of denying accommodation of nearly all such requests without meaningful review, that doing so would be futile.

FIRST AMENDED COMPLAINT                    123         **ARNOLD JACOBOWITZ & ALVARADO PLLC**

705. On information and belief, Plaintiff Punch was aware of multiple coworkers whose exemption requests were granted but unable to be accommodation and observed that the agency had predetermined outcomes without engaging in good faith or individualized evaluation.

706. Plaintiff Punch's decision not to submit a formal exemption was the result of a chilling effect created by WSDOT's conduct, not a lack of religious conviction.

707. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**EEE.   Plaintiff William DuBose**

708. Plaintiff DuBose sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

709. Plaintiff DuBose is a Christian and based on religious beliefs, he is opposed the use of vaccines or medicine with ingredients derived from abortions. Based on this sincerely held religious belief, Mr. DuBose is unable to take the COVID-19 vaccines currently available.

710. On August 29, 2021, Plaintiff DuBose submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

711. On or about September 24, 2021, HR Director Jeff Pelton sent correspondence where Defendants stated that WSDOT HR did not receive sufficient information to

124   **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

determine whether Plaintiff's request was based on a sincerely held religious belief that prevented him from being vaccinated and therefore could not be approved.

712. There was no request for additional information, just a rejection of his request.

713. Defendants issued this denial without first requesting additional information or clarification from Plaintiff DuBose, despite doing so for other employees whose submissions were also brief or lacked detail.

714. Plaintiff DuBose received notice of separation from Defendants effective October 18, 2021.

715. Under duress, Plaintiff DuBose felt the only other option besides being terminated was early retirement.

716. Plaintiff DuBose was forced into retirement (five years early) on October 18, 2021.

**FFF.   Plaintiff Victoria Gardner**

717. Plaintiff Victoria Gardner sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

718. Plaintiff Gardner is a Christian whose religious beliefs regarding the sanctity of human life conflict directly with any requirement to inject abortion-tainted vaccinations into my body. All available Covid vaccines utilize abortion-derived cell lines in either the confirmation and testing stage of development or in the production process.

719.    On September 3, 2021, Plaintiff Gardner submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

720.    Defendants then considered Plaintiff Gardner's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

721.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

722.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

723.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

724.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

725. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## GGG. Plaintiff Brion Hogan

726. Plaintiff Hogan sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

727. Plaintiff Hogan is a Roman Catholic Christian whose religious beliefs regarding the sanctity of life are opposed to the use of vaccines that use, at any stage, abortion-derived cell lines.

728. On October 1, 2021, Plaintiff Hogan submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

729. Defendants then considered Plaintiff Hogan's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

730. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

127    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

731. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

732. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

733. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

734. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**HHH. Plaintiff Brady Todhunter**

735. Plaintiff Todhunter sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

736. Plaintiff Todhunter is a Christian whose sincerely held religious beliefs affirm that his body belongs to God and must be kept holy in accordance with Scripture. As part of his faith, he believes he is commanded to glorify God through faithful stewardship of his health and body. His religion instructs that nothing should enter the body if doing so would violate one's conscience. Receiving the COVID-19 vaccine would conflict with these beliefs and constitute a direct violation of his religious convictions.

737.    On September 6, 2021, Plaintiff Todhunter submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

738.    Defendants then considered Plaintiff Todhunter's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

739.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

740.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

741.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

742.    In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

743.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

### III.    Plaintiff Craig Henriksen

744.   Plaintiff Henriksen sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

745.   Plaintiff Henriksen is a Christian whose religious beliefs regarding the sanctity of life are opposed to the use of vaccines that use, at any stage, abortion-derived cell lines.

746.   On September 17, 2021, Plaintiff Henriksen submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

747.   Defendants then considered Plaintiff Henriksen's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

748.   In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

749. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

750. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

751. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

752. Plaintiff Henriksen received notice of separation from Defendants effective October 18, 2021.

753. On or about October 18, 2021, the WSDOT Leave Administrator approved Plaintiff Henriksen's request for protected leave under FMLA/PFML due to a documented medical condition.

754. Plaintiff Henriksen leave approval was granted on October 18, 2021, and his began effective October 19, 2021.

755. As a result of this leave approval, Plaintiff Henriksen's separation notice was rescinded.

756. On March 31, 2022, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

JJJ.    **Plaintiff Gabriel Newman**

757.    Plaintiff Newman sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

758.    Plaintiff Newman is a Christian who believes that the body is the temple of the Holy Spirit, and one must be very selective about what products are put into one's body. Based on these sincerely held religious beliefs, Mr. Newman is unable to take the COVID-19 vaccines currently available.

759.    On September 9, 2021, Plaintiff Newman submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

760.    Defendants then considered Plaintiff Newman's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

761.    In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

762.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job

duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

763.  Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

764.  Plaintiff Newman submitted a Reassignment Request From on or about September 23, 2021.

765.  Initially, Defendants did offer Plaintiff Newman reassignment to a full-time Transportation IT Data Management Journey role on or about October 1, 2021.

766.  However, on October 14. 2021, the reassignment letter was rescinded because "[u]nfortunately, the position you were offered has a higher salary range than your current classification level at the IT Customer Support- Journey level."

767.  Defendants were unable to identify any other vacancies to replace the one offered and initiated the separation process

768.  On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**KKK.  Plaintiff LaVorn Cheth**

769.  Plaintiff Cheth sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

133    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

770. Plaintiff Cheth is a Christian who holds a sincere religious belief that his physical body is a holy temple of the Lord Christ and Savior, and the dwelling place of God. As part of his faith, he believes he has a sacred responsibility to honor and protect his body in accordance with Scripture and his conscience before God. Based on this belief, Plaintiff Cheth cannot in good conscience accept any substance, including the COVID-19 vaccine, that he views as violating this religious duty. For the past 15 years, he has practiced this belief, which also includes objections to other vaccines, prescription medications, and pharmaceutical treatments. Instead, he relies on God-given natural remedies rooted in the elements of the natural world. Plaintiff Cheth has never received a vaccination in his life, in adherence to these religious convictions.

771. On August 26, 2021, Plaintiff Cheth submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

772. Defendants then considered Plaintiff Cheth's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

773. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential

134    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

774.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

775.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

776.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

777.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## LLL.   Plaintiff Miroslav Tsanev

778.   Plaintiff Tsanev sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

779.   Plaintiff Tsanev accepted Yeshua as his personal Savior in 1985 after having previously heard the Gospel. This started an entire series of events that pointed him in an entirely new, and better direction, in his life. He never regretted the decision and has embraced the teachings of Yeshua in all aspects of his life and works daily to become a better Christian disciple, reflecting Christ in all aspects of his life. He

FIRST AMENDED COMPLAINT                    135          **ARNOLD JACOBOWITZ & ALVARADO PLLC**

believed the COVID-19 vaccine would harm his body and he believed his walk with Christ and the Holy Spirit were prompting him to decline any association with it.

780. On September 3, 2021, Plaintiff Tsanev submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

781. Defendants then considered Plaintiff Tsanev's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

782. In the same notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

783. The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

784. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

136    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

785.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

786.   Plaintiff Tsanev submitted a Reassignment Request From on or about September 29, 2021.

787.   On or about October 11, 2021, Plaintiff Tsanev was told that he was not matched to a reassignment position.

788.   Plaintiff Tsanev also applied for a medical/disability exemption on or about October 15, 2021.

789.   Plaintiff Tsanev's medical/disability exemption was approved, but accommodation was denied.

790.   Prior to the mandate, from June 2021 to October 18, 2021, Plaintiff Tsanev was working remotely.

791.   On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**MMM.    Plaintiff Shaun Bukovnik**

792.   Plaintiff Bukovniksincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

793.   Plaintiff Bukovnik is a Bible-believing Christian who has held this faith since a small child. He has spent his entire life fully engaged in church attendance, including

serving as part of the Praise and Worship Team, as both singer and guitarist, as well as active in other church leadership. He objects strongly to the injection of fetal stem cells into his body. He also believes this injection is tantamount to cannibalism; since he was created in the image of God, this act would alter his God-given genetic coding.

794. On October 15, 2021, Plaintiff Bukovnik submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

795. Defendants acknowledged receipt of Plaintiff Bukovnik's request for a religious exemption through automatic email, but they neither accepted nor denied Plaintiff Bukovnik's request for a religious exemption. He received no answer and was terminated on or about October 18, 2021.

796. In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

797. On October 18, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

## NNN. Plaintiff Robert Covington

798. Plaintiff Covington sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

799. Plaintiff Covington came to his Catholic faith approximately 15 years ago. He believes that a developing fetus in the womb was created by God and is a life that

deserves to be protected. He also understood cell lines for the vaccine were derived from abortions and that utilization of those vaccines violates the Catholic teaching to respect the dead (Catechism of the Catholic Church (2300)). His faith is deeply held and demands that he honor the obligation to protect the unborn, a beautiful and sacred formation of a person by God in the womb.

800. On January 12, 2022, Plaintiff Covington submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief and how it conflicted with the ability to comply with the Vaccine Requirement.

801. Subsequently, Defendants requested additional information from Plaintiff Covington regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

802. On January 18, 2022, Plaintiff Covington complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

803. Defendants then considered Plaintiff Covington's request for a religious exemption, they determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, they granted the exemption, and they notified the Plaintiff about the decision.

804. Two days later from the date of the notice, and without further input from the Plaintiff regarding accommodating the exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because

"the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

805.   The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

806.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

807.   In fact, there were no reassignment positions available to the Plaintiff based on the reassignment limitations.

808.   On January 27, 2021, the State terminated this employee's continued public employment without the employee's consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

809.   Defendant Scarton was, at all material times hereto, the ultimate decision maker who implemented the policies and procedures that applied the Governor's Proclamation 20-14; 20-14.01; and 20-14.0201.

810.   Defendant Scarton was the person who, while acting on WSDOT's behalf, set in motion an unbroken chain of events that caused each Plaintiff's continued public employment to be terminated.

811.   Defendant Scarton, at all material times was, and currently is, a King County resident.

812.  Law Against Discrimination embodied in Ch. 49.60 RCW (WLAD) and to comply

On September 27, 2021, the Governor amended and superseded Proclamation 20-

14.1 by issuing Proclamation 21-14.2 that was effective when it was issued.

813.  Subsequently to Proclamation 21-1.1 being issued, the State Office of Financial

Management (OFM) issued guidance to each State agency providing that each agency

should promulgate that agency's official policy implementing and applying the Get

Vaccinated and Accommodated or be Terminated Mandate within the agency, and

specifically its official policy regarding exemption and accommodation decisions

regarding its employees.

814.  Defendant Scarton was the individual who created and promulgated WSDOT's

official policy that implemented and applied the Get Vaccinated and Accommodated

or be Terminated Mandate within WSDOT, and specifically WSDOT's official

policy to make exemption and accommodation decisions regarding WSDOT's

employees.

815.  Defendant Scarton, at all material times, was WSDOT's ultimate decision maker for

the way the Get Vaccinated, Accommodated or be Terminated Mandate was

implemented and applied to WSDOT employees, and specifically how exemption

and accommodation decisions were made by WSDOT for its employees.

816.  Defendant Scarton's actions set in motion a series of unbroken events that caused

each Plaintiff to be denied an accommodation and their continued public employment

with WSDOT to be involuntarily terminated.

817.    Each Plaintiff applied for a religious exemption from the Get Vaccinated, Accommodated or be Terminated Mandate prior to October 18, 2021.

818.    Each Plaintiff asserted in their respective request for exemption that they each sincerely held a religious belief that interfered with their ability to become fully vaccinated and comply with the Get Vaccinated, Accommodated or be Terminated Mandate.

819.    Defendants granted each Plaintiff a religious exemption to the Get Vaccinated, Accommodated or be Terminated Mandate.

820.    Each Plaintiff, in fact, sincerely held a religious belief that interfered with their ability to become fully vaccinated and comply with the Get Vaccinated and Accommodated or be Terminated Mandate.

821.    Defendants considered each Plaintiff's religious exemption request.

822.    Defendants granted each Plaintiff's religious exemption request.

823.    Defendants' official policy regarding accommodation decisions provided a mechanism by which WSDOT had unbridled discretion to make individualized accommodation decisions for each exempt WSDOT employee without regard to whether they were exempted for religious or secular reasons.

824.    Defendants exercised the discretion they bestowed upon themselves when they considered whether to accommodate each WSDOT employee to whom they granted an exemption.

FIRST AMENDED COMPLAINT                142        **ARNOLD JACOBOWITZ & ALVARADO PLLC**

825. This discretion permitted Defendants to decide which unvaccinated WSDOT exempt employees could continue their public employment and which WSDOT employees would not continue their public employment.

826. Defendants exercised the discretionary mechanism to treat WSDOT's religiously exempt employees differently and less favorably than WSDOT's secularly exempt employees.

827. 572 WSDOT employes applied for a religious exemption the Get Vaccinated and Accommodated or be Terminated Mandate.

828. Of those 572 WSDOT employees who applied for a religious exemption, 11 withdrew their request because they resigned or were coerced to abandon their sincerely held religious beliefs and became fully vaccinated.

829. WSDOT granted 457 of the remaining 561 religious exemption requests.

830. WSDOT denied the remaining 104 religious exemption requests.

831. WSDOT only accommodated 52 of their religiously exempt employees.

832. WSDOT denied accommodation to the remaining 404 WSDOT religiously exempt employees.

833. On the other hand, 162 WSDOT employees requested secular exemptions from the Get Vaccinated and Accommodated or be Terminated Mandate.

834. Three secular exemption requests were withdrawn.

835. WSDOT granted all the remaining 159 secular exemption requests,

836. Of the 159 secularly exempt WSDOT employees, 27 withdrew their accommodation requests.

837. WSDOT accommodated 122 of the remaining 132 secularly exempt employees.

838. WSDOT denied accommodation to WSDOT's remaining 10 exempt employees.

839. The unvaccinated secularly exempt WSDOT employees were similarly situated to the unvaccinated religiously exempt WSDOT employees because they each were unvaccinated, required to perform the same public-facing essential job functions, and, thus, posed the same perceived risk of becoming infected and transmitting the virus.

840. OFM's guidance provided each State agency should review any decision it makes to accommodate an agency's exempt employee every 60 days.

841. WSDOT's official policy that implemented and applied the Get Vaccinated and Accommodated or be Terminated Mandate treated religiously exempt WSDOT employees differently and less favorably than secularly exempt WSDOT employees in the accommodation process.

842. WSDOT did not promulgate its official policy that implemented and applied the Get Vaccinated and Accommodated or be Terminated Mandate in accordance with the rule-making provisions in Washington's Administrative Procedures Act, Ch. 34.05 RCW

843. WSDOT's official policy that implemented and applied the Get Vaccinated and Accommodated or be Terminated Mandate was not generally applicable because it

144    ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

provided a mechanism by which Defendants bestowed upon themselves unbridled discretion to make individualized accommodation decisions.

844.    OFM's guidelines stated each agency was to make accommodation decisions based on the most current medical information.

845.    WSDOT did not follow OFM's guidance because the most current medical information at the time Defendants were making their accommodation decisions showed the true threat WSDOT accepted by allowing its fully vaccinated employees to continue their public employment would not appreciably increase if it allowed its unvaccinated exempt employees to continue their public employment.

846.    Additionally, the most current medical information at the time Defendants were making their accommodation decisions showed that a previously infected WSDOT employee had equal or more immunity from contracting COVID than WSDOT's fully vaccinated employees, yet WSDOT's official policy t unequivocally and without exception forbade WSDOT from considering natural immunity when making an accommodation decision.

847.    The most current medical information at the time Defendants were making their accommodation decisions showed the then available COVID-19 vaccines did not reduce a fully vaccinated individual's risk of contracting COVID and transmitting it to others.

848.    Instead, the current medical information at the time Defendants were making their accommodation decisions showed the COVID-19 vaccines then available were a

therapeutic medical treatment that may have reduced an infected individual from experiencing serious health after becoming infected.

849. The mass terminations caused by WSDOT's official policy that implemented and applied the Get Vaccinated and Accommodated or be Terminated Mandate resulted in staffing shortages within WSDOT.

850. The staffing shortages imposed a burden on WSDOT and the public by reducing WSDOT's capacity to provide ferry and other transportation services to the public.

851. To fulfill its responsibilities to the public, WSDOT hired contractors to fulfill its needs Defendants created by the staffing shortages related to the mass layoffs that occurred because WSDOT's employees could not or would not get vaccinated.

852. WSDOT did not require these contractors to abide by WSDOT's official policy that implemented and applied the Get Vaccinated, Accommodated or be Terminated Mandate.

853. Instead, WSDOT permitted the replacement contractors it hired to make their own accommodation decisions.

854. In fact, some Plaintiffs began working for contractors who exempted them from having to comply with the Get Vaccinated, Accommodated or be Terminated Mandate and then accommodated their religious exemption, thereby allowing those same unvaccinated Plaintiffs to resume providing the same essential job functions they had provided to WSDOT when they were WSDOT employees.

855. WSDOT's official policy that implemented and applied the Get Vaccinated, Accommodated or be Terminated Mandate required Plaintiffs and other WSDOT employees who sincerely held religious beliefs that interfered with their ability to become fully vaccinated and comply with the Get Vaccinated, Accommodated or be Terminated Mandate asked required all WSDOT employees who requested a religious exemption to disclose their personal health care information regarding their past health care history. This requirement was not carefully tailored to serve any legitimate State interest.

856. WSDOT's official policy that implemented and applied the Get Vaccinated, Accommodated or be Terminated Mandate chilled all WSDOT employees who sincerely held religious beliefs that interfered with them becoming fully vaccinated from pursuing a religious exemption or a religious accommodation.

857. Instead, these WSDOT's employees that qualified for an exemption or accommodation either resigned or became fully vaccinated, thereby abandoning their sincerely held religious beliefs as well as their personal autonomy over their body and health care decisions.

858. Despite the chilling effect of the Get Vaccinated, Accommodated or be Terminated Mandate and WSDOT's official policy that implemented and applied it, Plaintiffs are amongst the few WSDOT employees who asserted their rights to freely exercise their sincerely held religious beliefs as well as their rights to be treated on par with secularly exempt employees and be free from unwanted intrusions into their private affairs.

859. Based on their course of dealing with WSDOT and their statutory and other rights, each Plaintiff had a reasonable belief in continued public employment unless they were terminated for cause because each of them could not freely exercise their sincerely held religious beliefs and become fully vaccinated or start the process by October 18, 2021.

860. OFM's guidance contained a specific provision that allowed all State agency employees to use accrued sick time and paid leave to become fully vaccinated provided they began the process on or prior to October 18, 2021.

861. Defendants granted each Plaintiff a religious exemption at the same time they made their decision not to accommodate them.

862. Defendants did not permit any interactive dialogue with any exempt Plaintiff after it granted them a religious exemption and then proceeded to make an accommodation decision for each exempt employee.

863. Each Plaintiff requested reasonable accommodations such as weekly testing and continuing the current protective and safety measures that had worked successfully for each Plaintiff for the past 18 months, but Defendants would not consider any alternative accommodation after they granted each Plaintiff a religious accommodation.

864. Each Plaintiff requested less restrictive alternatives than terminating their continued public employment like administrative leave without pay until the pandemic subsided, a different vaccine became available that did not conflict with their

148                **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

sincerely held religious beliefs, or an equally effective alternative to stem COVID's spread became available, but Defendants refused to consider any less restrictive alternative.

865. Defendants did not seek to impose the least restrictive alternative that could equally serve the State's interest in stemming COVID's spread,

866. Defendants did not allow any Plaintiff a meaningful opportunity to contest Defendants' decision to not accommodate them and then eventually terminated each Plaintiff's continued public employment.

867. Specifically, Defendants did not permit any Plaintiff an opportunity to present rebuttal affidavits or declarations contesting the bases upon which Defendants made their accommodation decision.

868. Defendants did not undertake any benefit/burden analysis as to each Plaintiff when making their respective accommodation decision; rather, Defendants terminated each Plaintiff in mass using the same boilerplate letters that they sent to each Plaintiff.

869. Defendants' accommodation decisions were made contrary to the expressed provisions in Proclamation 21-14.2.

870. Each Plaintiff properly submitted a Notice of Tort Claim and allowed sixty days to expire prior to each Plaintiff commencing this action.

871. Each Plaintiff awaited an opportunity to engage in a meaningful interactive dialogue and a pre-deprivation hearing before making a final decision to not become fully

vaccinated up until Defendants no longer permitted each Plaintiff to come to work and perform their essential job functions, which was on or after October 18, 2021.

872.    Defendants did not offer any Plaintiff a meaningful post-deprivation hearing regarding WSDOT's accommodation decision and involuntarily terminated each Plaintiff's continued public employment.

873.    Defendants did not notify or offer any Plaintiff a robust full evidentiary hearing regarding their accommodation decision or their decision to involuntarily terminate each Plaintiff's continued public employment.

### III.    FIRST CAUSE OF ACTION — BREACH OF THE AFFIRMATIVE OBLIGATION TO ACCOMMODATE RELIGION

874.    Plaintiffs reallege the foregoing allegations of this Complaint.

875.    Defendants violated WLAD by failing to accommodate their sincerely held religious beliefs.

876.    After Defendants reviewed each Plaintiff's religious exemption request, they agreed each Plaintiff sincerely held a religious belief that interfered with their ability to become fully vaccinated and comply with the Get Vaccinated, Accommodated or be Terminated Mandate.

877.    Each Plaintiff, therefore, qualified for, and was granted, a religious exemption from having to become fully vaccinated and were excused from having to become fully vaccinated and complying with the Get Vaccinated, Accommodated or be Terminated Mandate.

878. Based on Defendants' agreement that each Plaintiff qualified for a religious exemption from the Get Vaccinated, Accommodated or be Terminated Mandate, they had an affirmative obligation to accommodate them.

879. Each Plaintiff notified Defendants about their sincerely held religious beliefs and personal autonomy rights.

880. Concurrent with Defendants granting each Plaintiff a religious exemption from having to comply with the Get Vaccinated, Accommodated or be Terminated Mandate, Defendants, without any interactive dialogue involving any Plaintiff, summarily denied each Plaintiff a religious accommodation and notified them about their decision in the same letter wherein they notified them that their religious exemption request was granted.

881. After Defendants made their unilateral accommodation decision as to each Plaintiff, WSDOT's official policy that implemented and applied the Get Vaccinated, Accommodated or be Terminated Mandate invited each Plaintiff to have an informal discussion with Defendants whereby each Plaintiff could discuss Defendants' accommodation decision.

882. Plaintiffs represent the group of religiously exempt WSDOT employees who adamantly asserted their free exercise and bodily autonomy rights; and they tried, in vain, to persuade Defendants that Defendants were legally required to provide them a religious accommodation.

883. Multiple Plaintiffs attempted to, and some did, informally discuss with Defendants, or a WSDOT representative they appointed, the decision to not accommodate them and firmly asserted their free exercise and personal autonomy rights.

884. These informal discussions were a sham. Defendants themselves or their designated representatives refused to discuss the basis for their accommodation decision.

885. Defendants permitted no discussion whatsoever regarding the current medical information regarding COVID-19, including but not limited to: therapeutic interventions that reduced the severity of health consequences if a person was infected; breakthrough infections amongst the fully vaccinated; comparative threat of transmission between the unvaccinated and the fully vaccinated; the current threat of transmission that WSDOT accepted by allowing fully vaccinated WSDOT employees to continue their public employment; the incremental increase in transmission threat, if any, if the few unvaccinated religiously exempt WSDOT workers were allowed to continue their public employment; natural immunity's efficacy at preventing reinfection and transmission, the then existing COVID-19 vaccines' efficacy at preventing infection and transmission, or the current transmission data that showed on a more likely than not basis, and to a medical certainty, that each infected person infected multiple people despite widespread COVID-19 vaccinations having been administered since they were granted emergency use authorization by the US Food and Drug Administration in 2020.

886. This latter data proved to be true. By 2023, 80%-90% of the U.S. population had become infected with COVID.

887.  This infection percentage occurred despite over 90% of WSDOT's workforce becoming fully vaccinated.

888.  Some Plaintiffs attempted to propose accommodations for the religiously exempt WSDOT employees such as requiring weekly testing plus continuing to comply with the safety and precaution measures that they had successfully complied with during the prior 18 months, which included isolation upon infection discovery, masking, and social distancing, .

889.  WSDOT did not trace any COVID transmission to any Plaintiff since the pandemic began.

890.  Defendants refused to consider any accommodation proposed by any Plaintiff.

891.  Some Plaintiffs proposed less restrictive alternatives than terminating each Plaintiff's continued public employment such as administrative leave without pay, periodic review of the need for exclusion from WSDOT's active workforce, and reinstatement if there was a substantial change in circumstances.

892.  Administrative leave without pay, periodic review, and reinstatement if there was a substantial change in circumstances was a less restrictive alternative that would equally serve the State's interests.

893.  After the Governor issued Proclamation 21-14.2, he amended and superseded that Proclamation on November 24, 2021, when he issued Proclamation 21-14.3, which became effective upon issuance.

894.    After the Governor issued Proclamation 21-14.3, he amended and superseded that Proclamation on March 23, 2022, when he issued Proclamation 21-14.4, which became effective upon issuance.

895.    After the Governor issued Proclamation 21-14.4, he amended and superseded that Proclamation on May 20, 2022, when he issued Proclamation 21-14.5, which became effective upon issuance.

896.    Finally, on October 28, 2022, the Governor issued Proclamation 21-14.6 that amended and superseded Proclamation 21-14.6 that rescinded the Get Vaccinated, Accommodated or be Terminated Mandate. Proclamation 21-14.6 became effective as of 11:59 p.m. on October 31, 2022.

897.    Had Defendants utilized the less restrictive alternative of placing each Plaintiff and other religiously exempt WSDOT employees on administrative leave without pay, periodically reviewed the need for them being excluded from WSDOT's active workforce, and reinstated each Plaintiff after Proclamation 21-14.6 became effective, then each Plaintiff would have been restored to their pension benefits and their position, this action for reinstatement would not have been necessary, and each Plaintiff's claim(s) against WSDOT would be more limited than they are presently. If reinstated, then ostensibly their claims would be what monetary damages (backpay), if any, to which they may be entitled.

898.    Defendants were obligated to utilize the least restrictive alternative to terminating each Plaintiff's continued public employment that would equally serve the State's interest when they denied each Plaintiff a religious accommodation.

899.    Despite their obligation to utilize the least restrictive alternative, Defendants freely and voluntarily chose to implement and apply the most restrictive alternative which was to not provide any Plaintiff with a religious accommodation and terminate their continued public employment if they did not start the process of becoming fully vaccinated by October 18, 2021.

900.    The proposed reasonable accommodations and less restrictive alternatives Plaintiffs proposed would have imposed no significant burden on WSDOT had they been utilized.

901.    Defendants violated WLAD by failing to reasonably accommodate each Plaintiff's religious exemption.

## IV.    SECOND CAUSE OF ACTION – WLAD DISPARATE IMPACT

902.    Plaintiffs reallege the prior allegations of this Complaint.

903.    WSDOT's official policy that implemented the Get Vaccinated, Accommodated, or be Terminated Mandate caused the Mandate to fall more harshly on WSDOT's religiously exempt unvaccinated employees than it did on WSDOT's unvaccinated secularly exempt employees.

904.    WSDOT's religiously exempt unvaccinated employees' continued public employments were terminated in far larger and statistically significant numbers and

percentages than its unvaccinated secularly exempt employees such that the impact more likely than not did occur by mere chance.

905.   This disparate impact evidence Defendants' discriminatory motive when they implemented and applied the Get Vaccinated, Accommodated, or be Terminated Mandate to all WSDOT's unvaccinated exempt employees

906.   Defendants, therefore, violated RCW 49.60.180 by engaging in discriminatory employment practices.

## V.      THIRD CAUSE OF ACTION – WLAD DISPARATE TREATMENT

907.   Plaintiffs reallege the prior allegations in this Complaint.

908.   Plaintiffs were unvaccinated WSDOT employees who were religiously exempt from having to become fully vaccinated.

909.   Plaintiffs were similarly situated to WSDOT's unvaccinated employees who were secularly exempt from having to become fully vaccinated.

910.   Both WSDOT's religiously exempt employees and its secularly exempt employees performed the same or similar essential public-facing job functions; and they were, therefore, similarly situated.

911.   The only difference between Plaintiffs and WSDOT's unvaccinated secularly exempt employees was Plaintiffs' exemptions were granted so they could freely exercise their sincerely held religious beliefs while WSDOT's unvaccinated secularly exempt employees' exemptions were granted for secular reasons.

912. Given this distinction, Plaintiffs are members of a protected class – those who freely exercise their sincerely religious beliefs free from State interference that is not narrowly tailored to serve only the State's compelling interests.

913. Moreover, Plaintiffs were asserting fundamental rights to free exercise and personal autonomy that are protected by the Washington State Constitution from State interference that is not narrowly tailored to serve only the State's compelling interests.

914. Plaintiffs were asserting fundamental rights to Free Exercise that are protected by the Free Exercise Clause in the United States Constitution's First Amendment that is made applicable to the State by the Fourteenth Amendment to the United States Constitution.

915. .Plaintiffs were also asserting rights to bodily integrity and medical autonomy that are protected by the substantive process clause of the Fourteenth Amendment to the United States Constitution absent heightened scrutiny.

916. When making their accommodation decisions for WSDOT's unvaccinated exempt employees, Defendants treated Plaintiffs and all WSDOT's unvaccinated religiously exempt employees differently and less favorably than WSDOT's unvaccinated secularly exempt employees who were similarly situated.

917. There is no legitimate nondiscriminatory reason that justified Defendants' disparate treatment of Plaintiffs from their similarly situated unvaccinated counterparts who were secularly exempt from having to become fully vaccinated.

918.  Defendants violated WLAD's prohibition on religious discrimination in employment practices.

## VI.    FOURTH CAUSE OF ACTION – WLAD RETALIATION

919.  Plaintiffs reallege the prior allegations in this Complaint.

920.  Plaintiffs were engaging in protected activity by asserting their rights to be free from State interference on their Free Exercise and personal autonomy rights that are not narrowly tailored to serve only the State's compelling interests.

921.  When Plaintiffs engaged in their protected activities and protested to Defendants that their conduct was wrongful, Defendants retaliated against Plaintiffs by wielding their unbridled discretion they bestowed upon themselves and refused each Plaintiff any religious accommodation, refused any less restrictive alternative, and terminated their continued public employment effective on October 19, 2021.

922.  A substantial motivating factor for Defendants' decisions was to retaliate against each Plaintiff for engaging in the protected activity described in this Complaint.

923.  Defendants have no legitimate nonretaliatory reason justifying their treating Plaintiffs differently than similarly situated unvaccinated religiously exempt employees who were accommodated and allowed to continue their public employment unvaccinated.

924.  Defendants have no legitimate nonretaliatory reason justifying their treating Plaintiffs differently than other unvaccinated exempt employees who they accommodated and were allowed to continue their public employment with WSDOT.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

925. Defendants violated WLAD by retaliating against each Plaintiff for them engaging in protective activity.

926. In addition to the retaliatory termination of Plaintiffs' employment on October 19, 2021, Defendants engaged in continuing retaliation by blacklisting certain Plaintiffs, including Plaintiff Jeremy Greene, from future public employment opportunities with WSDOT, despite those Plaintiffs meeting the necessary qualifications and actively seeking reemployment.

927. As to Plaintiff Jeremy Greene, Defendants engaged in additional acts of retaliation after his October 2021 termination when he attempted to resecure employment through WSDOT in 2022.

928. Plaintiff Jeremy Greene, found to be      qualified, was given a conditional offer of employment in January 2022.

929. In February 2022, after Plaintiff Jeremy Greene submitted a religious exemption request, which Defendants acknowledged was based on sincerely held religious beliefs, Defendants rescinded Plaintiff's conditional offer of reemployment.

930. Thereafter, Plaintiff Jeremy Greene continued to engage in protected activity by requesting clarification, invoking his rights to reemployment, and advocating for religious accommodation.

931. Internal emails among WSDOT leadership in April, November, and December 2022 show that Defendants chose to permanently bar Plaintiff Jeremy Greene from

reemployment based on his history of raising objections, asserting religious rights, and seeking accommodation.

932. Defendants were not obligated to conduct a formal investigation or provide due process before deciding not to rehire Plaintiff Jeremy Greene following his separation in October 2021.

933. However, their internal communications reveal that the true basis for denying reemployment was based on subjective assessments of his "tone," persistence, and communications, which are protected conduct.

934. Furthermore, after Plaintiff Jeremey Greene was contacted by WSDOT HR on or about February 2023 for a reference check on a pending application, WSDOT senior leadership used past communications, many of which were protected expressions regarding rights to accommodation and reemployment, to justify labeling him ineligible for rehire.

935. This decision was based on subjective assessments and was untethered from any formal disciplinary process, demonstrating a continued pattern of retaliation for engaging in protected activity.

936. Defendants' refusal to rehire Plaintiff Greene was not based on any legitimate or neutral employment standard, but rather on their animus toward his constitutionally and statutorily protected activity.

937. Upon information and belief, other Plaintiffs have been similarly, whether officially or unofficially, effectively blacklisted by WSDOT.

FIRST AMENDED COMPLAINT                    160        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

938.  These actions constitute further acts of retaliation under WLAD and violate Plaintiffs

rights under state and federal law.

## VII.    FIFTH CAUSE OF ACTION – TERMINATION THAT WRONGFULLY VIOLATES PUBLIC POLICY

939.  Plaintiffs reallege the prior allegations of this Complaint.

940.  Defendants wrongfully terminated each Plaintiff's continued public employment in

violation of this State's public policy.

941.  Washington law recognizes a private right of action for tort damages when employers

terminate their employee's employment for reasons that are against Washington's

stated public policy.

942.  Washington's stated public policy is determined by Washington's State Constitution,

its statutes, and its Supreme Court's binding judicial decisions.

943.  Moreover, the Washington Constitution, Article I, §1, expressly acknowledges the

United States Constitution is the supreme law of the land. Accordingly, binding

decisions from the United States Supreme Court interpreting and construing the

United States Constitution are also Washington's public policy.

944.  The Washington State Constitution, Article I, §11, protects each Plaintiff from State

interference with their right to freely exercise their sincerely held religious beliefs

that is not narrowly tailored to serve only the State's compelling interests.

945.  The Washington State Constitution's free exercise clause provides equal or greater

protection to each Plaintiff than the Free Exercise Clause in the United States

Constitution's First Amendment, which is made applicable to Washington State by the Fourteenth Amendment to the United States Constitution.

946.    The Washington State Constitution, Article I §7, protects each Plaintiff from state interference with their personal autonomy in making health care decisions for themselves.

947.    At the time Defendants made their decision to not accommodate any Plaintiff's religious exemption, the Washington State Supreme Court had long decided by binding judicial decision that each of the foregoing rights are fundamental, must withstand strict scrutiny, and needed to be narrowly tailored to serve only the State's compelling interests.

948.    Moreover, at this time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action infringing on Free Exercise rights was not generally applicable if there was a mechanism for the State to make individualized decisions amongst similarly situated persons as to who would be subject to the State action and who would not be subject to the State action.

949.    In this case, it was clear to any State official, including Defendant Scarton, that the WSDOT official policy she created, promulgated and that WSDOT used was not generally applicable to all unvaccinated WSDOT employees because it provided a mechanism for Defendants to make individualized determinations amongst its unvaccinated employees, all of whom had the same perceived risks to contravene the

FIRST AMENDED COMPLAINT                    162        **ARNOLD JACOBOWITZ & ALVARADO PLLC**

State's proffered interests, as to those who could continue their public employment and those who could not continue their public employment.

950.    At the time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action infringing upon Free Exercise rights was not generally applicable if it treated religious concerns differently and less favorably than secular concerns.

951.    In this case, Defendants wielded the unbridled discretion they bestowed upon themselves to make individualized accommodation decisions that treated WSDOT's unvaccinated religiously exempt employees differently and less favorably than the way it treated its unvaccinated secularly exempt employees/

952.    At that time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action that was not generally applicable and infringed upon Free Exercise rights had to withstand strict scrutiny and be narrowly tailored to serve only the State's compelling interests.

953.    At this time, the Washington State Supreme Court had long decided that the Washington Constitution, Article I, §7 protected each Plaintiff's right to not disclose confidential health care information.

954.    At this time, the United States Supreme Court had long decided that the United States Constitution protected a person's substantive due process rights to medical autonomy and bodily integrity and that those rights were subject to heightened protection.

955.    Despite the foregoing provisions in the Washington State and United States Constitution and the binding judicial decisions of the Washington State Supreme Court and the United States Supreme Court, Defendants committed the acts complained of in this Complaint.

956.    After each Plaintiff received notice that they may be subject to having their continued public employment terminated by Defendants if they did not begin the process of becoming fully vaccinated on October 18, 2021, each Plaintiff discerned for themselves no earlier than October 18, 2021, to not start the process of becoming fully vaccinated and face the prospect of having Defendants not grant them any religious accommodation or utilize a less restrictive alternative than terminating their continued public employment.

957.    Up until and including October 18, 2021, each Plaintiff themselves, or through one of them who represented their shared interests, attempted to engage the Defendants in an interactive process regarding reasonable accommodations or less restrictive alternatives.

958.    Despite Plaintiffs' good faith and sincere efforts to engage Defendants in that interactive process and Defendants tepid response, Defendants decided to not provide any religious accommodation to any Plaintiff, not to use any less restrictive alternative and took the penultimate adverse employment action against each Plaintiff, which was terminating their continued public employment effective on October 19, 2021.

164    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

959.    Defendants' decisions were motivated by reasons that contravened clear mandates of public policy and infringed on each Plaintiff's ability and insistence to exercise their legal rights and privileges.

960.    Defendants' policy-linked conduct was a significant and substantially motivating factor in their October 18, 2021, decisions.

## VIII.    SIXTH CAUSE OF ACTION – PRIVATE RIGHT OF ACTION FOR INVASION OF PRIVACY

961.    Plaintiffs reallege the prior allegations in this complaint.

962.    The Washington State Constitution, Article I, § 7, provides "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

963.    Washington recognizes a private right of tort action for violations of privacy.

964.    A person's privacy includes both medical and bodily autonomy.

965.    Bodily autonomy includes being free from unwanted bodily intrusions including injections.

966.    Unwanted injections are a medical battery.

967.    Medical autonomy includes the right to make one's own health care decisions and to be free from unwanted medical treatments.

968.    The Vaccine was not a sterilizing vaccine that provided immunity, which prevented infection.

969.    It was widely known and accepted before the Governor proclaimed the Proclamation on August 9, 2021, that the vaccine did not prevent its recipient from becoming

infected with a breakthrough infection. It, therefore, did not prevent an infected vaccinated person from transmitting or spreading the COVID-19 virus. It also did little or nothing to stem the spread of the delta variant of the COVID -19 virus.

970.    Instead, the Vaccine was successful to prevent serious adverse health consequences, hospitalizations, and death once a vaccinated person became infected.

971.    As such, it was a medical treatment and not a traditional vaccine.

972.    Defendants violated each Plaintiff's rights to privacy when they coerced each Plaintiff to receive an unwanted bodily intrusion and medical treatment by threatening each of them to "Get vaccinated or lose your job."

973.    As a direct and proximate result of Defendants' actions each Plaintiff has suffered harm to their privacy and economic damages to avoid the ultimate privacy invasion as well as noneconomic harm.

974.    Plaintiffs have also suffered attorney fees and costs as special damages caused by Defendants invading their privacy.

## IX.    SEVENTH CAUSE OF ACTION – VIOLATION OF WASINGTON STATE CONSTITUTION REGARDING FREE EXERCISE OF RELIGION

975.    Plaintiffs reallege the prior allegations in this Complaint.

976.    All the acts of Defendants were conducted by them under color of the statutes, regulations, customs, policies, and/or usages of the State of Washington and the Washington Department of Transportation.

977.    The law regarding the free exercise of religion and employment is well established.

978.   The law regarding due process in employment is well established.

979.   Defendants knew that the First Amendment prohibits governmental officials from demonstrating hostility to religion or prohibiting the free exercise thereof.

980.   Defendants acted with willful malice, and/or intentionally and in gross disregard of Plaintiffs' constitutional rights, and/or in reckless disregard of Plaintiffs' constitutional rights, by taking adverse employment action against Plaintiffs based on their exercise of religious convictions and practice, and by coercing Plaintiffs to act against their religious convictions and to abandon a religious practice.

981.   As a direct and proximate result of Defendants' actions, Plaintiffs have been deprived of their constitutional rights to the free exercise of religion and to be free from governmental hostility directed at their religion and have been denied their rights to due process and equal protection under the law.

982.   Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## X.    EIGHTH CAUSE OF ACTION - 42 U.S.C. §1983 ACTION FOR VIOLATING THE ESTABLISHMENT CLAUSE IN THE U.S. CONSTITUTION'S FIRST AMENDMENT

983.   Plaintiffs reallege the prior allegations in this Complaint.

984.   The Establishment Clause of the First Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from enacting any requirement respecting the establishment of religion.

985.   By adopting and enforcing the official policies, customs, and policies that it implemented on a Department-wide basis for all its employees respecting exemptions and accommodations violated the Anti-Establishment Clause of the United States Constitution, which is the first clause in the U.S. Constitution's First Amendment.

986.   By requiring Plaintiffs to fill out paperwork that implied religious objectors would not be accommodated unless their religious beliefs oppose <u>all</u> vaccinations, Defendants established favorable treatment for some religious beliefs to the direct detriment of other, disqualifying beliefs.

987.   By adopting a policy that conditioned ongoing public employment upon showing proof of vaccination against COVID-19, irrespective of religious objection thereto, Defendants established a favorable treatment for those with religious beliefs that did not oppose the COVID-19 vaccination, to the direct detriment of other, disqualifying religions.

988.   The Defendants' policies' overt religious discrimination, on its face and as applied, cannot survive strict scrutiny for the reasons described above.

989.   The Defendants' policies', on their face and as applied, also establishes and authorized a process of intrusive religious inquisition to test the Plaintiffs' asserted religious beliefs, in direct violation of the Establishment Clause's longstanding prohibition on the "excessive entanglement" between government and religion. Such excessive entanglement is a per se violation of the Constitution without any opportunity for the government to overcome strict scrutiny.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

990. Defendants' policies establishment of state prescribed religious content and organization targets the holders of all religious beliefs that prohibit receipt of the then-available COVID-19 vaccines, but whose beliefs fall outside the state-prescribed norms.

991. Plaintiffs are a sect of religious believers whose religious practices and observances prevented them from being injected with the Moderna/Pfizer/or Janssen COVID-19 vaccines upon which the Defendants' conditioned their continued public employment, but their beliefs fall outside the state-prescribed norms of Defendants' policies.

992. Defendants' policies compelled the loss of employment and benefits, along with Plaintiffs' consequent inability to pursue their chosen professions.

993. Plaintiffs were required to apply for and be granted a religious exemption from the vaccine mandate contained in the Governor's Proclamation 21-14 (as amended).

994. Plaintiffs were granted exemption but denied an accommodation pursuant to a Department-wide policy that that it would not accommodate religious exempt employees who had the potential to have any direct contact with co-workers or the public.

995. Other religious believers who did not have the same practices and observances and, therefore, had no religious practice or observance that conflicted with them complying with the vaccine mandate in the Governor's Proclamation were not

169

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

required to be granted a religious exemption or be accommodated to continue their public employment.

996. The implementation of the policies by the Department targeted and treated religious believers whose practices conflicted with their ability to comply with the vaccine mandates differently and less favorably than the religious believers who did not have those religious practices and observances.

997. By preferring one group of religious believers differently and more favorably than another group of religious believers, the Department-wide policy implementing the vaccine mandates are contrary to the Establishment Clause of the U.S. Constitution because it only allows continued public employment to the sect of religious believers whose religious practices and observances did not conflict with the ability to comply with the vaccine mandates. Religious believers whose observance and practice did conflict with their ability to comply with the vaccine mandate, including Plaintiffs, were not allowed to continue their public employment if they had any public-facing job assignments in their current position.

998. The Department-wide policy implementing the vaccine mandates in the Governor's Proclamation is, therefore, subject to strict scrutiny because it was not generally applicable or operationally neutral.

999. The Governor's proclamation specifically required the Department to grant exemptions and accommodations to its employees who had a sincerely held religious belief, practice or observance that conflicted with their ability to comply with the

FIRST AMENDED COMPLAINT

170

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

vaccine mandate. As a result. the Department-wide policy permitted and invited religious adherents like Plaintiffs to apply for a religious exemption and, if granted, a religious accommodation if their religious beliefs, practices, or observances, conflicted with their ability to comply with the vaccine mandates.

1000. Neither the Governor's Proclamation, the Mayoral Directive, nor the Department-wide policy confined the discretion of the Department's agents who implemented the vaccine mandates and created the Department-wide policy. Those agents, therefore, had unfettered or sufficient discretion such that there was a mechanism for them to determine who could continue their public employment and who could not. It is the mechanism that gave the discretion and not the way it may have been used that makes the Department wide policy not generally applicable.

1001. The Department-wide policy implementing the vaccine mandates and the Department's exemption and accommodation decisions are not narrowly tailored to achiever the Department's and state's stated purpose for the vaccine mandates, which was to stem COVID-19's spread.

1002. The Department-wide policy did not permit the least restrictive accommodation that serves the government interest, such as masking, social distancing, frequent testing, changing job assignments, encouraging and facilitation voluntary job assignment swaps by substitutes.

FIRST AMENDED COMPLAINT

171

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1003.   The Department did not enact any ordinance, rule, or regulation that required contractors or other persons who were unvaccinated from interacting with its workers.

1004.   The Department allowed other unvaccinated employees to continue their continued public employment even though they, too, had public facing job assignments.

1005.   The Department permitted the continued public employment of employees who only received the primary series of either the Moderna, Pfizer, or Janssen vaccines.

1006.   In a one month period between June and July 2021 there were known and reported breakthrough infections occurring amongst the vaccinated, that the disproportionate COVID-19 prevalence between the vaccinated and the unvaccinated was rapidly decreasing, the primary series vaccine efficacy rate was rapidly decreasing, any primary series vaccine immunity was waning quicker than expected, and the primary series vaccine immunity was far less effective to prevent contagion and transmission as the delta variant became the prevalent variant infecting individuals with COVID.

1007.   The Department was aware of the information in the foregoing paragraph because the CDC published the data on September 10, 2021, and the King County Department of Public Health was one of the participating jurisdictions that supplied data for the CDC study.

1008.   In October 2021, the published data regarding vaccine effectiveness for the Janssen primary series of the COVID-19 vaccine was approximately 65%, which was significantly below the vaccine effectiveness for the primary series of either the

172     **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Moderna or Pfizer vaccines. Despite that published data being generally and publicly available, the Department allowed its employees who received only the primary series of that vaccine to continue their public employment.

1009. The omicron variant became the prevalent variant infecting individuals with COVID in December 2021 – February2022. During this time the breakthrough infection rate amongst individuals receiving the primary series of the COVID-19 vaccine rapidly spiked and increased such that the vaccine efficacy of the primary series of any of the three COIVD-19 vaccines was known to be 0. Despite that publicly available data and information, the Department allowed its employees who only received the primary series of the three COVID19 vaccines to continue their public employment.

1010. To be sure, the CDC published the data in August 2022, that reviewed the data that was publicly available during that time and concluded the primary series of any of the three COIVD-19 vaccines did little or nothing to prevent contagion and transmission of the virus.

1011. The Department-wide policy was also overinclusive because it prohibited consideration of natural immunity, which was believed to provide as much, if not greater immunity preventing contagion and transmission as did the primary series of the Pfizer, Moderna, or Janssen vaccine. This information was published by the U.S. Center for Disease Control (CDC) on September 10, 2021, and the King County Department of Public Health was one of 13 participating jurisdictions that supplied data for the CDC study.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1012. Despite that knowledge the Department did not condition continued public employment o receiving all available booster vaccines. The Janssen vaccine was known in Fall 2021 to have a vaccine efficacy of approximately 65%, but the Department allowed the primary series (one injection) to satisfy the conditions of continued public employment. and enacted no ordinance, rule, or regulation that required

1013. Instead, with full knowledge of the information at its disposal, the Department continued to target its employees who had the specific religious beliefs, practices, and observances that conflicted with their ability to comply with the vaccine mandates.

## XI.    DAMAGES ALLEGATIONS AS TO ALL CLAIMS

1014. Defendants' decisions proximately caused each Plaintiff economic and noneconomic damages.

1015. Each Plaintiff suffered emotional distress that was objectively manifested by loss of appetite; sleep abnormalities; intrusive and recurring thoughts; worry; anxiety; difficulty concentrating, focusing, and paying attention; and other symptoms that affected their daily functioning.

1016. Each Plaintiff's economic and noneconomic damages will be proven at trial, but each Plaintiff's damages exceed $200.

1017. Plaintiffs have been, and continue to be, irreparably harmed by not being able to engage in their livelihood with the Defendant WSDOT.

1018.   Defendants' conduct alleged in this Complaint caused each Plaintiff to hire the services of the undersigned attorneys, and each of them agreed their attorneys a reasonable fee for their services.

1019.   Defendants are responsible and liable for Defendants' reasonable attorney fees and costs pursuant to WLAD, other statutes, and recognized grounds in equity.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for the following relief against the Defendant:

1.      Prospective Injunctive Relief of Reinstatement to their positions and of their previously held rights and benefits.

2.      Monetary judgment for all compensatory economic and noneconomic damages each Plaintiff suffered as a direct and proximate result of Defendants' conduct alleged herein.

3.      Attorney fees and costs pursuant to WLAD, Washington Equal Access to Justice Act, and any other statute or recognized ground in equity.

4.      Such further relief that is just and equitable.

DATED this 27th day of June 2025.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**

*s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA No. 45356
Lesley Alvarado, WSBA No. 61465
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@AJALawyers.com
*Counsel for Plaintiffs*

**THE WESTERN WASHINGTON LAW GROUP, PLLC**

*s/ Dennis McGlothin*
Dennis McGlothin, WSBA No. 28177
10485 Northeast Sixth Street, No. 1820
Bellevue, WA 98004
(425) 728-7296
docs@westwalaw.com
*Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

176        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221