**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

GEOFFREY GRAY, AARON MILLER, BRANDON WHEELER, ADAM BOGLE, ANDRE LYLE, BLAINE SCHIESS, BRADLEY SAWAYA, CASEY BURNS, CAITLYN LOMEN-CARR, CHRISTODOULOS PANERIS, DANIEL HJELMESETH, DAVID LAWTON, DEBORAH FLETCHER, DONNA TEGNELL, DYLAN BECKNER, ERIC HANSEN, GARY GORDON, JAMES HOWARD, JANA CRAWFORD, JAY SARVER, JEREMY BIRCHFIELD, JEREMY GREENE, JOE DEGROAT, JOHN WINSTON, JORDAN LONGACRE, JOSEPH GREENE, JUSTIN COCHRAN, KERRY STRAWN, LARRY FROSTAD, LYNN NOWELS, MERRIEGRACE LA PIERRE, MICHAEL BROWN, MICHAEL URIBE, MICHAEL WATKINS, NATHAN KESLER, NICHOLAS AUCKLAND, NICOLE PREZIOSI, PETER DUNCAN, RICHARD OSTRANDER, ROBERT WASHABAUGH, RODNEY PELHAM, RONALD VESSEY, RYAN EUBANK, SCOTT SCHUTT, SEAN MORGAN, SHASTA ATKINS, SHERI FERGUSON, SOMMER BECKNER, STACY KATYRYNIUK, STEPHEN AUSTIN, STEVE TURCOTT, STEVE WALKER, TERRY DUNN, TODD HUMPHREYS, TYLER RATKIE, WENDY PUNCH,

| | |
|---|---|
| **CASE NO. 2:25-cv-01345-JNW** | |
| | |
| **SECOND AMENDED COMPLAINT** | |
| | |
| JURY DEMANDED | |

SECOND AMENDED COMPLAINT          1          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

WILLIAM DUBOSE, VICTORIA GARDNER, BRION HOGAN, BRADY TODHUNTWER, CRAIG HENRIKSEN, GABRIEL NEWMAN, LAVORN CHETH, PAM WHORALL, MIROSLAV TSANEV, SHAUN BUKOVNIK, ROBERT COVINGTON.

              Plaintiffs,

  v.

WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, a Washington State Agency; AMY M. SCARTON, an individual, KIMBERLY MONROE FLAIG an individual.

              Defendant.

Plaintiffs sue the Defendant the State of Washington (State), by and through its Department of Transportation (WSDOT); Defendant Amy M. Scarton, an individual, in her official and personal capacities, and Defendant Kimberly Monroe Flaig, in her official and personal capacities. Plaintiffs seek prospective injunctive relief of reinstatement against Defendants Scarton and Flaig in their official capacities and damages against Defendants the State for wrongfully terminating their continued public employment in violation of its public policy or the Washington Law Against Discrimination, Ch. 49.60 RCW (WLAD). Plaintiffs allege that at all times material to this Second Amended Complaint (SAC) as follows

## I.    PARTIES, JURISDICTION, AND VENUE

**A.    Parties.**

1.    Each Plaintiff is a natural person and was a Washington resident.

2.  The State is a sovereign state formed in 1889. Its executive branch of government had various administrative agencies. The State Governor is an elected State official who heads each executive agency. WSDOT was a State executive branch agency.

3.  The State employs eight or more persons and is neither a religious or sectarian organization not for profit organization.

4.  Defendant Amy Scarton is a natural person who resides in King County, Washington. She was appointed WSDOT's Deputy Secretary.

5.  Defendant Kimberly Monroe Flaig is a natural person and Washington resident. She was appointed WSDOT's Human Resources Director.

**B.    Jurisdiction.**

6.  This Court has jurisdiction pursuant to 28 USC sec. 1331 where Plaintiffs' Sixth Cause of Action presents a question of Federal Law.

**C.    Venue.**

7.  Venue is proper in this action pursuant to 28 USC sec. 1391(b)(1) where at least one Defendant resides and/or is headquartered within this District, and 28 USC sec. 1391(b)(2) where a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.    FACTS

**A.    Facts Common to All Plaintiffs Individual Defendants**

8.  On August 9, 2021, the Governor issued Proclamation 21-14.

SECOND AMENDED COMPLAINT          3          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

9.     On August 20, 2021, the Governor issued Proclamation 21-14.1, which superseded and replaced Proclamation 21-14.

10.    On September 27, 2021, the Governor issued Proclamation 21-14.2, which superseded and replaced Proclamation 21-14.1.

11.    After the Governor issued Proclamation 21-14.2, he amended and superseded that Proclamation on November 24, 2021, when he issued Proclamation 21-14.3, which became effective upon issuance.

12.    After the Governor issued Proclamation 21-14.3, he amended and superseded that Proclamation on March 23, 2022, when he issued Proclamation 21-14.4, which became effective upon issuance.

13.    After the Governor issued Proclamation 21-14.4, he amended and superseded that Proclamation on May 20, 2022, when he issued Proclamation 21-14.5, which became effective upon issuance.

14.    Finally, on October 28, 2022, the Governor issued Proclamation 21-14.6 that amended and superseded Proclamation 21-14.6 that rescinded the Get Vaccinated, Accommodated or be Terminated Mandate. Proclamation 21-14.6 became effective as of 11:59 p.m. on October 31, 2022.

15.    The operative 21-14 Proclamation at the time each Plaintiff's continued public employment was terminated:

16.    Imposed a new job requirement on each Plaintiff that they be injected with the primary series of Pfizer, Moderna, or Janssen COVID-19 vaccines (Vaccine Requirement) or be exempted and accommodated from having to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          4          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

17.    Specified the three approved COVID-19 vaccines as either the Pfizer, Moderna, or Janssen vaccine (COVID Vaccine).

    a.    For each State employee working at a State agency, required the State agency where the employee worked to:

        i.    Decide whether to grant a religious or secular medical exemptions from the Vaccine Requirement;

        ii.    Decide whether each exempt employee could be accommodated to work unvaccinated; and

        iii.    Enforce the Proclamation by involuntarily terminating each employee that did not comply with the Vaccine Requirement unless the employee was granted an exemption from the Vaccine Requirement that was accommodated.

18.    The State, by and through its Office of Financial Management (OFM), developed guidelines that each agency was required to follow when determining religious or secular medical exemptions from the Vaccine Requirement (Guidelines). OFM revised its Guidelines from time to time. On October 18, 2021, version 3 of the Guidelines were the operative Guidelines.

19.    On August 9, 2021, each Plaintiff was employed by the State and worked at WSDOT.

20.    After October 17, 2021, the State terminated each Plaintiff's continued public employment because he/she/they did not comply with the Vaccine Requirement and had not received an accommodation for a granted Vaccine Requirement exemption.

SECOND AMENDED COMPLAINT    5    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

21.     To implement the operative Proclamation, each State executive branch agency collaborated with one another and other State officials to develop uniform official policies and procedures to be used when deciding whether to grant exemptions from the Vaccine Requirement and whether to accommodate any granted exemptions (Exemption and Accommodation Policies).

22.     The Policies and Procedures required:

a.  State employees requesting an exemption from the Vaccine Mandate, request the agency for which they work to grant their exemption request.

b.  For each State employee requesting a secular medical exemption provide a statemen from a health care provider demonstrating a medical condition that conflicted with that employee's ability to comply with the Vaccine Requirement.

c.  For each State employee requesting a religious exemption state why their religious belief, practice or observance conflicted with their ability to comply with the Vaccine Requirement.

d.  Each agency grant a State employee's secular medical exemption request if accompanied with the required corroboration from a health care provider.

e.  Each agency grant a State employee's religious exemption request if the employee espoused a belief of a known or established religion.

f.  Each agency more carefully investigate and scrutinize a State employee's religious exemption request if the employee espoused a belief that was not of

SECOND AMENDED COMPLAINT            6       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

a known or established religion or was a conscientious or moral belief that was not supported by reference to the Bible or other religious doctrinal material.

g. If a State employee had any chance of public facing or coworker facing interaction, then each agency prefer accommodations in the following order of priority:

    i.    First, to secular medical exempt employees until the employee could safely receive the primary series of a COVID Vaccine.

    ii.    Second, to religious exempt employees whose religious doctrinal beliefs were already established as conflicting with their ability to comply with the Vaccine Requirement, such as Muslims, Jehovah's Witnesses, and members of the Church of Christ Scientist.

    iii.    Finally, third, and with intent to disfavor, religious exempt employees whose religious doctrinal beliefs were not well established as conflicting with their ability to comply with the Vaccine Requirement belief-wide, such as Catholics, pro-life Christians, and Christians, and those with conscientious and moral objections that they sincerely held as firmly as an established religious belief that being injected with an impurity could alter their DNA or defile their body, which their religious or sincerely held belief prohibited.

h. To favor unaccommodated secular medical exempt employees, and disfavor unaccommodated religious exempt employees, by terminating unaccommodated secular medical exempt employees with a disability separation and terminating unaccommodated medical exempt employees with a

non-disciplinary separation. The differences between the two types of separation included:

    i. State employees terminated with a disability separation were permitted, and State employees terminated with a non-disciplinary separation were not permitted, to participate in the General Government Transition Pool (GGTP), which granted the terminated employee a right to be reinstated to their former position and preference in regaining public employment.

    ii. State employees terminated with a disability separation were permitted, and State employees terminated with a non-disciplinary separation were not permitted, to administratively appeal their termination.

23. The Policies and Procedures and the Guidelines created a mechanism that bestowed sufficient discretion on Defendants and the State and State employees who made exemption and accommodation decisions for them to make accommodation and exemption decisions on an ad hoc basis and pick those who could continue their public employment unvaccinated and those who could not.

24. The Policies and Procedures and the Guidelines treated State employees seeking a religious exemption or accommodation differently and less favorably than State employees seeking a secular exemption or accommodation.

25. The Policies and Procedures treated certain sincerely held religious, moral and conscientious beliefs differently and less favorably than other religious, moral, and ethical

SECOND AMENDED COMPLAINT    8    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

beliefs despite them both qualifying for exemption and accommodation under WLAD, Title VII, and the U.S. Constitution.

26.    Defendant Scarton was an appointed State official who directly participated in creating the Policies and Procedures.

27.    Defendant Scarton was the appointed State official at WSDOT who implemented the Exemption and Accommodation Policies, applied them to all State employees who worked for WSDOT, and directed her subordinates, including Defendant Flaig, to apply them to State employees who worked for WSDOT when deciding whether to grant or deny a State employee who worked for WSDOT's exemption request and whether the State would accommodate an exempt employee.

28.    Defendant Scarton had a duty and ability to act, and breached her duty to act, when she did not prevent the Policies and Procedures from being created, implemented, or applied to damage or injure each Plaintiff has alleged herein.

29.    Defendants Scarton's actions and failures to act as required set into motion a series of unbroken chain of events that caused the harm and injury to each Plaintiff alleged herein.

30.    Defendant Flaig was a State WSDOT HR official who Defendant Scarton specifically directed to implement and apply, and to direct her subordinates to apply, the Policies and Procedures to all State employees who worked for WSDOT who sought either an exemption to the Vaccine Requirement or an accommodation. Defendant Flaig implemented and applied, and directed all her HR subordinates who worked in WSDOT's HR Department, the Policies and Procedures when they decided whether to grant or deny a State employee an exemption from having to comply with the Vaccine Requirement or an accommodation for their exemption.

SECOND AMENDED COMPLAINT            9       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

31.     Defendant Flaig had a duty and the ability to prevent the Policies and Procedures from being created, implemented, or applied to State employees who worked for WSDOT who sought either an exemption from, the Vaccine Requirement or an accommodation.

32.     Defendant Flaig was substantially motivated, in acting and in failing to act as required, as alleged herein, by animus toward religion whose adherents believed their religion prohibited them from being injected with the primary series of a COVID Vaccine, and she posted statements on social media demonstrating her animus towards those religious beliefs.

33.     Defendant Flaig's actions and failures to act as required set into motion a series of unbroken chain of events that caused the harm and injury to each Plaintiff alleged herein.

34.     Defendant Scarton and Flaig were both an "Employer" as defined in RCW 49.60.040.

35.     The acts and omissions of Defendant Scarton and Flaig and of the subordinates who they directed to apply the Policies and Procedures when deciding whether to grant an exemption from the Vaccine Requirement or accommodate an exempt employee occurred while acting within the scope of their employment and agency relationship that they had with the State.

36.     Both Defendants Scarton and Flaig knew, or should have known, the harm and injury that would result from their acts and omissions alleged herein would deprive each Plaintiff of their rights under the U.S. Constitution.

37.     Both Defendants Scarton and Flaig knew, and any reasonable State official would have known, that creating, implementing and applying the Policies and Procedures to all State employees who worked for WSDOT would cause the disfavored religious State

employees, including Plaintiffs, injury or harm because it terminated their livelihood and continued public employment.

38. Defendants Scarton and Flaig knew, and any reasonable State official would have known, that their acts and omissions would cause each Plaintiff monetary harm in the form of lost past wages and benefits, lost future wages and benefits, increased income tax liability, and compensation for the emotional distress and mental anguish they suffered and continue to suffer.

39. The harm caused to Plaintiffs was, and continues to be, an affront to their dignity manifesting itself in mental anguish and emotional distress that was, and continues to be, caused by each Plaintiff continuing to be separated from their continued public employment and their continued inability to continue their livelihood, all of which is irreparable.

40. Plaintiffs' monetary claims against Defendants Scarton and Flaig in their personal capacities are limited to each Plaintiff's claims for actual damages caused by them violating WLAD to the extent they were an "Employer" as defined in RCW 49.60.040.

41. Plaintiffs monetary claims against the State are limited to the State's direct and vicarious liability for violating Washington state law, including WLAD.

42. Plaintiffs' claims against Defendants Scarton and Flaig in their official capacity are limited to prospective injunctive relief of reinstatement. One or more Plaintiffs seek to be reinstated to their former position. Reinstatement will partially remedy each reinstated Plaintiff's continuing and irreparable harm and injury, including the affront to their dignity, caused by Scarton and Flaig's unlawful conduct or omissions.

SECOND AMENDED COMPLAINT          11          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**B.      Allegations as to Plaintiff Geoffrey Gray:**

43.      Plaintiff Geoffrey Gray sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

44.      Plaintiff Gray is a Bible-believing, born again, child of God. A Christian indwelt by the Holy Spirit, his worldview is grounded on God's Word (the Authorized King James Bible), and he lives his life to please God, as the Spirit leads him. He believes that his body is the temple of the Holy Spirit (1 Corinthians 6:19-20) and if any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are." (1 Corinthians 3:16-17). He believes he is neither to defile the temple of the Holy Spirit nor allow his body to be brought under the power of any food, drink, or chemical substance, including vaccines (1 Corinthians 6:12).

45.      On August 27, 2021, Plaintiff Gray submitted a religious exemption request form that notified the Defendants about his sincerely-held religious belief and its conflict with his ability to comply with the Vaccine Requirement.

46.      Subsequently, Defendants requested additional information from Plaintiff Gray regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

47.      On August 31, 2021, Plaintiff Gray complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with his ability to comply with the Vaccine Requirement.

48.      Defendants then considered Plaintiff Gray's request for a religious exemption, they determined he sincerely held a religious belief that conflicted with his ability to comply

SECOND AMENDED COMPLAINT          12          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

with the Vaccine Requirement, they granted Plaintiff Gray a religious exemption from having to comply with the Vaccine Requirement, and they notified Plaintiff about their decision.

49.     In the same notice, and without further input from Plaintiff Gray regarding accommodations for his religious exemption, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

50.     The only possible accommodation Defendants would consider for Plaintiff Gray's religious beliefs was the possibility of reassignment to a currently funded, equal or less paying, available job that Plaintiff was qualified to perform that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public.

51.     Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

52.     During all material times relevant to this SAC, there were no positions that met the State's reassignment criteria to which Plaintiff could have been reassigned.

53.     The State never offered Plaintiff Gray an accommodation to reassign him to a different position.

54.     On October 18, 2021, the State terminated Plaintiff Gray's continued public employment without his consent because his religious exemption was not accommodated and he did not show proof that he was injected with the primary series of either the Pfizer, Moderna, or Janssen COVID vaccine.

SECOND AMENDED COMPLAINT          13          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**C.    Plaintiff Aaron Miller**

55.    Plaintiff Miller sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

56.    Plaintiff Miller is a Catholic Christian, and sincerely held a religious belief that life begins at conception, and God's Commandment that "Thou Shall not Murder" applied to fertilized human cells." Plaintiff Miller's religious practices and observances consistent with his religious beliefs required him to not be injected with any COVID Vaccine because he believed they were developed or tested using aborted fetal stem cells.

57.    Plaintiff Miller also sincerely held a religious belief that the human body is sacred. The religious practice and observance associated with that belief forbade introducing foreign substances, including the COVID-19 vaccine, into the sacred human body.

58.    On August 25, 2021, Plaintiff Miller submitted to Defendants a religious exemption request form that notified them about his sincerely held religious beliefs, practices, and observances and the conflicted they created with his ability to comply with the Vaccine Requirement.

59.    Defendants then considered Plaintiff Miller's religious exemption request, determined he sincerely held a religious belief and that it and its practices and observances conflicted with his ability to comply with the Vaccine Requirement, granted Plaintiff Miller a religious exemption from having to comply with the Vaccine Requirement, and on September 14, 2021, notified him about their decision.

60.    In the same notice, and without further input from Plaintiff Miller. Defendants decided they could not accommodate Plaintiff Miller's religious belief, practices or observances

SECOND AMENDED COMPLAINT        14        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

in his current position because "the essential functions of [the] position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

61.    The only accommodation Defendants would consider was the possibility of reassigning Plaintiff Miller to a currently available, funded, equal or less paying, job that he was qualified to perform that had no job duty requiring the possibility of interactions with co-workers or the public.

62.    Defendants warned, however, that these job reassignments were limited, and there was no guarantee that any such reassignment was possible.

63.    Based on these reassignment limitations, there were no reassignment positions that met the Defendants' reassignment criteria. As a result, no Defendant offered Plaintiff a religious accommodation

64.    On October 18, 2021, Defendants terminated Defendant Miller's continued public employment without his consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**D.    Plaintiff Adam Bogle**

65.    Plaintiff Bogle sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

66.    Plaintiff Bogle accepted Jesus Christ as his personal savior as a very young child. In 2016, he became an ordained minister. Minister Bogle adheres to the tenets of faith of the Dutch Reform Church of America. Amongst his sincerely held religious beliefs is Divine providence. Accordingly, Minister Bogle sincerely held a religious belief that 1 Corinthians

6:19–20 and 10:31 require humans to regard their bodies as a temple of God's Holy Spirit and creator and possessor of their very bodies and that it should not be defiled.

67.    Consistent with his sincerely held religious beliefs, Minister Bogle's religious practices and observances included him not being injected with a COIVD-19 Vaccine because it contained neurotoxins, hazardous substances, attenuated viruses, animal cells, foreign DNA, albumin from human blood, carcinogens, and chemical wastes that would defile his body. If he were to do so, then Minister Bogle could not, in good faith, counsel others about these religious beliefs he sincerely held.

68.    On September 13, 2021, Minister Bogle submitted a religious exemption request form to Defendants that notified them about his sincerely held religious beliefs and the conflict his religious beliefs caused to his ability to comply with the Vaccine Requirement.

69.    Defendants then considered Minister Bogle's request for a religious exemption, they determined he sincerely held a religious belief and that his religious practices and observances conflicted with his ability to comply with the Vaccine Requirement, they granted his a religious exemption from the Vaccine Requirement, and they notified Minister Bogle about their decision.

70.    In the same notice, and without further input from Minister Bogle regarding possible accommodations for his religious beliefs, practices, or observances, Defendants determined they could not accommodate Minister Bogle's religious beliefs, practices, or observances and still keep Minister Bogle employed in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

71.     The only possible accommodation any Defendant would consider was the possibility of reassigning Minister Bogle to an available, currently funded, equal or less paying, open position that he was otherwise qualified to perform that had no job duty that could require him to interact with co-workers or the public.

72.     Defendants warned, however, that these reassignment positions were limited, and there was no guarantee that any such reassignment was possible.

73.     There was no job reassignment possible for Minister Bogle that met the Defendants' reassignment criteria. Accordingly, no Defendant offered Minister Bogle a religious accommodation to reassign him to a different position.

74.      October 18, 2021, the State terminated Minister Bogle's continued public employment without his consent because his religious beliefs, practices and observances were not accommodated and he did not comply with the Vaccine Requirement.

**E.     Plaintiff Andre Lyle**

75.     Plaintiff Lyle sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

76.     Plaintiff Lyle is a Christian. He sincerely held a religious belief that a person was required to protect their body from defilement according to God's law.

77.     Consistent with his religious belief, Plaintiff Lyle had a religious practice or observance that he could not be injected with a COVID-19 vaccine because they contained neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign DNA, albumin from human blood, carcinogens and/or chemical wastes that would defile the body. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          17          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

78.     On October 1, 2021, Plaintiff Lyle submitted a religious exemption request form that notified the Defendants about his sincerely held religious belief, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

79.     Defendants then considered Plaintiff Lyle's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted him an exemption from the Vaccine Requirement, and on September 14, 2021, notified him about their decision.

80.     In the same notice, and without further input from Plaintiff Lyle regarding possible accommodations to his religious beliefs, practices, or observances, Defendants determined they could not accommodate Plaintiff's religious beliefs, practices or observances and keep him employed in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

81.     The only possible accommodation Defendants would consider was the possibility of reassigning Plaintiff Lyle to a currently available open, funded, equal or less paying, job he was qualified to perform that had no job duty that could require interaction with co-workers or the public.

82.     Defendants warned, however, that these reassignment positions were limited, and there was no guarantee that any such reassignment was possible.

83.     At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendant's reassignment criteria. Accordingly, no Defendant offered Plaintiff Lyle an accommodation for his religious exemption.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

84.    On October 18, 2021, Defendants terminated Plaintiff Lyle's continued public employment without his consent because his religious exemption was not accommodated, and he did not comply with the Vaccine Requirement.

F.    **Plaintiff Blaine Schiess**

85.    Plaintiff Schiess sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

86.    Plaintiff Schiess believes in a higher power whose guidance directs spiritual understanding and religious practices, particularly concerning matters of life, health, and bodily integrity. Plaintiff sincerely held a religious belief that healing comes through prayer and divine intervention, and that a person's body should not be violated by substances that raise spiritual distress. Plaintiff

87.    Plaintiff also sincerely held a religious belief that when something evokes fear or a sense of danger to the soul, it is a sign from God to abstain.

88.    Plaintiff sincerely held a religious belief, based on Proverbs 2:1–9, that God provides wisdom and protection,

89.    Plaintiff's religious practices or observances that emanate from these sincerely held religious beliefs include: avoiding fear-based thinking and modern medical interventions rely on thought, love, and spiritual discernment for healing. They believe, based on Proverbs 2:1–9, that God provides wisdom and protection, and that accepting the vaccine would violate their religious understanding and relationship with God. and that accepting the vaccine would violate their religious understanding and relationship with God. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          19          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

90. On August 26, 2021, Plaintiff Schiess submitted a religious exemption request form that notified the Defendants about the sincerely held religious beliefs, practices, and observances and how they conflicted with their ability to comply with the Vaccine Requirement.

91. Subsequently, Defendants requested additional information from Plaintiff Schiess regarding the religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

92. On August 27, 2021, Plaintiff Schiess complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

93. Defendants then considered Plaintiff Schiess's request for a religious exemption, determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and they notified the Plaintiff about their decision.

94. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

95. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

96.     Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

97.     At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Schiess an accommodation for their religious exemption.

98.     On October 18, 2021, Defendants terminated this Plaintiff Schiess's continued public employment without their consent for not complying with the Vaccine Requirement and because their religious exemption was not accommodated.

99.     After Plaintiff Schiess' religious exemption was granted, on information and belief, approximately four different times, Plaintiff Schiess' supervisor visited him at various jobsites applying pressure to get the COVID-19 vaccine.

100.    Plaintiff Schiess' supervisor asked Plaintiff to reconsider his religious beliefs and get the COVID-19 vaccine.

101.    On or about September 30, 2021, Plaintiff Schiess' direct supervisor and his supervisor showed up at Plaintiff's residences unannounced and openly asked Plaintiff four or five times to change his religious beliefs and get the COVID-19 vaccine because of the negative impact it would have on the office.

102.    During that conversation, Plaintiff's supervisors stated they could get Plaintiff's position changed to work from home permanently if Plaintiff could just change his religious beliefs and get the COVID-19 vaccine.

103.    The State never offered Plaintiff Schiess an accommodation.

SECOND AMENDED COMPLAINT                21          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

104. Plaintiff Schiess received notice of separation from Defendants effective October 18, 2021.

105. On or about October 18, 2021, the State terminated Plaintiff Schiess' continued public employment without his consent because his religious exemption was not accommodated and he did not show proof that he was injected with the primary series of either the Pfizer, Moderna, or Janssen COVID vaccine.

**G.      Plaintiff Bradley Sawaya**

106. Plaintiff Sawaya sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

107. Plaintiff Sawaya is a Christian. Although not baptized as child, in 2010 at approximately 28 years old, he was baptized by Pastor Bruce Campbell of the Grace Community church and publicly professed his faith and love for Jesus. Plaintiff Sawaya was vaccinated as a child with all the usual vaccines. He did not know then what he knows now about vaccines and aborted fetal cells. He would likely never take vaccines again. But his main reason for not taking the Covid-19 Experimental MRNA gene therapy is much, much deeper and important: his reasoning was not only for the potential health dangers of this gene therapy but was more of a spiritual concern. Plaintiff Sawaya believes that the entire COVID-19 scandal was merely part of Satan's plan to lay the foundations of his "Beast System." He saw the Governor of New York stating that if you didn't take the shot, you would not be able to go anywhere, even the grocery store, no travel, etc., and he knew it was time to make a conscious decision to stand up to Satan and say NO, by drawing a clear line in the sand, so to speak, with a decision to not take such a symbolic experimental bodily injection, which apparently gives you all this freedom to live and embrace the things of this world, which is what Jesus warns about.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

108.    On August 22, 2021, Plaintiff Sawaya submitted a religious exemption request form that notified the Defendants about the sincerely-held religious belief, practices, and observances and how they conflicted with the ability to comply with the Vaccine Requirement.

109.    Defendants requested additional information from Plaintiff Sawaya regarding his sincerely held religious belief and how the religious belief conflicted with the ability to comply with the Vaccine Requirement.

110.    On August 29, 2021, Plaintiff Sawaya complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how the belief conflicted with the ability to comply with the Vaccine Requirement.

111.    Defendants then considered Plaintiff Sawaya's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted him an exemption from the Vaccine Requirement, and notified him about their decision.

112.    In the same notice, and without further input from the Plaintiff Sawaya regarding possible accommodations to his religious beliefs, practices, or observances, Defendants determined they could not accommodate Plaintiff's religious belief in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

113.    The only possible accommodation Defendants would consider was the possibility of reassignment Plaintiff Sawaya to a funded, equal or less paying, available job he was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

114.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

115.    At all times material to the claims asserted in the Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Sawaya an accommodation for his religious exemption.

116.    On or about October 13, 2012, Plaintiff Sawaya also submitted a Statement of Declination of COVID-19 Vaccine Product to Defendants.

117.    On October 18, 2021, the State terminated Plaintiff Sawaya's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

**H.    Plaintiff Casey Burns**

118.    Plaintiff Burns sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

119.    Plaintiff Burns is a Baptist. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, the COVID-19 vaccines conflict with his religion because of the contents including fetal cells. Moreover, he has the religious beliefs that his body is a temple to Jesus Christ, so anything he puts in his body must glorify Him (1 Corinthians 3:16-17, 1 Cor. 6:19-20).

120.    On September 2, 2021, Plaintiff Burns submitted a religious exemption request form that notified Defendants about his sincerely-held religious belief, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          24          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

121.    Defendants subsequently requested additional information from Plaintiff Burns regarding his sincerely held religious belief and how they conflicted with the Vaccine Requirement.

122.    On September 4, 2021, Plaintiff Burns complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

123.    Defendants then considered Plaintiff Burns's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted him an exemption from the Vaccine Requirement, and notified him about their decision.

124.    In the same notice, and without further input from Plaintiff Burns regarding possible accommodations to his religious beliefs, practices, or observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

125.    The only possible accommodation Defendants would consider was the possibility of reassigning Plaintiff Burns to a currently funded, equal or less paying, available job he was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

126.    Defendants warned, however, that reassignment positions were limited and that there was no guarantee that any such job was available.

SECOND AMENDED COMPLAINT          25          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

127.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Burns an accommodation for his religious exemption.

128.    On October 18, 2021, Defendants terminated Plaintiff Burns's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

129.    On or about October 14, 2021, Plaintiff Burns also submitted a Reasonable Accommodation Reassignment Form to Defendants.

## I.    Plaintiff Caitlyn Lomen-Carr

130.    Plaintiff Lomen-Carr sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

131.    Plaintiff is a Jehovah's Witness. In 2010, after receiving her final flu shot, she ceased to inject foreign matter into her body, due to not knowing the true ingredients of vaccines. As she tried to explain to WSDOT when COVID-19 vaccination was demanded, there was the possibility that the COVID-19 vaccines could have fetal cells, and injecting that into her body would go against her religion; and injecting fetal cells would be similar to taking blood (which is forbidden to Jehovah's Witnesses). Ms. Lomen-Carr refuses to inject anything into her body that represents life.

132.    Consistent with these beliefs, Plaintiff Lomen-Carr could not be injected with a COVID-19 vaccine.

SECOND AMENDED COMPLAINT         26         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

133.    On September 9, 2021, Plaintiff Lomen-Carr submitted a religious exemption request form that notified Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

134.    Defendants subsequently requested additional information from Plaintiff Lomen-Carr regarding her sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

135.    On September 14, 2021, Plaintiff Lomen-Carr complied with Defendants' request and provided supplemental information about her sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

136.    Defendants then considered Plaintiff Lomen-Carr's request for a religious exemption, determined she sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement, granted her an exemption from the Vaccine Requirement, and notified her about their decision.

137.    In the same notice, and without further input from Plaintiff Lomen-Carr regarding possible accommodations to her religious beliefs, practices, or observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

138.    The only possible accommodation Defendants would consider was the possibility of reassigning Plaintiff Lomen-Carr to a currently funded, equal or less paying, available job she was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

SECOND AMENDED COMPLAINT                27        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

139. Defendants warned, however, that reassignment positions were limited and that there was no guarantee that any such job was available.

140. At all times material to the claims asserted in the Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Lomen-Carr an accommodation for her religious exemption.

141. On October 18, 2021, Defendants terminated Plaintiff Lomen-Carr's continued public employment without her consent because her religious exemption was not accommodated, and she did not comply with the Vaccine Requirement.

**J.     Plaintiff Christodoulos Paneris**

142. Plaintiff Paneris sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

143. As a Christian, Plaintiff Paneris believes his body is the temple of the Holy Spirit and must be kept clean and holy in obedience to God, as taught in 1 Corinthians 6:19–20 and other scriptures. He believes the COVID-19 vaccines contain toxins, contaminants, and may involve the use of aborted fetal cell lines, all of which violate his conscience and faith. His religion requires that decisions affecting his body and health be led by God alone, not by coercion or fear. Plaintiff's spiritual relationship with God, Jesus Christ, and the Holy Spirit is central to his faith, and maintaining a clear conscience before God is essential.

144. Consistent with these sincerely held religious beliefs, Plaintiff Paneris believed that he could not be injected with a COVID-19 vaccine. Plaintiff Paneris believed that receiving the vaccine would have defiled his body and violated his religious convictions. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT           28       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                     720 Seneca Street, Ste. 107, No. 393
                                                     Seattle, WA 98101
                                                     (206) 799-4221

145.    On or about September 24, 2021, Plaintiff Paneris submitted a religious exemption request form that notified Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

146.    Defendants subsequently requested additional information from Plaintiff Paneris regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

147.    On or about September 24, 2021, Plaintiff Paneris complied with Defendants' request and provided supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

148.    Defendants then considered Plaintiff Paneris's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

149.    In the same notice, and without further input from Plaintiff Paneris regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

150.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Paneris was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

151. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

152. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Paneris an accommodation for his religious exemption.

153. On or about September 28, 2021, Plaintiff Paneris went on approved medical leave, due to a non-COVID related medical condition.

154. Due to his approved leave, Plaintiff Paneris was not terminated on October 18, 2021.

155. On March 4, 2022, Defendants terminated Plaintiff Paneris's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

## K.    Plaintiff Daniel Hjelmeseth

156. Plaintiff Hjelmeseth sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

157. Plaintiff Hjelmeseth was raised Catholic. His faith requires obedience to God and Jesus over all things of mankind. His upbringing has instilled in him a sincere religious belief in the sanctity of human life from the moment of conception. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, as a God-fearing Christian, he believes his body belongs to God as told in 1 Corinthians 6:19-20 NIV. Because the COVID-19 vaccines were developed using aborted fetal cells, Mr. Hjelmeseth could not in good conscience ignore

SECOND AMENDED COMPLAINT            30       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

the fact that another God created human life was literally sacrificed in the creation of this vaccine. His faith prohibits him from participating in or benefiting from an abortion, no matter how remotely in time that abortion occurred.

158. Consistent with these sincerely held religious beliefs, Plaintiff Hjelmeseth believed that he could not be injected with a COVID-19 vaccine. Accordingly, he could not comply with the Vaccine Requirement.

159. On August 21, 2021, Plaintiff Hjelmeseth submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how it conflicted with his ability to comply with the Vaccine Requirement.

160. Defendants subsequently requested additional information from Plaintiff Hjelmeseth regarding his religious belief and how they conflicted with his ability to comply with the Vaccine Requirement.

161. On August 25, 2021, Plaintiff Hjelmeseth complied with Defendants' request and provided supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

162. Defendants then considered Plaintiff Hjelmeseth's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about the decision.

163. In the same notice, and without further input from Plaintiff Hjelmeseth regarding possible accommodations to his religious beliefs, practices, and observances,

SECOND AMENDED COMPLAINT    31    **ARNOLD JACOBOWITZ & ALVARADO PLLC**

Defendants determined they could not accommodate Plaintiff's religious belief in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

164.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Hjelmeseth was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

165.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

166.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Hjelmeseth an accommodation for his religious exemption.

167.    On or about October 11, 2021, under duress, Plaintiff Hjelmeseth submitted his intent to retire from his job.

168.    On October 18, 2021, Defendants terminated Plaintiff Hjelmeseth's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

**L.    Plaintiff David Lawton**

169.    Plaintiff Lawton sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

170.    Plaintiff Lawton is a baptized Catholic whose sincerely held religious beliefs prohibit him from receiving the COVID-19 vaccine. Plaintiff Lawton believes it is a moral obligation to reject any medical product developed or tested using abortion-derived cell lines, which he considers a violation of human dignity and conscience. Guided by Catholic doctrine and his own informed judgment, he believes the vaccine's association with unborn life is fundamentally incompatible with his faith. Mr. Lawton's convictions are grounded in a lifetime of spiritual belief, including during his decades of service in the U.S. military, and reflect both his commitment to the teachings of the Catholic Church and his personal relationship with God.

171.    Consistent with these sincerely held religious beliefs, Plaintiff Lawton believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

172.    On September 10, 2021, Plaintiff Lawton submitted a religious exemption request form that notified Defendants about this sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

173.    Defendants subsequently requested additional information from Plaintiff Lawton regarding his religious belief and how they conflicted with the Vaccine Requirement.

174.    On September 11, 2021, Plaintiff Lawton complied with Defendants' request and provided supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

175.    Defendants then considered Plaintiff Lawton's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

SECOND AMENDED COMPLAINT                33        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                                     720 Seneca Street, Ste. 107, No. 393
                                                                     Seattle, WA 98101
                                                                     (206) 799-4221

176.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious belief in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

177.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Lawton was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

178.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

179.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Lawton accommodation for his religious exemption.

180.    On or about September 20, 2021, under duress, Plaintiff Lawton submitted his intent to retire under protest on December 31, 2021.

181.    On October 18, 2021, Defendants terminated Plaintiff Lawton's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## M.      Plaintiff Deborah Fletcher

182.     Plaintiff Fletcher sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

183.     Plaintiff Fletcher is a Christian, born and raised in a Nazarene denominational church. She accepted God's gift of Jesus being her Savior and taking her place of punishment when she was five. As she grew older, she learned how to hear from the Holy Spirit through His Word, other disciples of Jesus Christ, and in her own being. She believes that Jesus is the essence of life, is everywhere, created everything, knows all things, and gives us the very air that we breathe, and that Jesus took our place, knowing we couldn't live a perfect life nor pay for our innumerable sins that go against God's perfect way of living. Therefore, she serves Him to the best of her ability, out of pure gratitude and love for what He has done for her. Ms. Fletcher's faith requires obedience to Him and what He has told mankind in the Bible. That includes the Bible's teachings against the taking of a human life. Therefore, as she tried to explain to WSDOT when COVID-19 vaccination was demanded, she cannot condone or benefit from anything having to do with taking a human life. Ms. Fletcher understands that the manufacturers of the COVID-19 shots used aborted fetal cell lines as part of their development and/or testing of the vaccines. Her faith prohibits her from participating in or benefiting from an abortion, no matter how remotely in time that abortion occurred, therefore, she is morally opposed to vaccines which derive from aborted fetal tissues. Also, she prayed to God asking for direction regarding the COVID-19 "vaccination" requirement, and the Holy Spirit moved on her heart and conscience that she must not accept the COVID-19 shot. If she were to go against the moving of the Holy Spirit, she would be sinning and jeopardizing her relationship with God.

   **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

184.    Consistent with these sincerely held religious beliefs, Plaintiff Fletcher believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

185.    On August 30, 2021, Plaintiff Fletcher submitted a religious exemption request form that notified Defendants about her sincerely held religious belief, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

186.    Defendants subsequently requested additional information from Plaintiff Fletcher regarding her religious belief and how they conflicted with the Vaccine Requirement.

187.    On September 1, 2021, Plaintiff Fletcher complied with Defendants' request and provided supplemental information about her sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

188.    Defendants then considered Plaintiff Fletcher's request for a religious exemption, determined she sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her Plaintiff about the decision.

189.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

190.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Fletcher was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

191.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

192.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Fletcher an accommodation for her religious exemption.

193.    Plaintiff submitted a Reasonable Accommodation Reassignment Form on or about September 16, 2021.

194.    On October 18, 2021, Defendants terminated Plaintiff Fletcher's continued public employment without her consent because her religious exemption was not accommodated and she did not comply with the Vaccine Requirement.

N.    **Plaintiff Donna Tegnell**

195.    Plaintiff Tegnell sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

196.    Plaintiff Tegnell is a Christian whose sincere religious beliefs prohibit her from receiving any mRNA COVID-19 vaccines due to its use of aborted fetal cell lines, which she believes violates God's commandments against murder and defiles her obligation to honor God through her body. She has spent considerable time in prayer and study of scripture and is convicted by the Holy Spirit that receiving an mRNA vaccine would be a sin. Plaintiff Tegnell believes accepting such a vaccine would directly conflict with her duty to follow God's law and

not man's mandate. While she is not categorically opposed to all vaccines, expressing willingness to take Novavax, a non-mRNA vaccine without fetal cell lines, she cannot, in good conscience, accept an mRNA vaccine and requested reasonable accommodation from her employer based on these sincerely held religious beliefs.

197.    Consistent with these sincerely held religious beliefs, Plaintiff Tegnell believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

198.    On September 13, 2021, Plaintiff Tegnell submitted a religious exemption request form that notified Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

199.    Defendants then considered Plaintiff Tegnell's request for a religious exemption, determined she sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

200.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to her religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

201.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Tegnell was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

SECOND AMENDED COMPLAINT          38          **ARNOLD JACOBOWITZ & ALVARADO PLLC**

202.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

203.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Tegnell an accommodation for his religious exemption.

204.    Plaintiff stated she would like to wait for the Novavax, a non mRNA vaccine,

205.    Upon being made aware of a Facebook post by WSDOT/WSF Human Resources Deputy Director, Kimberly Monroe Flaig, which stated, "Those who choose not to vax in the name of stupidity can stand in line to get paid for their shot after they no longer have a paycheck to cash," Plaintiff Tegnell, who had submitted a religious exemption and requested accommodation while awaiting availability of a non mRNA vaccine, Novavax, requested a *Loudermill* hearing and sought to use her FMLA as a temporary solution while she awaited Novavax to be ready for distribution in the United States.

206.    This comment made by the Human Resources Director at WSDOT/WSF, caused Plaintiff Tegnell concern that individuals asserting religious objection to the vaccine were being publicly mocked or targeted, and that her job was in jeopardy.

207.    On October 18, 2021, Defendants terminated Plaintiff Tegnell's continued public employment without her consent because her religious exemption was not accommodated and she did not comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**O.      Plaintiff Dylan Beckner**

208.     Plaintiff Dylan Beckner sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

209.     Plaintiff Dylan Beckner has always believed in God. From a young age, his grandmother played a central role in shaping his faith by instilling in him the importance of prayer, trusting in God's plan, and living according to the teachings of their religion. Her spiritual guidance laid the foundation for his lifelong relationship with God, and her influence continues to anchor his conscience and decisions. Based on these sincerely held religious beliefs, Plaintiff Dylan Beckner objected to receiving a COVID-19 vaccine that he believes would violate that spiritual foundation and his obligation to honor God's design for his body and life.

210.     Consistent with these sincerely held religious beliefs, Plaintiff Beckner believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

211.     On September 8, 2021, Plaintiff Beckner submitted a religious exemption request form that notified Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

212.     Defendants then considered Plaintiff Beckner's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

213.     In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants

SECOND AMENDED COMPLAINT          40          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

214.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Beckner was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

215.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

216.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Beckner an accommodation for his religious exemption.

217.    On October 18, 2021, Defendants terminated Plaintiff Beckner's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

**P.    Plaintiff Erik Hansen**

218.    Plaintiff Hansen sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

219.    Plaintiff Hansen is a Christian. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, Plaintiff Hansen believes that human blood is sacred, and life is found in the blood, that salvation was purchased by the spilt blood of Jesus Christ, and that the

SECOND AMENDED COMPLAINT                41         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

body is the temple of the Holy Spirit and as such, should not be used for medical treatment that is experimental and has unknown side effects. 1 Corinthians 6:19-20. Furthermore, fetal cell lines were used during the research, development, and testing of the vaccine, which goes against Plaintiff Hansen's religious and personal views about abortion.

220.    Consistent with these sincerely held religious beliefs, Plaintiff Hansen believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

221.    On September 20, 2021, Plaintiff Hansen submitted a religious exemption request form that notified Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with the Vaccine Requirement.

222.    Defendants then considered Plaintiff Hansen's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

223.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

224.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Hansen was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

SECOND AMENDED COMPLAINT                42          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

225.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

226.   At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Hansen an accommodation for his religious exemption.

227.   On or about October 7, 2021, Plaintiff Hansen requested a *Loudermill* hearing.

228.   HR Deputy Director Monroe responded that Plaintiff Hansen would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

229.   On or about October 13, 2021, based upon Deputy Monroe's Facebook post described above, and the fact that Monroe's religious exemption letter misstated Plaintiff Hansen's job, Plaintiff Hansen requested someone else evaluate his accommodation request.

230.   On October 18, 2021, Defendants terminated Plaintiff Hansen's continued public employment without his consent because his religious exemption was not accommodated and he did not comply with the Vaccine Requirement.

**Q.    Plaintiff Gary Gordon**

231.   Plaintiff Gordon sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

232.   Plaintiff Gordon is a Christian. As he tried to explain to WSDOT when COVID-19 vaccination was demanded, the human body is the temple of God and the Spirit of God dwells within. (1 Corinthians 3:16). Therefore, as a religious necessity, Mr. Gordon cannot take anything into his body that contains or used fetal line cells in its creation or testing, since he

considers abortion to be murder, which is forbidden. (Deuteronomy 5:17). He learned that the COVID-19 vaccines were created with the use of fetal line cells, cells from an aborted baby. Specifically, the Pfizer and Moderna COVID-19 vaccines used fetal cells for proof of concept during early development of mRNA vaccine technology; and the Johnson & Johnson non-replicating viral vector vaccine required the use of fetal cell cultures in order to produce and manufacture the vaccine. Mr. Gordon believes strongly in the sanctity of life as it is the Sixth Commandment, "You shall not murder" (Exodus 20:13). It is his sincere belief that God knew us before we were born, "Thus says the LORD who made you and formed you from the womb..." (Isaiah 44:2); "...The LORD has called me from the womb; from the matrix of my mother He has made mention of my name." (Isaiah 49:1); "Before I formed you in the womb I knew you; before you were born I sanctified you..." (Jeremiah 1:5), and life begins at the point of conception, therefore a fetus within the mother's womb is a baby, a living human being, not mere tissue.

233. Consistent with these sincerely held religious beliefs, Plaintiff Gordon believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

234. On August 28, 2021, Plaintiff Gordon submitted a religious exemption request form that notified Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement. Which included a letter from his pastor, Tadd Scheffer, Sr.

235. Defendants then considered Plaintiff Gordon's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to

SECOND AMENDED COMPLAINT        44        **ARNOLD JACOBOWITZ & ALVARADO PLLC**

comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

236.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

237.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Gordon was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

238.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

239.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Gordon an accommodation for his religious exemption.

240.    On October 18, 2021, Defendants terminated Plaintiff Gordon's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**R.      Plaintiff James Howard**

241.    Plaintiff Howard sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

242.    Plaintiff Howard is a lifelong Christian whose sincerely held religious beliefs prohibit him from receiving the COVID-19 vaccine. From the age of four, his faith has been foundational to his life, guiding his daily decisions, morals, and values through biblical scripture and the teachings of his church. Plaintiff believes that his body is the temple of God (1 Corinthians 3:17), and to inject a substance such as the COVID-19 vaccine into his body would violate this sacred principle. He further grounds his objection in verses such as Leviticus 17:11 and 19:28, which inform his belief that altering or defiling his body is contrary to God's will. For Plaintiff, trust in divine protection (Psalm 118:8; Exodus 23:25) takes precedence over human mandates. Receiving the vaccine would force him to act against his conscience and deeply held religious convictions.

243.    Consistent with these sincerely held religious beliefs, Plaintiff Howard believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

244.    On September 10, 2021, Plaintiff Howard submitted a religious exemption request form that notified Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

245.    Defendants then considered Plaintiff Howard's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

246. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, or observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

247. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Howard was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

248. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

249. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Howard an accommodation for his religious exemption.

250. Plaintiff Howard submitted a reasonable accommodation reassignment form on or about September 23, 2021.

251. Plaintiff Howard requested a *Loudermill* hearing.

252. HR Manager Sarah Smith responded that a *Loudermill* hearing was not warranted.

SECOND AMENDED COMPLAINT             47          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

253.    On October 18, 2021, Defendants terminated Plaintiff Howard's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**S.    Plaintiff Jana Crawford**

254.    Plaintiff Crawford sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

255.    Plaintiff Crawford is a devout Christian whose religious beliefs are central to her life and decision-making. Guided by prayer and Biblical teachings, Plaintiff believes that human life is sacred and created in God's image, and that her body is a temple protected by God. Based on these beliefs, she cannot receive a COVID-19 vaccine developed or tested using fetal cell lines, as doing so would violate her moral and religious convictions regarding the sanctity of life. Plaintiff has consistently avoided unnecessary medications for ethical reasons and only takes necessary treatment due to a medical condition. She expressed that if she learned even that her existing medication involved fetal cell research, she would seek alternatives. Plaintiff believes that God grants each person the authority to make health decisions according to their conscience, and that government coercion in violation of those beliefs constitutes a moral and constitutional infringement. Her request was rooted in a sincere desire to honor God, not in opposition to public health. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement

256.    On September 4, 2021, Plaintiff Crawford submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, observances and how they conflicted with her ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

257. Subsequently, Defendants requested additional information from Plaintiff Crawford regarding her religious beliefs and how they conflicted with the Vaccine Requirement.

258. On September 11, 2021, Plaintiff Crawford complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

259. Defendants then considered Plaintiff Crawford's request for a religious exemption, determined she sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

260. In the same notice, and without further input from the Plaintiff regarding possible accommodations to her religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

261. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Crawford was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

262. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

263. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria.

SECOND AMENDED COMPLAINT          49          **ARNOLD JACOBOWITZ & ALVARADO PLLC**

Accordingly, no Defendant offered Plaintiff Crawford an accommodation for her religious exemption.

264.    On October 18, 2021, the State terminated Plaintiff Crawford's continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

265.    Plaintiff Crawford submitted a reasonable accommodation reassignment form on or about September 26, 2021.

266.    Plaintiff Crawford requested a *Loudermill* hearing on or about November 16, 2021.

**T.    Plaintiff Jay Sarver**

267.    Plaintiff Sarver sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

268.    Plaintiff Sarver is a dedicated Christian whose spiritual and religious beliefs are central to every aspect of his life. He has proudly served in the WSF Engine Department for nearly eight years and values his job and colleagues, but he cannot compromise his sincerely held beliefs to comply with a government vaccine mandate. Plaintiff believes that receiving any COVID-19 vaccine, or any substance containing mRNA or foreign DNA, would violate the core of his faith. He holds a deep conviction that his body, and its God-given DNA, must remain as created by the Lord. Altering that through vaccination would break his spiritual promise to honor his Creator. For Plaintiff, this belief is not abstract or political, it is rooted in a personal, unwavering devotion to Jesus Christ, whom he credits with giving his life purpose and meaning. To submit to vaccination would be to act in direct opposition to his religious belief.

269.    Consistent with these sincerely held religious beliefs, Plaintiff Sarver believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

270.    On August 29, 2021, Plaintiff Sarver submitted a religious exemption request form that notified the Defendants about the sincerely held religious beliefs, practices, and observances and how it conflicted with his ability to comply with the Vaccine Requirement.

271.    Defendants then considered Plaintiff Sarver's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

272.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

273.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job Plaintiff Sarver was qualified to perform that had no job duty requiring unavoidable and/or unpredictable interactions with co-workers or the public.

274.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

SECOND AMENDED COMPLAINT          51          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

275.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Sarver an accommodation for his religious exemption.

276.    On October 18, 2021, Defendants terminated Plaintiff Sarver's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**U.    Plaintiff Jeremy Birchfield**

277.    Plaintiff Birchfield sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

278.    Plaintiff Birchfield is a devout Christian who sincerely believes that God is the sole author of life and that human life is sacred from the moment of conception. Guided by Biblical teachings and the authority of scripture, Plaintiff cannot, in good conscience, accept any COVID-19 vaccine developed or tested using aborted fetal cell lines or containing foreign DNA or ingredients derived from human or animal tissues. These include the mRNA vaccines by Pfizer and Moderna, which he specifically identifies as violating his deeply held religious convictions. Plaintiff's objection is rooted in longstanding Biblical principles, including Psalm 139:13–14 ("For you created my inmost being; you knit me together in my mother's womb"), Jeremiah 1:5 ("Before I formed you in the womb I knew you"), and Psalm 127:3 ("Children are a gift from the Lord"). These scriptures, central to his beliefs, compel him to reject any substance that originates from or is associated with abortion or the destruction of human life. He believes God created his DNA and body in His image, and altering that through injections containing MRC-5, HEK-293, or any other foreign or aborted human cell line would defile the sacred form

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

in which he was created. To receive such a vaccine would violate his covenant with God and compromise his moral integrity. Plaintiff emphasizes that he loves his job, values the people he works with, and has a strong record of service. However, he could not put his job above his sacred religious beliefs. For him, this was never a political or philosophical stance, it was a deeply spiritual decision.

279.    Consistent with these sincerely held religious beliefs, Plaintiff Birchfield believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

280.    On August 22, 2021, Plaintiff Birchfield submitted a religious exemption request form that notified the Defendants about his sincerely-held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

281.    Subsequently, Defendants requested additional information from Plaintiff Birchfield regarding his religious belief and how they conflicted with the ability to comply with the Vaccine Requirement.

282.    On August 26, 2021, Plaintiff Birchfield complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

283.    Defendants then considered Plaintiff Birchfield's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

SECOND AMENDED COMPLAINT                53        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

284. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

285. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

286. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

287. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Birchfield an accommodation for his religious exemption.

288. Plaintiff Birchfield requested a *Loudermill* hearing multiple times, with no response.

289. On October 18, 2021, the Defendants Plaintiff Birchfield's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

SECOND AMENDED COMPLAINT             54        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## V.      Plaintiff Jeremy Greene

290.    Plaintiff Jeremy Greene sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

291.    Plaintiff Jeremy Greene believes that his body and its biological integrity are sacred and uniquely created by God. As such, any attempt to alter, access, or influence that creation, whether through vaccination or other medical interventions, violates his spiritual convictions and his understanding of divine ownership and stewardship over his body.

292.    Consistent with these sincerely held religious beliefs, Plaintiff Greene believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

293.    On October 15, 2021, Plaintiff Jeremy Greene submitted a religious exemption request form that notified the Defendants about his sincerely-held religious beliefs, practices, and observances and how they conflicted with the Vaccine Requirement.

294.    Defendants then considered Plaintiff Greene's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

295.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

296.    The only possible accommodation Defendants would consider is the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

297.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

298.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Greene an accommodation for his religious exemption.

299.    On October 18, 2021, Defendants terminated Plaintiff Greene's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

300.    On or about February 2, 2022, Plaintiff Jeremey Green was given a conditional offer of employment for the On-Call Oiler 21.6 position with WSDOT, WSF from HR Consultant Renee Mason.

301.    Plaintiff Jeremy Greene then requested an exemption from the COVID-19 vaccination and submitted a Statement of Declination of COVID-19 Vaccine Product on or about February 14, 2022.

302.    On or about February 21, 2022. WSF Deputy Director Kim Monroe acknowledged Plaintiff Jeremy Greene's exemption request and employment file.

SECOND AMENDED COMPLAINT          56          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

303.     On the same day, Defendants determined, based upon the information Plaintiff Greene provided, that Plaintiff's request for a religious exemption is based on a sincerely held religious belief that prevents Plaintiff from being vaccinated against COVID-19.

304.     However, despite this finding, Defendants determined that no accommodation could be made and rescinded the offer of employment.

305.     In the months following, Plaintiff Jeremy Greene repeatedly sought clarification from WSDOT regarding his eligibility for rehire or temporary assignments through the MEBA hall.

306.     Plaintiff Jeremy Greene's inquiries were met with delay, vague responses, and eventually internal communications.

307.     On or about April 18, 2022, in internal correspondence between WSF Deputy Director Eben Phillips and Director Eric Visser, Mr. Phillips expressly discouraged responding to Plaintiff Jeremy Greene, stating: "While tempting, I don't see any benefit of a response. He remains unvaccinated, and has a 10+ year of playing games and making accusations against WSF supervisors and management… Anything I say will reappear in an additional form of harassment, so I've simply ignored his harassing emails."

308.     Mr. Phillips' email shows a clear retaliatory motive, revealing that the decision to cut off communication and reemployment consideration stemmed not from any formal misconduct, but from long-standing personal animus toward Plaintiff Jeremy Greene's persistent assertion of his rights.

309.     On or about November 10, 2022, internal emails between WSDOT and WSF leadership revealed that senior staff explicitly discussed barring Plaintiff Greene from any future

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

employment opportunities, despite his qualifications and eligibility for temporary reemployment via MEBA dispatch.

310. WSF Senior Port Engineer Bill Schweyen, inquired that "If Jeremy meets the requirements to work, how would he go about taking temporary jobs?"

311. WSF Deputy Director Eben Phillips stated: "Jeremy Greene has been harassing Kim Monroe, Eric Visser and I for the last 11 months. It would be completely unacceptable for him to ever work on board another WSF as long as I work here."

312. Mr. Phillips further asked staff to "confirm that we could bar him from being temporarily dispatched from the MEBA hall."

313. Mr. Phillips' request was made absent any documented disciplinary proceedings, formal investigations, or prior notice to Plaintiff Jeremy Greene.

314. HR Manager Sarah Smith responded internally, "We can confirm there will be no interest in rehiring Mr. Greene for the reasons you've stated above.

315. These communications occurred shortly after Plaintiff Jeremy Greene requested clarification about vaccine exemptions and sought to invoke his rights to reemployment via MEBA temporary positions.

316. On or about December 12, 2022, WSDOT personnel confirmed that employees, including former employees, could seek reemployment with religious or medical accommodations, subject to a "file review" by Kim Monroe and Sarah Smith prior to receiving contingent offers.

317. On or about December 14, 2022, internal WSDOT communications between Mr. Visser, Ms. Kim, and Mr. Phillips, confirm WSDOT's intention to permanently refuse to

rehire Plaintiff Jeremey Greene, with WSF Director Eric Visser stating unequivocally, "[T]he message needs to be very strong: we will not rehire you."

318. In subsequent correspondence, on or about December 19, 2022, WSF Director Eric Visser informed Plaintiff Jeremey Greene that, regardless of his qualifications, WSF would consider Plaintiff's tone, perceived "disrespect for chain of command," and prior communications as grounds to reject future employment.

319. Mr. Visser's email was sent despite no record of formal discipline or misconduct findings.

320. These communications show that Plaintiff Jeremy Greene was blacklisted from reemployment as a direct result of asserting his protected rights, including religious objection and continued advocacy for a reasonable accommodation.

321. Defendants' stated justifications were vague, subjective, and inconsistent with WSDOT's own public statements and prior willingness to rehire him.

322. The "file review" process was weaponized to exclude Plaintiff Jeremy Greene in retaliation for protected conduct, not based on objective or lawful criteria.

323. For instance, on or about February 9, 2023, Plaintiff Jeremy Greene was contacted by WSDOT Human Resources Consultant Mariah Ayers regarding a professional reference check for a pending application for the On-Call Oiler/Wiper position (22DOT-WSF-Oiler 22.7)

324. Plaintiff initially raised concern that this reference check requirement was not previously disclosed in the job posting or interview process.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

325.    After clarification from Ms. Ayers, Plaintiff consented in writing to the reference check and associated file review on February 15, 2023.

326.    On or about February 17, 2023, WSDOT HR Manager Sarah Smith initiated a reference check request with WSF Director Eben Phillips regarding Plaintiff Jeremy Greene.

327.    On February 20, 2023, Mr. Phillips responded, citing alleged emails from Plaintiff between March and May of both 2022 and 2023 as evidence of "combativeness, abrasiveness and hostility," and specifically described receiving "over 63 daily emails" in 2023 in which Plaintiff Jeremy Greene allegedly criticized WSDOT leadership and demanded accountability, referencing those communications as justification for marking Plaintiff ineligible for rehire.

328.    Ms. Smith forwarded Mr. Phillips' evaluation and explicitly instructed, "Please see the reference check for Jeremy Greene and the request to not allow for rehire with WSF."

**W.    Plaintiff Joe DeGroat**

329.    Plaintiff DeGroat sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

330.    Plaintiff DeGroat is a Catholic Christian who is therefore staunchly against abortion. For that reason, he cannot in good conscience benefit from the act. All of the available COVID-19 vaccines either used aborted fetal cell lines during research and development or production and manufacture.

331.    Consistent with these sincerely held religious beliefs, Plaintiff DeGroat believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          60          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

332. On September 1, 2021, Plaintiff DeGroat submitted a religious exemption request form that notified the Defendants about his sincerely-held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

333. Subsequently, Defendants requested additional information from Plaintiff DeGroat regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

334. On or about September 1, 2021, Plaintiff DeGroat complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

335. Defendants then considered Plaintiff DeGroat's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

336. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

337. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

SECOND AMENDED COMPLAINT            61        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

338.     Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

339.     At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff DeGroat an accommodation for his religious exemption.

340.     On October 18, 2021, Defendants terminated Plaintiff DeGroat's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## X.     Plaintiff John Winston

341.     Plaintiff Winston sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

342.     Plaintiff Winston had no opportunity to fully describe his relevant religious beliefs to Defendants. Nevertheless, WSDOT determined that he had a sincerely held religious belief which entitled him to an exemption to mandatory COVID-19 vaccination. WSDOT was correct. Mr. Winston is a Christian, and pro-life for religious reasons. When confronted with a demand to accept vaccination, he went back to the teaching of Christ for guidance. In particular, he followed Proverbs 6:16-19: "There are six things that the Lord hates, seven that are an abomination to him: haughty eyes, a lying tongue, and hands that shed innocent blood, a heart that devises wicked plans, feet that make haste to run to evil, a false witness who breathes out lies , and one who sows discord among brothers," and Exodus 20:13: "You shall not murder." Mr. Winston had been informed that the creators of the vaccines had used stem cells from

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

unborn fetuses. His faith also preaches that the human body is a temple it is sacred and that he is responsible for his body's well-being.

343. Consistent with these sincerely held religious beliefs, Plaintiff Winston believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

344. On August 30, 2021, Plaintiff Winston submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with the Vaccine Requirement.

345. Defendants then considered Plaintiff Winston's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

346. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

347. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

348. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

349. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Winston an accommodation for his religious exemption.

350. On October 18, 2021, Defendants terminated Plaintiff Wonston's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

Y.     **Plaintiff Jordan Longacre**

351. Plaintiff Longacre sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

352. Plaintiff Longacre explained that his sincerely held religious beliefs prohibit him from receiving mRNA vaccines. He further stated that his creed also prevents him from injecting any medication, vaccine, or substance into his body without his written consent for an indefinite period of time. Plaintiff affirmed that receiving the COVID-19 vaccine would violate these beliefs. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

353. On August 25, 2021, Plaintiff Longacre submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            64          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

354.    Subsequently, Defendants requested additional information from Plaintiff Longacre regarding his religious belief and how they conflicted with the Vaccine Requirement.

355.    On August 30, 2021, Plaintiff Longacre complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

356.    On or about August 25, 2021, Plaintiff Longacre submitted his exemption forms, including a personal statement and a letter from his pastor, via his personal email because he had been unexpectedly locked out of his work account.

357.    On or about August 30, 2021, Defendants requested that Plaintiff Longacre complete an additional exemption form.

358.    Plaintiff Longacre complied and submitted both the WSDOT religious exemption form and a supplemental form, including a letter from his pastor.

359.    In response, Defendants requested Plaintiff Longacre to answer further questions concerning his religious beliefs, including whether he had received other vaccines in the past.

360.    Plaintiff Longacre objected to the relevance and legality of these additional questions and declined to respond to that particular item and asserted that the information he had already submitted was sufficient.

361.    Plaintiff Longacre requested that Defendants explain why the additional questionnaire was necessary.

362.    Plaintiff Longacre maintained that his previously submitted documentation fulfilled WSDOT's stated requirements.

SECOND AMENDED COMPLAINT            65        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

363.    Defendants then considered Plaintiff Longacre's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

364.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

365.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

366.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

367.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Longacre an accommodation for his religious exemption.

368.    On October 18, 2021, Defendants terminated Plaintiff Longacre's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

369.    On or about August 24, 2021, Plaintiff Longacre was placed on administrative leave was placed on administrative leave for the duration of the religious exemption and accommodation process under the Proclamation.

370.    During this administrative leave, Defendants retained Plaintiff Longacre's work laptop and restricted access to his WSDOT email account.

371.    Despite knowing Plaintiff Longacre could not access his WSDOT email, Defendants continued to send critical communications related to the exemption process, including requests and notices, to that email address.

372.    On September 24, 2021, WSDOT notified Plaintiff Longacre via his work email that he had not completed the validation process for vaccination or received an approved exemption and was given until September 29, 2021, to respond.

373.    Plaintiff Longacre did not receive this communication at the time it was sent due to being locked out of his WSDOT email account.

374.    Defendants knew or should have known that Plaintiff Longacre could not access his WSDOT email account and did not have his work laptop.

375.    Despite this, Defendants proceeded to issue a notice of separation and terminated Plaintiff Longacre effective October 18, 2021, citing non-compliance with Proclamation.

376.    Plaintiff Longacre subsequently applied for unemployment benefits, which Defendants opposed, asserting that Plaintiff failed to complete the exemption process and had engaged in misconduct and insubordination.

SECOND AMENDED COMPLAINT              67      **ARNOLD JACOBOWITZ & ALVARADO PLLC**

377.    Plaintiff Longacre appealed the denial of his unemployment benefits and, on or about April 27, 2023, an Administrative Law Judge ("ALJ") with the Washington Office of Administrative Hearings ("OAH") issued a decision reversing the denial of those benefits.

378.    The ALJ found that Plaintiff Longacre had submitted adequate documentation in support of his religious exemption, and that WSDOT failed to properly communicate with Plaintiff Longacre after placing him on administrative leave and revoking his access to work email.

379.    The ALJ's ruling concluded that Plaintiff Longacre did not commit misconduct and was entitled to unemployment benefits.

**Z.    Plaintiff Joseph Greene**

380.    Plaintiff Joseph Greene sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

381.    Plaintiff Joseph Greene was raised as a Catholic Christian and submitted a written religious exemption request on or about October 16, 2021, formally declining receipt of the COVID-19 vaccine. In his submission, Plaintiff cited deeply held religious and moral beliefs that prohibit the introduction of any substance that may alter his biological or physiological systems, systems which he believes are uniquely crafted by his Creator and for which he maintains sole stewardship. Plaintiff Joseph Greene also explained that his objection stemmed from the use or association of the COVID-19 vaccine with aborted fetal cells, which he finds incompatible with his faith. Plaintiff affirmed that although he could not in good conscience accept the vaccine, he remained willing to support public health efforts within the bounds of his religious convictions and offered to continue performing his duties at Washington State Ferries in a manner that aligned with those beliefs.

SECOND AMENDED COMPLAINT    68    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

382.    Consistent with these sincerely held religious beliefs, Plaintiff Greene believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

383.    On October 16, 2021, Plaintiff Joseph Greene submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

384.    Defendants considered Plaintiff Joseph Greene's request for a religious exemption, determined a sincerely held a religious belief conflicted with the ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

385.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

386.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

387.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

SECOND AMENDED COMPLAINT            69            **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

388.   At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Greene an accommodation for his religious exemption.

389.   On October 18, 2021, Defendants terminated Plaintiff Greene's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## AA.   Plaintiff Justin Cochran

390.   Plaintiff Cochran sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

391.   Plaintiff Cochran is a Christian started following God's way as a young boy. He further became closer with his religious when he met his wife, who also comes from a Christian family. His religious beliefs prohibit any vaccine developed with or containing components derived from aborted fetal cells. (Exodus 20:15, 1 Corinthians 3:16-17).

392.   Consistent with these sincerely held religious beliefs, Plaintiff Cochran believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

393.   On August 29, 2021, Plaintiff Cochran submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs. Practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

394.   Subsequently, Defendants requested additional information from Plaintiff Cochran regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

SECOND AMENDED COMPLAINT          70          **ARNOLD JACOBOWITZ & ALVARADO PLLC**

395.    On September 12, 2021, Plaintiff Cochran complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

396.    Defendants then considered Plaintiff Cochran's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

397.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

398.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

399.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

400.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Cochran an accommodation for his religious exemption.

401.    On October 18, 2021, Defendants terminated Plaintiff Cochran's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

402.    Plaintiff Cochran submitted a reasonable accommodation reassignment form on or about October 7, 2021.

403.    However, Plaintiff Cochran did not receive a response to his reassignment request prior to his termination.

404.    It was only after making a records request following his separation that Plaintiff Cochran discovered that Defendants had responded during the week of October 16, 2021, when he was off work due to the ferry schedule and had no access to his work email.

405.    As a result, Plaintiff Cochran was not aware of the response and never had an opportunity to rebut the decision.

406.    Defendants' response claimed that a "job search" had been conducted and no alternative positions were available.

BB.    Plaintiff Kerry Strawn

407.    Plaintiff Strawn sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

408.    Plaintiff Strawn is a Christian who held a sincerely held religious belief that receiving a COVID-19 vaccine would violate his religious convictions. After researching the vaccine's development, he and his wife learned that fetal cells were used in the process, which he found deeply disturbing and incompatible with his faith. He considered the vaccine an abomination.

SECOND AMENDED COMPLAINT          72          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

409.    Consistent with these sincerely held religious beliefs, Plaintiff Strawn believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

410.    On September 3, 2021, Plaintiff Strawn submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

411.    Subsequently, Defendants requested additional information from Plaintiff Strawn regarding his religious belief and how they conflicted with the Vaccine Requirement.

412.    On September 13, 2021, Plaintiff Strawn complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

413.    On or about September 23, 2021, Plaintiff Cochran also submitted a reassignment request form.

414.    Defendants then considered Plaintiff Strawn's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

415.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

SECOND AMENDED COMPLAINT          73          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

416.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

417.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

418.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Strawn an accommodation for his religious exemption.

419.    On October 18, 2021, Defendants terminated Plaintiff Strawn's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## CC.    Plaintiff Larry Frostad

420.    Plaintiff Frostad sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

421.    Plaintiff Frostad is a Christian who holds sincere and long-standing Christian beliefs that guide how he cares for his body, which he views as a temple belonging to God. (1 Corinthians 3:16) Based on scripture and his faith, he believes it is a sin to knowingly violate his conscience or act against Christ's teachings. After prayer, study, and reflection with his family, he concluded that the COVID-19 vaccines conflict with his sincerely held personal religious beliefs of how Christ's commandments, and teachings related to our bodies (they are not our own, but of God) and our physical and religious health apply to my walk with Christ

though life to return to Him. It is a sin to knowingly go against His teachings. He also objects to pharmaceutical interventions as a default, preferring approaches aligned with Biblical principles. (2 Corinthians 6:16) His objection to the vaccine stems from his belief that it undermines God's design for the body, poses unnecessary risks, and would compromise his ability to serve God faithfully.

422.    Consistent with these sincerely held religious beliefs, Plaintiff Frostad believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

423.    On August 27, 2021, Plaintiff Frostad submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

424.    Subsequently, Defendants requested additional information from Plaintiff Frostad regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

425.    On September 7, 2021, Plaintiff Frostad complied with Defendants' request and provided the supplemental information about the sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

426.    Defendants then considered Plaintiff Frostad's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

427.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants

SECOND AMENDED COMPLAINT             75         **ARNOLD JACOBOWITZ & ALVARADO PLLC**

determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

428. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

429. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

430. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Frostad an accommodation for his religious exemption.

431. On October 18, 2021, Defendants terminated Plaintiff Frostad's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**DD.    Plaintiff Lynn Nowels**

432. Plaintiff Nowels sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

433. Plaintiff Nowels is a Christian who holds sincere Christian beliefs that prohibit her from receiving the COVID-19 vaccine. She believes that God created the human body in His image and endowed it with a natural immune system capable of healing, and that introducing

the vaccine would betray her faith in divine design. She further believes that global vaccine mandates reflect prophetic warnings about government control and the conditioning of society for the biblical "Mark of the Beast." While she does not believe the vaccine itself is the mark, her religious convictions warn against participating in what she sees as a precursor. Plaintiff consistently complied with WSDOT's safety protocols, including masking and temperature checks, and remains willing to follow those measures. However, based on her deeply held beliefs, she could not accept the vaccine in good conscience. Further, as her pastor has explained, her church believes that COVID-19 vaccinations are synonymous with sorcery, defined as magic potions that alter the body's natural system and are specifically forbidden in Galatians 5:20.

434.    Consistent with these sincerely held religious beliefs, Plaintiff Nowels believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

435.    On August 21, 2021, Plaintiff Nowels submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

436.    Subsequently, Defendants requested additional information from Plaintiff Nowels regarding her religious beliefs and how they conflicted with the Vaccine Requirement.

437.    On August 25, 2021, Plaintiff Nowels complied with Defendants' request and provided the supplemental information about her sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

438.    Defendants then considered Plaintiff Nowels' request for a religious exemption, determined she sincerely held a religious belief that conflicted with her ability to comply with

the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

439.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

440.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

441.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

442.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Nowels an accommodation for her religious exemption.

443.    Plaintiff Nowels initially participated in Defendants' reassignment process but ultimately withdrew from further meetings after concluding they would not lead to a meaningful accommodation.

444.    In an email to Defendants sent on or about September 17, 2021, Plaintiff Nowels expressed that the process appeared predetermined and that religious exemptions were being disregarded.

445.    Plaintiff Nowels described the significant mental and physical toll the mandate had taken on her and other employees.

446.    Plaintiff Nowels stated she would continue performing her duties with integrity until WSDOT terminated her employment.

447.    On October 18, 2021, Defendants terminated Plaintiff Nowels' continued public employment without her consent for not complying with the Vaccine and because her religious exemption was not accommodated.

**EE.    Plaintiff Merriegrace LaPierre**

448.    Plaintiff LaPierre sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

449.    Plaintiff LaPierre is a Christian who believes that receiving the vaccine would violate her faith and moral code, citing concerns over bodily integrity and the use of aborted fetal cell lines. Taking a vaccine with aborted fetal cell lines is hugely offensive and disturbing to her as a Christian.

450.    Consistent with these sincerely held religious beliefs, Plaintiff LaPierre believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT    79    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

451.    On August 26, 2021, Plaintiff LaPierre submitted a religious exemption request form that notified the Defendants about her sincerely-held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

452.    Defendants subsequently requested additional information from Plaintiff LaPierre regarding her religious beliefs and how they conflicted with the Vaccine Requirement.

453.    On September 13, 2021, Plaintiff LaPierre provided the supplemental information about her sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

454.    On or about September 27, 2021, Plaintiff LaPierre received an email that stated "a review of records indicates you have not been approved for an authorized medical and/or religious vaccination exemption..."

455.    This termination notice was issued despite Plaintiff LaPierre's pending exemption request and without any interactive process regarding possible reasonable accommodation.

456.    On or about October 8, 2021, Plaintiff LaPierre requested a *Loudermill* hearing via email to Plaintiff's HR representative, Kim O'Neil and asked that her Union Representative, Ryan Brazeau, be allowed to attend.

457.    Ms. O'Neil responded the same day, stating she has been instructed to send all employee communications to the exemption box (exemption@wsdot.wa.gov), which she included in the response, in addition to the Deputy Director HR (Kim Monroe) and Manager HR (Sarah Smith) whom Ms. O'Neil also included on the email reply.

SECOND AMENDED COMPLAINT          80          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

458.   On or about October 12, 2021, Plaintiff LaPierre responded to Ms. O'Neil's October 8 email that she didn't see an exemption response and sought guidance on how to obtain a *Loudermill* meeting.

459.   On or about October 13, 2021, Ms. O'Neil responded that Plaintiff LaPierre should communicate directly with the exemption team and included the exemption alias and HR leadership (Monroe and Smith) in her response.

460.   Ms. O'Neil, a Senior HR Consultant, and Plaintiff LaPierre's HR representative, stated "I am not involved in this process and does not need to be included."

461.   On October 16, 2021, Plaintiff sent a follow-up email to the exemption team reiterating her request for a *Loudermill* hearing.

462.   In her October 16 email, Plaintiff LaPierre repeated that she had not received any response from her HR contacts, including Monroe and O'Neil, and again requested a meeting before her pending termination.

463.   Plaintiff LaPierre's email reiterated her request to be heard.

464.   In that same email, Plaintiff LaPierre requested a Zoom meeting as she "will not have gas money or transportation to get all the way to Seattle due to mandated termination."

465.   In that same email, Plaintiff LaPierre noted that she had become aware of Facebook posts made by Deputy Director Monroe and felt harassed by the content.

466.   Plaintiff LaPierre's email also stated that Plaintiff was offered no reasonable accommodation despite offering possible accommodations.

SECOND AMENDED COMPLAINT          81          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

467. Plaintiff LaPierre's email attached her resume for consideration of remote working of administrative duties.

468. Plaintiff LaPierre's email also attached her religious exemption again.

469. On or about October 19, 2021, Plaintiff LaPierre sent a follow-up email to Deputy Monroe that she "emailed the exemption Saturday. I got an autoreply. I was wondering if anyone had a chance to review my exemption and read my letter? Please keep me informed so I am not just hanging."

470. On information and belief, Defendants did not engage in any interactive process with Plaintiff LaPierre.

471. On information and belief, Defendants were on notice of Plaintiff LaPierre's request for religious exemption from the COVID-19 vaccination and ignored that request.

472. Despite Plaintiff LaPierre's multiple outreach efforts, Defendants never provided confirmation that her exemption or accommodation request was received or reviewed, nor did they schedule a *Loudermill* hearing.

473. Plaintiff LaPierre reached out to her representative, to the exemption alias, to the exemption team, and her requests for exemption, *Loudermill* hearing, and general requests to be heard went ignored.

474. At no point did Defendants acknowledge receipt of Plaintiff's religious exemption request or engage in a timely, good-faith, interactive process to evaluate possible accommodations.

SECOND AMENDED COMPLAINT          82          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

475.    Plaintiff LaPierre's repeated efforts to communicate with HR representatives, the exemption team, and union contacts went largely unanswered, resulting in procedural confusion and distress.

476.    Upon information and belief, this procedural confusion led to Plaintiff LaPierre's unlawful termination.

477.    Upon information and belief, Plaintiff LaPierre believes that her bringing up HR Deputy Monroe's Facebook post may have also contributed to Defendants' refusal to engage with Plaintiff.

478.    Upon information and belief, Defendants retaliated against Plaintiff LaPierre for raising concerns about Monroe's Facebook post in her October 16, 2021, email, and denied her the opportunity to be heard before the October 18 deadline.

479.    On October 18, 2021, Defendants terminated Plaintiff LaPierre's continued public employment without her consent for not complying with the Vaccine Requirement.

**FF.    Plaintiff Michael Brown**

480.    Plaintiff Brown sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

481.    Plaintiff Brown is a Christian whose religious beliefs do not allow him to take any substance that can potentially alter his DNA, MRNA, or any other parts of his God-given physical being, or to knowingly participate in the killing of an unborn baby by using a product that was derived from the cells obtained aborting a child.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

482.    Consistent with these sincerely held religious beliefs, Plaintiff Brown believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

483.    On September 13, 2021, Plaintiff Brown submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

484.    Initially, on or about September 14, 2021, Defendants stated that WSDOT HR did not receive sufficient information to determine whether Plaintiff's request was based on a sincerely held religious belief that prevented him from being vaccinated and therefore could not be approved.

485.    On or about September 15, 2021, Plaintiff Brown again restated his religious beliefs that conflicted with receiving the COVID-19 vaccination and asked for Defendants to re-evaluate their decision following both federal and state law.

486.    On or about September 16, 2021, HR Manager Merlinda Sain responded, "There is no doubt that you have a sincerely held religious belief…" and asked Plaintiff Brown to provide additional information to re-evaluate his request.

487.    On or about September 23, 2021, Plaintiff Brown responded stating that, "My beliefs do not allow me to take any substance that can potentially alter my DNA, MRNA, or any other parts of my god given physical being. I also object to the source of the fetal cells than [sic] were used in either development, testing, or manufacture of the vaccines."

488.    Defendants then considered Plaintiff Brown's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

489.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

490.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

491.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

492.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Brown an accommodation for his religious exemption.

493.    On October 18, 2021, Defendants terminated Plaintiff Brown's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

494.    Plaintiff Brown requested a *Loudermill* hearing but was not given one.

**GG.    Plaintiff Michael Uribe**

495.    Plaintiff Uribe sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

496.    Plaintiff Uribe is a lifelong practicing Catholic who holds a sincerely held religious belief that prohibits him from receiving the COVID-19 vaccine. Plaintiff Uribe believes that the available COVID-19 vaccines were developed or tested using abortion-derived fetal cells, which he finds morally objectionable and incompatible with Catholic doctrine. The use of these vaccines would be a violation of Catholic Doctrine on the duty to adhere to moral conscience and in contraindication with instruction of the Vatican and under the teaching of the Catholic Church which he follows. Therefore, Plaintiff Uribe is religious and morally bound from receiving this vaccine.

497.    Consistent with these sincerely held religious beliefs, Plaintiff Uribe believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

498.    On or about September 10, 2021, Plaintiff Uribe submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

499.    Subsequently, Defendants requested additional information from Plaintiff Uribe regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

500.    On or about September 10, 2021, Plaintiff Uribe complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

501.    Defendants then considered Plaintiff Uribe's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

502.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

503.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

504.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

505.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Uribe an accommodation for his religious exemption.

506.    In or about January 2023, Plaintiff Uribe reapplied to WSDOT and received conditional offer of employment with WSDOT.

507.    Based on this religious conflict, Plaintiff Uribe submitted a religious exemption request form on or about January 3, 2023.

508.    Defendants determined, based upon the information Plaintiff Uribe provided, that Plaintiff's request for a religious exemption is based on a sincerely held religious belief that prevents Plaintiff from being vaccinated against COVID-19.

509.    In determining Plaintiff Uribe's accommodation, Defendants determined, "After carefully reviewing your job classification, essential functions, and working environment, we have determined there are possible accommodations that can be considered and offered in the position which you have received a conditional offer of employment, which can sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position."

510.    Defendants determined, "Based on Center for Disease Control (CDC) and the Washington State Department of Health (DOH) determination of COVID-19 transmission and fatality levels, you may be required to follow further safety restrictions as an unvaccinated employee at the workplace as outlined by the WSDOT publication, "Beyond COVID, the Road Forward" or as determined by yourself, Safety, HR, and Management as part of the interactive Reasonable Accommodation process.

> • You will be allowed to be present at the worksite as frequently and necessary to meet business needs without restrictions or limitations. Daily Ready Op health screenings and Safety guidelines apply to all employees reporting to a WSDOT facility or worksite.
> • WSDOT will monitor the Center for Disease Control CDC COVID Data Tracker: County View map. If weekly case rates

SECOND AMENDED COMPLAINT            88        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

increase to the high level in a specific county, employees who have an approved Reasonable Accommodation may be restricted from coming to the worksite, working at the worksite, or may be required to use PPE. Additionally, per Labor and Industries (L&I), if there is an outbreak of ten (10) or more test confirmed employee COVID-19 infections in a specific workplace, employees who have an approved Reasonable Accommodation may be restricted from coming to the worksite, working at the worksite, or may be required to use PPE.
• Your Reasonable Accommodation will be reviewed annually, unless, as stated above, the county that you work in is elevated to the high level according to the CDC COVID Data Tracker: County View map."

511. On or about June 20, 2023, Plaintiff Uribe received correspondence from HR Manager Travis Vanderpool stating that based on Gov. Inslee's rescission of Directive 22-13.1, COVID-19 vaccination is no longer a condition of employment, and therefore his Religious Accommodation for exemption form COVID-19 vaccination as a condition of employment was being closed effective the date on this letter.

512. On October 18, 2021, Defendants terminated Plaintiff Uribe's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

HH. Plaintiff Michael Watkins

513. Plaintiff Watkins sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

514. Plaintiff Watkins is a Christian whose faith tells him that the human body is a temple of the holy spirit (1 Corinthians 6:19-20), and that the whole spirit, soul and body is to be kept blameless (1 Thessalonians 5:23), so injecting stem cells of unknown origins is religiously wrong; moreover, in his prayers, God revealed that he must not take the experimental

SECOND AMENDED COMPLAINT          89          ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

drug that is the COVID-19 vaccines. Based on these sincerely held religious beliefs, Mr. Watkins is unable to take the COVID-19 vaccines currently available.

515.     On September 10, 2021, Plaintiff Watkins submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

516.     Defendants then considered Plaintiff Watkins's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

517.     In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

518.     The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

519.     Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

520.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Watkins an accommodation for his religious exemption.

521.    On October 18, 2021, Defendants terminated Plaintiff Watkins' continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## II.    Plaintiff Nathan Kesler

522.    Plaintiff Kesler sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

523.    Plaintiff Kesler is a Christian. Taking the Covid-19 vaccines would conflict with his strongly held religious beliefs, because the vaccines in question have been produced and tested with fetal cell lines from aborted babies; and as a faithful Christian opposed to abortion, he cannot use any product that takes its origin in abortion.

524.    Consistent with these sincerely held religious beliefs, Plaintiff Kesler believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

525.    On August 31, 2021, Plaintiff Kesler submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

526.    Subsequently, Defendants requested additional information from Plaintiff Kesler regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

527.    On September 24, 2021, Plaintiff Kesler complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the vaccine Requirement.

528.    Defendants then considered Plaintiff Kesler's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

529.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

530.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

531.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

532.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Kesler an accommodation for his religious exemption.

SECOND AMENDED COMPLAINT            92        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

533. Plaintiff Kesler received notice of separation from Defendants effective October 18, 2021.

534. On or about September 30, 2021, Plaintiff Kesler applied for Paid Family and Medical Leave unrelated to the COVID-19 vaccine.

535. One or about October 25, 2021, Plaintiff Kesler's PMFLA request was approved from October 1, 2021, to January 1, 2022.

536. On or about October 15, 2021, Secretary of Transportation, Robert Millar rescinded Plaintiff Kesler's termination notice based on information Defendants had received and Plaintiff Kesler could continue his employment.

537. On or about January 20, 2022, Plaintiff Kesler received notice that his termination would be effective at the end of his PMFLA on January 2, 2022.

538. On January 2, 2022, Defendants terminated Plaintiff Kesler's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## JJ.    Plaintiff Nicholas Auckland

539. Plaintiff Auckland sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

540. Plaintiff Auckland is a Christian who believes in God, Jesus Christ, and the Holy Spirit as one. He holds a sincerely held religious conviction, supported by scripture such as 1 Corinthians 6:19–20, that his body is a temple and that he must not defile it by injecting unknown substances, especially those connected to aborted fetal cell lines.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

541.    Consistent with these sincerely held religious beliefs, Plaintiff Auckland believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

542.    Despite holding these religious beliefs, Plaintiff Auckland did not formally submit a religious exemption request because he reasonably believed, based on WSDOT's pattern and practice of denying accommodation of nearly all such requests without meaningful review, that doing so would be futile.

543.    Plaintiff Auckland was aware of multiple coworkers whose exemption requests were granted but unable to be accommodation and observed that the agency had predetermined outcomes without engaging in good faith or individualized evaluation.

544.    Plaintiff Auckland's decision not to submit a formal exemption was the result of a chilling effect created by WSDOT's conduct, not a lack of religious conviction.

545.    On October 18, 2021, Defendants terminated Plaintiff Auckland's continued public employment without his consent for not complying with the Vaccine Requirement.

KK.    **Plaintiff Nicole Preziosi**

546.    Plaintiff Preziosi sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

547.    Consistent with her sincerely held religious beliefs, Plaintiff Preziosi believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

548.    On September 15, 2021, Plaintiff Preziosi submitted a religious exemption request form that notified the Defendants about her sincerely-held religious beliefs, practices,

and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

549.    Initially, on or about September 21, 2021, HR Director Jeff Pelton sent correspondence where Defendants stated that WSDOT HR did not receive sufficient information to determine whether Plaintiff's request was based on a sincerely held religious belief that prevented her from being vaccinated and therefore could not be approved.

550.    On or about September 23, 2021, Plaintiff Preziosi responded to the denial stating, "Your response is not only disrespectful, but inappropriate based on your original request. The Religious Exemption form was completely perfectly on my end. If there was not enough information provided than you should either expand the scope of the form, and/or request more information from me."

551.    Deputy Kim Monroe responded the same day, apologizing and validating the information Plaintiff Preziosi provided and approved her religious exemption.

552.    Defendants then considered Plaintiff Preziosi's request for a religious exemption, determined she sincerely held religious beliefs that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

553.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

554.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

555.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

556.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Preziosi an accommodation for her religious exemption.

557.    On October 18, 2021, Defendants terminated Plaintiff Preziosi's continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

**LL.    Plaintiff Peter Duncan**

558.    Plaintiff Duncan sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

559.    Plaintiff Duncan is a practicing Catholic who holds a sincerely held religious belief that receiving the COVID-19 vaccine would violate his conscience and moral teachings of his faith. His objection stems from core Catholic doctrines that vaccination must be voluntary, that it may be morally impermissible to use medical products derived from aborted fetal cell lines, and that individual conscience must be respected when it leads a person to decline such interventions. His pastor supported this objection,

560. Consistent with these sincerely held religious beliefs, Plaintiff Duncan believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

561. On August 25, 2021, Plaintiff Duncan submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

562. Defendants then considered Plaintiff Duncan's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

563. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

564. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

565. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

SECOND AMENDED COMPLAINT                97         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

566.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Duncan an accommodation for his religious exemption.

567.    Plaintiff Duncan also submitted a medical exemption request. When asked by WSDOT whether he intended to proceed with both requests, Plaintiff Duncan expressly confirmed that he wished to move forward with both the medical and religious exemption processes as both applied.

568.    However, upon information and belief, Defendants never acknowledged or processed Plaintiff Duncan's medical exemption request.

569.    Instead, Defendants only granted Plaintiff Duncan's religious exemption without providing any explanation as to why the medical exemption was disregarded.

570.    Plaintiff Duncan was never given an opportunity to have both requests fairly evaluated, and Defendants failed to engage in a good faith interactive process regarding potential accommodations under either exemption.

571.    On October 18, 2021, Defendants terminated Plaintiff Duncan's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**MM.   Plaintiff Richard Ostrander**

572.    Plaintiff Ostrander sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            98        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

573.    Plaintiff Ostrander is a Lutheran Christian who held a sincere religious belief that receiving the COVID-19 vaccine would violate his faith. Plaintiff Ostrander expressed a belief that his body is a temple of God and must be treated as such, citing scripture and spiritual conviction as the basis for rejecting the vaccine. Plaintiff believed that being forced to take the vaccine, particularly one associated with fetal cell lines, would compromise his moral and religious integrity.

574.    Consistent with these sincerely held religious beliefs, Plaintiff Ostrander believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

575.    On September 7, 2021, Plaintiff Ostrander submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

576.    Defendants then considered Plaintiff Ostrander's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

577.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

SECOND AMENDED COMPLAINT          99          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

578. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

579. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

580. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Ostrander an accommodation for his religious exemption.

581. Plaintiff Ostrander submitted a Reassignment Request From on or about September 30, 2021.

582. On or about October 6, 2021, Plaintiff Ostrander requested a *Loudermill* hearing.

583. On or about October 7, 2021, HR Manager Kirors-Sweet responded that Plaintiff Ostrander would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

584. On October 18, 2021, Defendants terminated Plaintiff Ostrander's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

SECOND AMENDED COMPLAINT              100      **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## NN.    Plaintiff Robert Washabaugh

585.    Plaintiff Washabaugh sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

586.    Plaintiff Washabaugh is a Catholic Christian. Plaintiff believes that the human body is sacred and that altering it with substances developed using fetal cell lines violates his religious convictions. Plaintiff feels a deep spiritual obligation to preserve the body as created by God, and believes that reliance on pharmaceutical interventions, particularly vaccines developed or tested using methods contrary to his religious teachings, conflicts with his faith. These beliefs have guided the Plaintiff's medical choices for years, and Plaintiff has consistently strived to follow Biblical principles when making health-related decisions.

587.    Consistent with these sincerely held religious beliefs, Plaintiff Washabaugh believed that he could not be injected with a COVID-19 vaccine. Plaintiff's decision not to receive the vaccine stems directly from prayer, spiritual discernment, and their desire to act in accordance with their conscience and God's guidance. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

588.    On September 2, 2021, Plaintiff Washabaugh submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

589.    Subsequently, Defendants requested additional information from Plaintiff Washabaugh regarding his religious beliefs and how they conflicted with his ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            101            **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

590.   On September 10, 2021, Plaintiff Washabaugh complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

591.   Defendants then considered Plaintiff Washabaugh's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

592.   In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

593.   The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

594.   Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

595.   At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Washabaugh an accommodation for his religious exemption.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

596.    On October 18, 2021, Defendants terminated Plaintiff Washabaugh's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**OO.    Plaintiff Rodney Pelham**

597.    Plaintiff Pelham sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

598.    Plaintiff Pelham is a lifelong Jehovah's Witness who was baptized at the age of 11 and has consistently structured his moral and medical decisions around his faith and study of the Bible. He believes that his body is a temple and that he must care for it in a way that honors God. Drawing from scriptural principles such as Proverbs 14:15, Titus 2:12, and 1 Timothy 5:8, Plaintiff exercised caution regarding the COVID-19 vaccine, viewing it as a serious, permanent medical decision that must be made with spiritual discernment and personal responsibility.

599.    Plaintiff Pelham viewed submitting to a government mandate under threat of job loss as a violation of his duty to make medical decisions based on his faith and responsibility to provide for his family.

600.    Plaintiff Pelham's decision not to receive the vaccine was not political or medical alone, but a deeply personal act of spiritual obedience and religious conviction.

601.    On October 18, 2021, Defendants terminated Plaintiff Pelham's continued public employment without his consent for not complying with the Vaccine Requirement

**PP.    Plaintiff Ronald Vessey**

602.    Plaintiff Vessey sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

603.    Plaintiff Vessey believes the body is a temple of the Holy Spirit and that the mRNA and adenovirus-based vaccines defile this temple by overriding God's perfect, natural immune design. Unlike traditional vaccines that supplement the immune system, these new vaccines are, in his view, designed to reprogram it, an act Plaintiff considers a sin. His objection is based on scriptural guidance, including 1 Corinthians 3:16–17 and 2 Corinthians 7:1, and a belief that submitting to such a vaccine would violate his moral obligation to honor God's creation. Plaintiff is aware that the Covid-19 vaccines use a brand-new vaccine technology that contain synthetic and other objectionable unknown proprietary ingredients; and it is his sincerely held religious belief that these synthetic and other objectionable unknown proprietary ingredients (contaminants) will defile his body. Furthermore, unlike conventional vaccines, these new mRNA and Adenovirus vaccines are designed to override or replace his God-given natural immunity by encoding a spike protein or a variant of the spike protein. He believes that if God wanted his body to produce this foreign protein, God would have designed him to do so. In contrast, conventional vaccines, like those used for polio and influenza, use a weakened or inactivated version of a pathogen that causes a disease, to provoke a natural, God-given immune response. This type of a vaccine is designed to enhance or supplement the God-given natural immune system. He believes that to knowingly try to override God's perfect design to keep him healthy, and not simply supplement it by exposing himself to a harmless virus, defiles the temple that the Holy Spirit dwells in and commits a sin against God.

604.    Consistent with these sincerely held religious beliefs, Plaintiff Vessey believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT                    104          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

605.    On August 26, 2021, Plaintiff Vessey submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

606.    Subsequently, Defendants requested additional information from Plaintiff Vessey regarding his religious belief and how they conflicted with the haccine Requirement.

607.    On September 3, 2021, Plaintiff Vessey complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

608.    Defendants then considered Plaintiff Vessey's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

609.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

610.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

SECOND AMENDED COMPLAINT                105        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

611. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

612. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Vessey an accommodation for his religious exemption.

613. When inquiring about retirement, on or about August 23, 2021, before any religious exemption determination was made, Plaintiff Vessey had stated to his assigned HR Consultant, Alana Neal, "Can you tell me if a decision has been made regarding the timing of retirement? Specifically, can my official retirement date be December 1 while I am on annual leave beginning mid or early October? Please be aware this is my worst case scenario as I do not want to retire and face a significant financial penalty for retiring before 62. This is only a backup in case my exemption request is denied."

614. On or about September 24, 2021, Plaintiff Vessey submitted a Reassignment Request Form.

615. On or about September 30, 2021, WSDOT sent Plaintiff Vessey written notification that the agency was "not able to identify any vacant funded positions that meet your skills and abilities" for a job reassignment.

616. After receiving this denial, Plaintiff Vessey believed he had no viable path to accommodation and began discussing retirement options with WSDOT personnel.

SECOND AMENDED COMPLAINT         106         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

617. Upon information and belief, on or about October 13, 2021, Mr. Vessey communicated with HR Manager Alana Neal, who informed him that if he planned to retire, he should do so immediately ("this morning") to avoid receiving a separation letter.

618. That same morning, Plaintiff Vessey officially retired and forwarded confirmation of his retirement to WSDOT.

619. Later that evening, WSDOT emailed Plaintiff Vessey acknowledging receipt of his retirement notice.

620. However, on October 14, 2021, after Plaintiff Vessey had already retired, he received another email from WSDOT stating that a Transportation Engineer 3 position had been identified as a potential reassignment opportunity and offered to him as a reasonable accommodation.

621. Plaintiff believed this was a job he was unqualified for and placed him in a much greater health risk than if he remained in his current job.

622. Plaintiff Vessey expressed frustration and confusion, stating that the agency's conflicting communication caused him emotional distress and led him to believe retirement was his only viable option to protect his pension.

623. WSDOT initially denying a reassignment and then offering a position after Plaintiff Vessey's retirement was acknowledged, undermined the interactive process and deprived Mr. Vessey of a meaningful opportunity to consider the accommodation.

624. On information and belief, WSDOT's delayed and contradictory actions effectively forced Plaintiff Vessey into a premature retirement, amounting to a constructive discharge.

SECOND AMENDED COMPLAINT          107          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**QQ.    Plaintiff Ryan Eubank**

625.    Plaintiff Eubank sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

626.    Plaintiff Eubank's religion states that his is living to please God and it is God's will that he must sanctity his body in a way that is holy and honorable to Him. Further based on his religion, Plaintiff believes that his body is temple and that he must treat it as such to preserve its sanctity. Injecting foreign and unnatural substances, such as the COVID-19 vaccine, would violate his religious beliefs before God. This sanctity is fundamental to his beliefs in the scriptures of his religion and in accordance with his convictions before God.

627.    Consistent with these sincerely held religious beliefs, Plaintiff Eubank believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

628.    On September 12, 2021, Plaintiff Eubank submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

629.    Defendants then considered Plaintiff Eubank's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

630.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

631.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

632.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

633.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Eubank an accommodation for his religious exemption.

634.    Plaintiff Eubank submitted a Reassignment Request From on or about September 27, 2021.

635.    Plaintiff did not receive a response to his reassignment request.

636.    On October 18, 2021, Defendants terminated Plaintiff Eubank's continued public employment without his consent for not complying with the Vaccine Requirement and the religious exemption was not accommodated.

**RR.    Plaintiff Scott Schutt**

637.    Plaintiff Schutt sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

638.    Plaintiff Schutt is a Christian who attends the Assembly of God Church. Plaintiff's religious belief is that medicine derived from aborted fetuses is morally and spiritually wrong, and it is his duty as a Christian to protect his body, a temple for the holy spirit, from defilement.

639.    Consistent with these sincerely held religious beliefs, Plaintiff Schutt believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

640.    On August 26, 2021, Plaintiff Schutt submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

641.    Defendants then considered Plaintiff Schutt's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

642.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

643.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

SECOND AMENDED COMPLAINT                110        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

644.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

645.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Schutt an accommodation for his religious exemption.

646.    On October 18, 2021, Defendants terminated Plaintiff Schutt's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**SS.    Plaintiff Sean Morgan**

647.    Plaintiff Morgan sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

648.    As a Christian, Plaintiff Morgan believes his body is a temple of the Holy Spirit and that he must not defile it by introducing substances like the vaccine, which he considers unclean and potentially harmful. Furthermore, many years ago, Plaintiff became deeply convicted in his faith, regarding vaccines to artificially override his body's natural immune stated as reall as reading the use of aborted fetal tissue in the production and testing of vaccines. He pledged to never again participate in something that would support taking anything from an unborn child and placing it inside his body, which would be detestable to God. Plaintiff Morgan explained that his faith teaches him to rely on God for protection and healing, and that accepting the vaccine would demonstrate a lack of faith and disobedience to biblical principles.

SECOND AMENDED COMPLAINT                    111          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

649.    Consistent with these sincerely held religious beliefs, Plaintiff Morgan believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

650.    On August 30, 2021, Plaintiff Morgan submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practice, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

651.    Subsequently, Defendants requested additional information from Plaintiff Morgan regarding his religious beliefs and how they conflicted with the vaccine Requirement.

652.    On September 10, 2021, Plaintiff Morgan complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

653.    Defendants then considered Plaintiff Morgan's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

654.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

655.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no

SECOND AMENDED COMPLAINT          112          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

656. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

657. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Morgan an accommodation for his religious exemption.

658. On October 18, 2021, Defendants terminated Plaintiff Morgan's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**TT.    Plaintiff Shasta Atkins**

659. Plaintiff Atkins sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

660. On September 13, 2021, Plaintiff Atkins submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

661. Defendants then considered Plaintiff Atkins's request for a religious exemption, determined she sincerely held religious beliefs that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

662. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious belief in the Plaintiff's current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

663. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

664. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

665. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Atkins an accommodation for his religious exemption.

666. On October 18, 2021, Defendants terminated Plaintiff Atkins' continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

667. Prior to the mandate, Plaintiff Atkins was granted 100% telework.

668. This included field work being waived and office work being waived for the foreseeable future.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

669.    In fact, Plaintiff Atkin's supervisor, George, conceded that filed work was not an essential part of her work duties and that Plaintiff Atkins has never performed field work as my essential duties or any duties since hired for the bridge office.

670.    Despite the above, Plaintiff Atkins received notice of separation from Defendants effective October 18, 2021.

**UU.    Plaintiff Sheri Ferguson**

671.    Plaintiff Ferguson sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

672.    Plaintiff Ferguson is a Christian who based on her religion, believes as it is stated in the Bible that each person is a child made in the image of God (Psalm 127:3; Romans 12 :1–2), and she believes that the usage of aborted human fetuses cells in the COVID-19 vaccine development is abhorrent and directly at odds with her religion. Plaintiff Ferguson cannot adhere to any policy that fuels and supports an unlawful persecution of her religious rights.

673.    Consistent with these sincerely held religious beliefs, Plaintiff Ferguson believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

674.    On September 9, 2021, Plaintiff Ferguson submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT             115      **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

675.    Defendants then considered Plaintiff Ferguson's request for a religious exemption, determined she sincerely held religious beliefs that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

676.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

677.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

678.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

679.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Ferguson an accommodation for her religious exemption.

680.    On October 18, 2021, Defendants terminated Plaintiff Ferguson's continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

SECOND AMENDED COMPLAINT              116       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## VV. Plaintiff Sommer Beckner

681. Plaintiff Sommer Beckner sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

682. Plaintiff Sommer Beckner is a Christian who is religiously opposed to abortion derived vaccines, like the COVID-19 vaccine. Partaking in a vaccine made from aborted fetuses makes her complicit in an action that offends her religious faith.

683. Consistent with these sincerely held religious beliefs, Plaintiff Beckner believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

684. On September 8, 2021, Plaintiff Sommer Beckner submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, and observances and how they conflicted with her ability to comply with the Vaccine Requirement.

685. Defendants then considered Plaintiff Sommer Beckner's request for a religious exemption, determined she sincerely held religious beliefs that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

686. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

687.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

688.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

689.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Beckner an accommodation for her religious exemption.

690.    On or about October 6, 2021, Plaintiff Sommer Beckner requested a *Loudermill* hearing.

691.    HR Deputy Director Monroe responded that Plaintiff Sommer Beckner would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

692.    On October 18, 2021, Defendants terminated Plaintiff Beckner's continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

## WW.  Plaintiff Stacy Katyryniuk

693.    Plaintiff Katyryniuk requested a *Loudermill* hearing by writing on or about October 13, 2021, prior to her termination to provide additional notice to WSDOT and discuss accommodation.

SECOND AMENDED COMPLAINT          118          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

694.    Despite this request, no *Loudermill* hearing was ever provided.

695.    Plaintiff Katyryniuk was denied the opportunity to be heard regarding her separation from employment, in violation of her constitutional right to due process.

696.    On October 18, 2021, Defendants terminated Plaintiff Katyryniuk's continued public employment without her consent for not complying with the Vaccine Requirement.

## XX.    Plaintiff Stephen Austin

697.    Plaintiff Austin sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

698.    Plaintiff Austin Plaintiff Austin holds a sincerely held religious belief that he was made in the image of God, and that injecting foreign biological and technological substances, such as the COVID-19 vaccine, into his body defiles God's creation. He believes this form of pharmakeia is warned against in the Bible and is a means through which Satan misleads and corrupts humanity. Austin's belief is that the modern medical and pharmaceutical systems are Ahrimanic, materialist, and spiritually corrupt. He objects to vaccines produced by materialist science, viewing them as unnatural and not divinely ordained. Though vaccinated as a child, he has refused vaccines and medical interventions since turning eighteen. His convictions deepened after studying the Christian tradition and were solidified with the birth of his son in 2019.

699.    Consistent with these sincerely held religious beliefs, Plaintiff Austin believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

700.    On or about August 26, 2021, Plaintiff Austin submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

701.    Subsequently, Defendants requested additional information from Plaintiff Austin regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

702.    On or about August 26, 2021, Plaintiff Austin complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the vaccine Requirement.

703.    Defendants then considered Plaintiff Austin's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

704.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

705.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

706. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

707. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Austin an accommodation for his religious exemption.

708. Plaintiff Austin also submitted a disability exemption request, which was granted on or about September 28, 2021.

709. Defendants determined that Plaintiff Austin had a disability the prevented him from being vaccinated against COVID-19 and in the same letter, Defendants determined that no accommodation could be made.

710. On October 18, 2021, Defendants terminated Plaintiff Austin's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious and disability exemption was not accommodated.

**YY.    Plaintiff Steven Turcott**

711. Plaintiff Turcott sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

712. Plaintiff Turcott is a Christian whose faith in Jesus Christ requires him to be a good steward of his body, which he understands to be a temple of the Holy Spirit. Guided by scriptural teachings, including 1 Corinthians 6:19–20 and Matthew 25:14-30, Plaintiff Turcott believes he is accountable to God for what he puts into his body and for decisions that affect his

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

health. His faith does not universally prohibit all vaccines or medications but requires case-by-case discernment using God-given wisdom, experience, and scriptural principles.

713.    Consistent with these sincerely held religious beliefs, Plaintiff Turcott believed that he could not be injected with a COVID-19 vaccine. He could not in good conscience receive a COVID-19 vaccine due to unresolved concerns about the potential use of aborted fetal tissue in its development, which would violate his sincerely held religious beliefs. Thus, he could not comply with the Vaccine Requirement.

714.    On August 25, 2021, Plaintiff Turcott submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

715.    Subsequently, Defendants requested additional information from Plaintiff Turcott regarding the religious beliefs and how they conflicted with she Vaccine Requirement.

716.    On August 27, 2021, Plaintiff Turcott complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

717.    Defendants then considered Plaintiff Turcott's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

718.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position

122    **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

719.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

720.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

721.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Turcott an accommodation for his religious exemption.

722.    On October 18, 2021, Defendants terminated Plaintiff Turcott's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## ZZ.    Plaintiff Steven Walker

723.    Plaintiff Walker sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

724.    Plaintiff Walker's faith is rooted in a lifelong belief in Jesus Christ, which he understands to have been predestined by God before his birth, as reflected in Ephesians 1:4–5 and Psalm 22:9–10. He believes that God established his belief system before he was even conceived, and that he is accountable to God alone for how he lives, including decisions

SECOND AMENDED COMPLAINT            123       **ARNOLD JACOBOWITZ & ALVARADO PLLC**

affecting his health and body. Mr. Walker's convictions are shaped by his understanding of Galatians 5:18–21, which warns against the works of the flesh, including "witchcraft," translated from the Greek word pharmakeia, historically associated with the use or administration of drugs. Based on this interpretation and related scriptural guidance, he believes that to follow the Holy Spirit, he must abstain from participating in pharmaceutical-based gene therapies such as the COVID-19 vaccines. Mr. Walker also cites Romans 14:5–9 to support the principle that each person is individually accountable to God and must be fully persuaded in their own mind about matters not explicitly addressed in Scripture.

725.    Consistent with these sincerely held religious beliefs, Plaintiff Walker believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

726.    On August 23, 2021, Plaintiff Walker submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

727.    Subsequently, Defendants requested additional information from Plaintiff Walker regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

728.    On September 1, 2021, Plaintiff Walker complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

729.    Defendants then considered Plaintiff Walker's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

SECOND AMENDED COMPLAINT         124        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

730.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

731.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

732.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

733.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Walker an accommodation for his religious exemption.

734.    Plaintiff Walker submitted a Reassignment Request From on or about October 15, 2021.

735.    On October 18, 2021, Defendants terminated Plaintiff Walker's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

SECOND AMENDED COMPLAINT                125        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**AAA.  Plaintiff Terry Dunn**

736.    Plaintiff Dunn sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

737.    Plaintiff Dunn is a Christian who has lived with faith-based values for most of his life, but in the past several years made a serious, transformative decision to follow Jesus Christ with complete trust and obedience. Plaintiff Dunn no longer "practices religion" but instead seeks to live a life led entirely by faith. This recommitment was shaped by personal loss and spiritual growth and now governs all aspects of his conduct, including his health decisions. Mr. Dunn's religious beliefs compel him to avoid any medical intervention he believes would violate God's commandments or compromise his spiritual integrity. Specifically, he cannot permit any vaccine into his body that was developed, tested, or produced using cells derived from aborted fetal tissue. He views this connection to abortion as incompatible with his faith and considers any participation in such a system as morally equivalent to complicity in murder. His objection is not speculative or political, it is rooted in his understanding of scripture, including Hebrews 11:6, which states that "without faith it is impossible to please God," and John 8:24, which emphasizes the eternal consequences of disbelief. Mr. Dunn believes that taking the COVID-19 vaccine would represent a failure to fully trust in God's protection and would force him to break a promise he made to his dying father to never turn his back on his faith.

738.    Consistent with these sincerely held religious beliefs, Plaintiff Dunn believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

739.    On or about August 26, 2021, Plaintiff Dunn submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

740.    Subsequently, Defendants requested additional information from Plaintiff Dunn regarding his religious beliefs and how they conflicted with the Vaccine Requirement.

741.    On or about August 26, 2021, Plaintiff Dunn complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

742.    Defendants then considered Plaintiff Dunn's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

743.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (sic) the public."

744.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

SECOND AMENDED COMPLAINT              127       **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                        720 Seneca Street, Ste. 107, No. 393
                                                        Seattle, WA 98101
                                                        (206) 799-4221

745.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

746.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Dunn an accommodation for his religious exemption.

747.    On October 18, 2021, Defendants terminated Plaintiff Dunn's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**BBB.  Plaintiff Todd Humphreys**

748.    Plaintiff Humphreys sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

749.    Plaintiff Humphreys is a Christian who sincerely objected to getting the COVID-19 vaccine on religious grounds. Although he did not submit a written religious exemption request, he communicated his objection to the mandate to his supervisor and others at WSDOT prior to his retirement. While he did not publicly disclose the full basis for his objection in fear of losing his retirement benefits, he made it clear that he did not agree with the mandate and wished his objection to be noted before leaving his position.

750.    Under duress, Plaintiff Humphreys chose to retire rather than violate his beliefs, and his actions reflect the sincerity of his religious conviction.

SECOND AMENDED COMPLAINT            128          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**CCC.  Plaintiff Tyler Ratkie**

751.    Plaintiff Ratkie sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

752.    Plaintiff Ratkie Plaintiff Ratkie holds a sincerely held religious belief rooted in their Christian faith that prohibits taking the COVID-19 vaccine. Plaintiff believes the vaccine is not a true necessity and that Plaintiff must rely on faith in God for protection and health, rather than on human-developed interventions like the COVID-19 vaccine. Plaintiff believes his body is a temple of the Holy Spirit and that he is called to honor God with it. Taking the vaccine would violate his conscience, which is guided by scripture, including 1 Corinthians 6:19-20. Plaintiff has prayed for guidance and believes firmly that abstaining from the vaccine is the right decision according to his faith.

753.    Consistent with these sincerely held religious beliefs, Plaintiff Ratkie believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

754.    On August 30, 2021, Plaintiff Ratkie submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

755.    Subsequently, Defendants requested additional information from Plaintiff Ratkie regarding his religious belief and how they conflicted with the Vaccine Requirement.

756.    On September 9, 2021, Plaintiff Ratkie complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            129            **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

757.    Defendants then considered Plaintiff Ratkie's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

758.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

759.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

760.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

761.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Ratkie an accommodation for his religious exemption.

762.    On or about October 12, 2021, Plaintiff Ratkie requested a *Loudermill* hearing.

763.    HR Manager Merlinda Sain responded that Plaintiff Ratkie would not receive a *Loudermill* hearing since *Loudermill* hearing was for handling at-fault terminations.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

764.    On October 18, 2021, Defendants terminated Plaintiff Ratkie's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**DDD.  Plaintiff Wendy Punch**

765.    Plaintiff Punch sincerely held a religious belief that conflicted with her ability to comply with the Vaccine Requirement.

766.    Plaintiff Punch is an independent Christian. Not only does the aborted fetal cells use in the COVID-19 vaccines' development go against her religious beliefs, but she also believes that God built her and her immune system, and the vaccines would alter what God created.

767.    Consistent with these sincerely held religious beliefs, Plaintiff Punch believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

768.    Despite holding these religious beliefs, Plaintiff Punch did not formally submit a religious exemption request because she reasonably believed, based on WSDOT's pattern and practice of denying accommodation of nearly all such requests without meaningful review, that doing so would be futile.

769.    On information and belief, Plaintiff Punch was aware of multiple coworkers whose exemption requests were granted but unable to be accommodation and observed that the agency had predetermined outcomes without engaging in good faith or individualized evaluation.

SECOND AMENDED COMPLAINT                131         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

770.   Plaintiff Punch's decision not to submit a formal exemption was the result of a chilling effect created by WSDOT's conduct, not a lack of religious conviction.

771.   On October 18, 2021, Defendants terminated Plaintiff Punch's continued public employment without her consent for not complying with the Vaccine Requirement.

## EEE.   Plaintiff William DuBose

772.   Plaintiff DuBose sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

773.   Plaintiff DuBose is a Christian and based on religious beliefs, he is opposed the use of vaccines or medicine with ingredients derived from abortions.

774.   Consistent with his sincerely held religious beliefs, Plaintiff DuBose believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

775.   On August 29, 2021, Plaintiff DuBose submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

776.   On or about September 24, 2021, HR Director Jeff Pelton sent correspondence where Defendants stated that WSDOT HR did not receive sufficient information to determine whether Plaintiff's request was based on a sincerely held religious belief that prevented him from being vaccinated and therefore could not be approved.

777.   There was no request for additional information, just a rejection of his request.

SECOND AMENDED COMPLAINT          132          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

778.    Defendants issued this denial without first requesting additional information or clarification from Plaintiff DuBose, despite doing so for other employees whose submissions were also brief or lacked detail.

779.    Plaintiff DuBose received notice of separation from Defendants effective October 18, 2021.

780.    Under duress, Plaintiff DuBose felt the only other option besides being terminated was early retirement.

781.    Plaintiff DuBose was forced into retirement (five years early) on October 18, 2021.

FFF.    **Plaintiff Victoria Gardner**

782.    Plaintiff Victoria Gardner sincerely held a religious belief that conflicted with the ability to comply with the Vaccine Requirement.

783.    Plaintiff Gardner is a Christian whose religious beliefs regarding the sanctity of human life conflict directly with any requirement to inject abortion-tainted vaccinations into my body. All available Covid vaccines utilize abortion-derived cell lines in either the confirmation and testing stage of development or in the production process.

784.    Consistent with these sincerely held religious beliefs, Plaintiff Gardner believed that she could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

785.    On September 3, 2021, Plaintiff Gardner submitted a religious exemption request form that notified the Defendants about her sincerely held religious beliefs, practices, and observances and how it conflicted with her ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT                   133         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

786. Defendants then considered Plaintiff Gardner's request for a religious exemption, determined she sincerely held religious beliefs that conflicted with her ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified her about their decision.

787. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in her current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

788. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

789. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

790. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Gardner an accommodation for her religious exemption.

791. On October 18, 2021, Defendants terminated Plaintiff Gardner's continued public employment without her consent for not complying with the Vaccine Requirement and because her religious exemption was not accommodated.

SECOND AMENDED COMPLAINT              134         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**GGG.  Plaintiff Brion Hogan**

792.     Plaintiff Hogan sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

793.     Plaintiff Hogan is a Roman Catholic Christian whose religious beliefs regarding the sanctity of life are opposed to the use of vaccines that use, at any stage, abortion-derived cell lines.

794.     Consistent with these sincerely held religious beliefs, Plaintiff Hogan believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

795.     On October 1, 2021, Plaintiff Hogan submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

796.     Defendants then considered Plaintiff Hogan's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

797.     In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

798.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

799.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

800.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Hogan an accommodation for his religious exemption.

801.    On October 18, 2021, Defendants terminated Plaintiff Hogan's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**HHH.  Plaintiff Brady Todhunter**

802.    Plaintiff Todhunter sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

803.    Plaintiff Todhunter is a Christian whose sincerely held religious beliefs affirm that his body belongs to God and must be kept holy in accordance with Scripture. As part of his faith, he believes he is commanded to glorify God through faithful stewardship of his health and body. His religion instructs that nothing should enter the body if doing so would violate one's conscience.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

804.    Consistent with these sincerely held religious beliefs, Plaintiff Todhunter believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

805.    On September 6, 2021, Plaintiff Todhunter submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

806.    Defendants then considered Plaintiff Todhunter's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

807.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

808.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

809.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

SECOND AMENDED COMPLAINT          137          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

810.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Todhunter an accommodation for his religious exemption.

811.    On October 18, 2021, Defendants terminated Plaintiff Todhunter's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

## III.    Plaintiff Craig Henriksen

812.    Plaintiff Henriksen sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

813.    Plaintiff Henriksen is a Christian whose religious beliefs regarding the sanctity of life are opposed to the use of vaccines that use, at any stage, abortion-derived cell lines.

814.    Consistent with these sincerely held religious beliefs, Plaintiff Henriksen believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

815.    On September 17, 2021, Plaintiff Henriksen submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practice, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

816.    Defendants then considered Plaintiff Henriksen's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about the decision.

SECOND AMENDED COMPLAINT          138          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

817. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

818. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

819. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

820. At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Henriksen an accommodation for his religious exemption.

821. Plaintiff Henriksen received notice of separation from Defendants effective October 18, 2021.

822. On or about October 18, 2021, the WSDOT Leave Administrator approved Plaintiff Henriksen's request for protected leave under FMLA/PFML due to a documented medical condition.

823. Plaintiff Henriksen leave approval was granted on October 18, 2021, and his began effective October 19, 2021.

SECOND AMENDED COMPLAINT          139          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

824.   As a result of this leave approval, Plaintiff Henriksen's separation notice was rescinded.

825.   On March 31, 2022, Defendants terminated Plaintiff Henriksen's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**JJJ.   Plaintiff Gabriel Newman**

826.   Plaintiff Newman sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

827.   Plaintiff Newman is a Christian who believes that the body is the temple of the Holy Spirit, and one must be very selective about what products are put into one's body.

828.   Consistent with these sincerely held religious beliefs, Plaintiff Newman believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

829.   On September 9, 2021, Plaintiff Newman submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

830.   Defendants then considered Plaintiff Newman's request for a religious exemption, determined he sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

SECOND AMENDED COMPLAINT                    140        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

831. In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

832. The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

833. Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

834. Plaintiff Newman submitted a Reassignment Request From on or about September 23, 2021.

835. Initially, Defendants did offer Plaintiff Newman reassignment to a full-time Transportation IT Data Management Journey role on or about October 1, 2021.

836. However, on October 14. 2021, the reassignment letter was rescinded because "[u]nfortunately, the position you were offered has a higher salary range than your current classification level at the IT Customer Support- Journey level."

837. Defendants were unable to identify any other vacancies to replace the one offered and initiated the separation process

SECOND AMENDED COMPLAINT                    141         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                              720 Seneca Street, Ste. 107, No. 393
                                                              Seattle, WA 98101
                                                              (206) 799-4221

838.    On October 18, 2021, Defendants terminated Plaintiff Newman's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**KKK. Plaintiff LaVorn Cheth**

839.    Plaintiff Cheth sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

840.    Plaintiff Cheth is a Christian who holds a sincere religious belief that his physical body is a holy temple of the Lord Christ and Savior, and the dwelling place of God. As part of his faith, he believes he has a sacred responsibility to honor and protect his body in accordance with Scripture and his conscience before God. Based on this belief, Plaintiff Cheth cannot in good conscience accept any substance, including the COVID-19 vaccine, that he views as violating this religious duty. For the past 15 years, he has practiced this belief, which also includes objections to other vaccines, prescription medications, and pharmaceutical treatments. Instead, he relies on God-given natural remedies rooted in the elements of the natural world. Plaintiff Cheth has never received a vaccination in his life, in adherence to these religious convictions.

841.    Consistent with these sincerely held religious beliefs, Plaintiff Cheth believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

842.    On August 26, 2021, Plaintiff Cheth submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

843.    Defendants then considered Plaintiff Cheth's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

844.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

845.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

846.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

847.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Cheth an accommodation for his religious exemption.

848.    On October 18, 2021, Defendants terminated Plaintiff Cheth's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

SECOND AMENDED COMPLAINT              143          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**LLL.  Plaintiff Miroslav Tsanev**

849.    Plaintiff Tsanev sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

850.    Plaintiff Tsanev accepted Yeshua as his personal Savior in 1985 after having previously heard the Gospel. This started an entire series of events that pointed him in an entirely new, and better direction, in his life. He never regretted the decision and has embraced the teachings of Yeshua in all aspects of his life and works daily to become a better Christian disciple, reflecting Christ in all aspects of his life. He believed the COVID-19 vaccine would harm his body and he believed his walk with Christ and the Holy Spirit were prompting him to decline any association with it.

851.    Consistent with these sincerely held religious beliefs, Plaintiff Tsanev believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

852.    On September 3, 2021, Plaintiff Tsanev submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

853.    Defendants then considered Plaintiff Tsanev's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

854.    In the same notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic*) the public."

855.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

856.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

857.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Tsanev an accommodation for his religious exemption.

858.    Plaintiff Tsanev submitted a Reassignment Request From on or about September 29, 2021.

859.    On or about October 11, 2021, Plaintiff Tsanev was told that he was not matched to a reassignment position.

860.    Plaintiff Tsanev also applied for a medical/disability exemption on or about October 15, 2021.

861.    Plaintiff Tsanev's medical/disability exemption was approved, but accommodation was denied.

SECOND AMENDED COMPLAINT           145        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

862. Prior to the mandate, from June 2021 to October 18, 2021, Plaintiff Tsanev was working remotely.

863. On October 18, 2021, Defendants terminated Plaintiff Tsarnev's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

**MMM.    Plaintiff Shaun Bukovnik**

864. Plaintiff Bukovnik sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

865. Plaintiff Bukovnik is a Bible-believing Christian who has held this faith since a small child. He has spent his entire life fully engaged in church attendance, including serving as part of the Praise and Worship Team, as both singer and guitarist, as well as active in other church leadership. He objects strongly to the injection of fetal stem cells into his body. He also believes this injection is tantamount to cannibalism; since he was created in the image of God, this act would alter his God-given genetic coding.

866. Consistent with these sincerely held religious beliefs, Plaintiff Bukovnik believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

867. On October 15, 2021, Plaintiff Bukovnik submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            146        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

868.    Defendants acknowledged receipt of Plaintiff' Bukovnik's request for a religious exemption through automatic email, but they neither accepted nor denied Plaintiff Bukovnik's request for a religious exemption. He received no answer and was terminated on or about October 18, 2021.

869.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Bukovnik an accommodation for his religious exemption.

870.    On October 18, 2021, Defendants terminated Plaintiff Bukovnik's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

NNN.  **Plaintiff Robert Covington**

871.    Plaintiff Covington sincerely held a religious belief that conflicted with his ability to comply with the Vaccine Requirement.

872.    Plaintiff Covington came to his Catholic faith approximately 15 years ago. He believes that a developing fetus in the womb was created by God and is a life that deserves to be protected. He also understood cell lines for the vaccine were derived from abortions and that utilization of those vaccines violates the Catholic teaching to respect the dead (Catechism of the Catholic Church (2300)). His faith is deeply held and demands that he honor the obligation to protect the unborn, a beautiful and sacred formation of a person by God in the womb.

873.    Consistent with these sincerely held religious beliefs, Plaintiff Covington believed that he could not be injected with a COVID-19 vaccine. Accordingly, Plaintiff could not, in good conscience, comply with the Vaccine Requirement.

874.    On January 12, 2022, Plaintiff Covington submitted a religious exemption request form that notified the Defendants about his sincerely held religious beliefs, practices, and observances and how they conflicted with his ability to comply with the Vaccine Requirement.

875.    Subsequently, Defendants requested additional information from Plaintiff Covington regarding his religious belief and how they conflicted with the Vaccine Requirement.

876.    On January 18, 2022, Plaintiff Covington complied with Defendants' request and provided the supplemental information about his sincerely held religious beliefs and how they conflicted with the Vaccine Requirement.

877.    Defendants then considered Plaintiff Covington's request for a religious exemption, determined he sincerely held religious beliefs that conflicted with his ability to comply with the Vaccine Requirement, granted the exemption from the Vaccine Requirement, and notified him about their decision.

878.    Two days later from the date of the notice, and without further input from the Plaintiff regarding possible accommodations to his religious beliefs, practices, and observances, Defendants determined they could not accommodate Plaintiff's religious beliefs in his current position because "the essential functions of your position require unavoidable and/or unpredictable interactions with others in the workplace and/or with members [of] (*sic)* the public."

879.    The only possible accommodation Defendants would consider was the possibility of reassignment to a currently funded, equal or less paying, available job that had no job duty that would require unavoidable and/or unpredictable interactions with co-workers or the public, and that Plaintiff was qualified to perform.

SECOND AMENDED COMPLAINT                148        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

880.    Defendants warned, however, that reassignment positions were limited and there was no guarantee that any such job was available.

881.    At all times material to the claims asserted in this Second Amended Complaint, there were no reassignment possibilities that met Defendants' reassignment criteria. Accordingly, no Defendant offered Plaintiff Covington an accommodation for his religious exemption.

882.    On January 27, 2021, Defendants terminated Plaintiff Covington's continued public employment without his consent for not complying with the Vaccine Requirement and because his religious exemption was not accommodated.

883.    Five Hundred Seventy Two (572) state employees who worked for WSDOT applied for a religious exemption from the Vaccine Requirement. The outcome for these applications were:

884.    Eleven (11) exemptions requests were withdrawn because the applicant abandoned their religion and complied with the Vaccine Requirement;

885.    One hundred four (104) religious exemption requests were denied; and

886.    Four hundred fifty seven (457) religious exemption requests, including Plaintiffs, were granted, and each applicant whose exemption request was granted, including each Plaintiff, was notified that their religious exemption request was granted and they were exempt from having to comply with the Vaccine Requirement because they sincerely held a religious belief that conflicted with their ability to comply with it.

887.    The accommodation outcomes for the religious exempt employees were:

888.    One (1) religious exempt employee withdrew from the accommodation process;

SECOND AMENDED COMPLAINT          149          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

889.   Fifty-Two (52) religious exempt employees (11%) were accommodated; and

890.   Four hundred Three (403) religious exempt employees (89%), including each Plaintiff, were refused accommodation.

891.   On the other hand, 162 State employees who worked for WSDOT requested secular medical exemptions from the Vaccinate Requirement. The outcome for these applications were:

892.   Three (3) secular medical exemption requests were withdrawn; and

893.   One Hundred Fifty-Nine (159) secular medical exemption requests were granted.

894.   The accommodation results for secular medical exempt employees were: Twenty-Seven (27) secular medical exempt employees (18%) withdrew their accommodation requests.

895.   One Hundred Twenty-Two (122) secular medical exempt employees were accommodated; and

896.   Ten (10) secular medical exempt employees were not accommodated.

897.   The State justified it imposing the Vaccine Requirement on all State workers based on its interest in stemming COVID-19's spread.

898.   There was no difference in risk to the State's claimed justification for imposing the Vaccine Requirement between unvaccinated workers who were religious exempt and those who were secular medical exempt. Both classes of unvaccinated workers posed the same risk of

SECOND AMENDED COMPLAINT          150          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

becoming infected with or transmitting COVID-19 and of suffering severe adverse health consequences, including death.

899.    Unvaccinated secularly exempt WSDOT employees were similarly situated to the unvaccinated religiously exempt WSDOT employees because they each were unvaccinated, required to perform the same public-facing essential job functions, and, thus, posed the same perceived risk of becoming infected and transmitting the virus.

900.    OFM's guidance provided:

901.    Each executive branch State agency would make exemption and accommodation decisions for the State employees who worked at each agency.

    a.   Any agency decision as to whether to accommodate an exempt State employee who worked for that agency was to be based on the most current medical information.

    b.   Any agency decision on whether to accommodate an exempt State employee who worked for that agency was to consider the likelihood that the harm that an unvaccinated employee continuing their public employment would occur.

    c.   Any agency decision on whether to accommodate an exempt State employee who worked for that agency was to be based on the most current medical information.

    d.   Any agency decision to accommodate an exempt State employee who worked for that agency was to be reviewed no less frequently than every 60 days.

902.    Neither the State nor any State agency, including WSDOT, promulgated any generally applicable rule regarding the Vaccine Requirement and any exemption or

accommodation decision making and in accordance with the rule-making provisions in Washington's Administrative Procedures Act, Ch. 34.05 RCW

903. WSDOT did not follow the Guidance because the most current medical information at the time Defendants were making their accommodation decisions showed that vaccine efficacy was decreasing at an increasing rate; the difference between a vaccinated and unvaccinated individual contracting COVID was narrowing at an increasing rate; natural immunity was equally or more effective than vaccine immunity at preventing an individual from contracting or transmitting COVID-19; and breakthrough infections amongst unvaccinated individuals was increasing at an increasing rate.

904. Taken together, the most current medical information about COVID-19 and COVID-19 Vaccines was that the primary series of any COVID-19 Vaccines was minimally effective at preventing an individual from contracting and transmitting COVID-19. This result was born true by a CDC report that it published in August 2022 that analyzed data regarding COVID-19 infections during the time the Defendants made accommodation decisions for the exempt State employees who worked for WSDOT.

905. The Policies and Procedures and Guidelines resulted in numerous unanticipated losses of labor performed by State employees who worked for WSDOT.

906. The State, through WSDOT, performs public duties for the persons within the State.

907. The loss of labor resulting from the Vaccine Requirement, the Policies and Procedures and the Guidelines detrimentally impacted the State's ability to perform its public duties that it historically performed a burden.

908.    To replace the loss of labor resulting from the Vaccine Requirement, the Policies and Procedures and the Guidelines, the State hired contractors to supply the labor that had been performed by unaccommodated exempt State employees who it terminated from their continued public employment.

909.    Pursuant to Proclamation 24-14.1 and 24-14.2, which were operative when the State made the accommodation decisions for the Plaintiffs, contractors, unlike State employees, did not have to be show proof of vaccination to perform services for the State or WSDOT. Instead, each agency, including WSDOT, could elect to have contractors attest that they (if the contractor performed the services) or their employees (if a business entity used its employees to perform the services) were _**either**_ injected with the primary series of a COVID-19 Vaccine or were exempted _**by the contractor**_ from the Vaccine Requirement and accommodated _**by the contractor**_.

910.    As a result, the Vaccine Requirement is underinclusive to protect against the harm for which the State justified the Vaccine Requirement.

911.    To be sure, the State refused to accommodate Plaintiff Faber's religious beliefs, practices and observances and terminated her continued public employment. Plaintiff Faber had provided labor to WSDOT in an in-office capacity. After the State terminated her continued public employment, Plaintiff Faber sought work and in or about December 2021, was hired by Granite Construction. Granite Construction contracted with the State and provided services to WSDOT. To fulfill its contract with the State, Granite Construction hired Plaintiff Faber, accommodated her religious exemption, and supplied her labor to the State and WSDOT. Plaintiff Faber performed substantially similar services for WSDOT on behalf of Granite Construction as she did for WSDOT prior to being terminated.

SECOND AMENDED COMPLAINT                153         **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

912.   To be sure, the State refused to accommodate Plaintiff Brown's religious beliefs, practices, and observances and terminated his continued public employment. Plaintiff Brown had served as a Design Construction Team Leader for WSDOT. After the State terminated his continued public employment, Plaintiff Brown sought work and, on July 18, 2022, was hired by Granite Construction. Granite Construction contracted with the State and provided services to WSDOT. To fulfill its contract with the State, Granite Construction hired Plaintiff Brown, accommodated his religious exemption, and supplied his labor to the State and WSDOT. Plaintiff Brown performed substantially similar services for WSDOT on behalf of Granite Construction as he did for WSDOT prior to being terminated.

913.   To be sure, the State refused to accommodate Plaintiff Punch's religious beliefs, practices, and observances and terminated her continued public employment. Plaintiff Punch had worked 14.5 years with WSDOT as a Construction Inspector and CAD drafter. After the State terminated her continued public employment, Plaintiff Punch sought work and was hired as a consultant inspector by Trans Tech (now David Evans & Associates). Trans Tech contracted with the State and provided inspection services to WSDOT. To fulfill its contracts with the State, Trans Tech hired Plaintiff Punch, accommodated her religious exemption, and supplied her labor to WSDOT. In this role, Plaintiff Punch inspected WSDOT projects, wore a WSDOT safety vest and hard hat, and even drove a WSDOT vehicle. Plaintiff Punch performed substantially similar services for WSDOT on behalf of Trans Tech as she did for WSDOT prior to being terminated.

914.   To be sure, the State refused to accommodate Plaintiff Crawford's religious beliefs, practices, and observances and terminated her continued public employment. Plaintiff Crawford was WSDOT's Stormwater Branch Manager and was the agency's primary point of contact on newly published research linking roadway runoff to coho salmon mortality. After the

State terminated her continued public employment, Plaintiff Punch sought work and was hired as a consultant inspector by Trans Tech (now David Evans & Associates). Trans Tech contracted with the State and provided inspection services to WSDOT. To fulfill its contracts with the State, Trans Tech hired Plaintiff Punch, accommodated her religious exemption, and supplied her labor to WSDOT. Due in significant part to her expertise, WSDOT secured $500 million in legislative funding for stormwater retrofit projects. After her termination, Plaintiff Crawford sought work and, in July 2022, was hired by Jacobs Engineering. Jacobs Engineering contracted with the State and provided services to WSDOT. To fulfill its contracts with the State, Jacobs Engineering hired Plaintiff Crawford, accommodated her religious exemption, and supplied her labor to WSDOT. Plaintiff Crawford continued to work on WSDOT stormwater projects, billing her time to WSDOT, and performing substantially similar services for WSDOT on behalf of Jacobs Engineering as she did for WSDOT prior to being terminated.

915. Based on internal WSDOT communications, WSDOT knew, and it was discussed that contractors were able to select their own exemptions and accommodations and that issues would arise from the dramatic difference in accommodation that would inevitably occur, such as use of PPE and infrequent testing by contractors, which was not afforded to employees.

916. Based on their Collective Bargaining Agreement, their course of dealing with WSDOT, and their statutory and other rights, each Plaintiff reasonably believed they were not employees at will and had a property right to continued public employment unless they were terminated for cause.

917. Neither the State nor any individual Defendant permitted an interactive process with a Plaintiff between the time they granted a Plaintiff their religious exemption and the time

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

they determined that the Plaintiff could not be accommodated in their current position. The State and the individual Defendants, therefore, rejected the very notion of accommodating a Plaintiff in their current position.

918.    Neither the State nor any individual Defendant offered a Plaintiff an accommodation for their religion.

919.    Each Plaintiff requested alternate reasonable accommodations for their continued public employment. These alternate reasonable accommodations included considering natural immunity, frequent COVID-19 testing, isolation if an employee tested positive for COVID, masking, and social distancing, but the State and the individual Defendants rejected the very notion of any one or more of the alternative accommodations a Plaintiff proposed.

920.    Based on the most current medical information available, each alternative accommodation proposed by a Plaintiff would have been equally or more effective at preventing COVID-19 infection and transmission as did the Vaccine Requirement.

921.    Each Plaintiff requested less restrictive alternatives than terminating their continued public employment like administrative leave without pay until the pandemic subsided or the availability of a different vaccine that did not conflict with their sincerely held religious beliefs.

922.    Neither the State nor any individual Defendant imposed, or sought to impose, the least restrictive accommodation or alternative that could equally serve the State's interest in stemming COVID-19's spread,

SECOND AMENDED COMPLAINT          156          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

923.    Defendants did not allow any Plaintiff a meaningful opportunity to contest Defendants' decision to not accommodate them prior to terminating each Plaintiff's continued public employment.

924.    Specifically, Defendants did not permit any Plaintiff an opportunity to present rebuttal affidavits or declarations contesting the bases upon which Defendants made their accommodation decision.

925.    Each Plaintiff properly submitted a Notice of Tort Claim and allowed sixty days to expire prior to each Plaintiff commencing this action.

926.    Each Plaintiff were not permitted to administratively appeal the accommodation decision or decision to terminate their public employment and were not permitted a post-deprivation evidentiary hearing after each of them was terminated.

927.    Defendants did not offer any Plaintiff a meaningful post-deprivation hearing regarding WSDOT's accommodation decision and involuntarily terminated each Plaintiff's continued public employment.

### III.    FIRST CAUSE OF ACTION — WLAD CLAIM FOR BREACHING THE EMPLOYER'S POSITIVE DUTY TO ACCOMMODATE AN EMPLOYEE'S RELIGION

928.    Plaintiffs reallege the foregoing allegations of this Complaint.

929.    Defendants violated WLAD by failing their positive duties as Employer to accommodate each Plaintiff's creed, which includes their religion.

930.    Each Plaintiff sincerely held a religious belief that conflicted with their ability to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            157        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

931.    Each Plaintiff notified the Defendants that he/she/they sincerely held a religious belief and that it conflicted with his/her/their ability to comply with the Vaccine Requirement.

932.    Defendants actually or constructively terminated each Plaintiff's continued public employment because he/she/they did not comply with the Vaccine Requirement.

933.    No Plaintiff was offered a reasonable accommodation for their religion prior to their continued public employment being terminated.

934.    Accommodating each Plaintiff's religion would not have caused the State an undue hardship.

935.    The Defendants rejected the very notion of accommodating a Plaintiff.

936.    Defendants violated WLAD by failing to reasonably accommodate each Plaintiff's religious exemption.

937.    Each Plaintiff is entitled to be awarded their reasonable attorney fees and expanded costs as a prevailing party under WLAD.

938.    Due to Defendants' actions, each Plaintiff found it necessary to hire the services of their attorneys and have agreed to pay them a reasonable fee therefore.

## IV.    SECOND CAUSE OF ACTION – WLAD DISPARATE IMPACT

939.    Plaintiffs reallege the prior allegations of this Complaint.

940.    The Vaccine Requirement, Policies and Procedures, and Guidelines caused the terminations of continued public employment to fall more harshly on Plaintiff's and other religious exempt State employees who worked for WSDOT.

941. The difference in terminations of religious exempt State employees who worked for WSDOT and terminations of their secular medical exempt counterparts was so disproportionate that it could not have resulted by coincidence or chance.

942. Defendants cannot offer a plausible reason to account for the disproportionately greater terminations of religious exempt State employees who worked for WSDOT

943. Defendants, therefore, violated RCW 49.60.180 by engaging in discriminatory employment practices.

944. Each Plaintiff is entitled to be awarded their reasonable attorney fees and expanded costs as a prevailing party under WLAD.

945. Due to Defendants' actions, each Plaintiff found it necessary to hire the services of their attorneys and have agreed to pay them a reasonable fee therefore.

## V.    THIRD CAUSE OF ACTION – WLAD INTENTIONAL DISPARATE TREATMENT DISCRIMINATION

946. Plaintiffs reallege the prior allegations in this Complaint.

947. Plaintiffs were unvaccinated WSDOT employees who were religiously exempt from having to become fully vaccinated.

948. Plaintiffs were members of a protected class based on their creed or religion.

949. The Defendants treated Plaintiffs and other religious exempt State employees who worked for WSDOT differently and less favorably than secular medical exempt employees. Specifically, the Defendants preferred to accommodate secular medical exempt employees that worked for WSDOT and, therefore, did not terminate their continued public employment and

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

preferred to terminate and not accommodate religious exempt State employees who worked for WSDOT.

950. Both secular medical exempt employees and religious exempt employees were unvaccinated and presented the same risk of harm occurring that the State justified the Vaccine Requirement upon.

951. The only difference between the unvaccinated Plaintiffs and other religious exempt State employees who worked for WSDOT and the unvaccinated secularly exempt employees who worked for DSHS was the former was exempt based on their creed (religion) and the latter was exempt based on secular reasons.

952. There was no difference in direct threat, likelihood of harm occurring, or risk of COVID-19 contagion, transmission, serious health consequences, or death that justified disparate treatment between the religious exempt State employees that worked for WSDOT and the secular medical exempt employees who worked for WSDOT.

953. The services Plaintiffs and the other religious exempt State employees who worked for WSDOT were performed by individuals who were not required to comply with the Vaccine Requirement.

954. The substantial motivation for the disparate treatment alleged herein was unlawful discrimination based on creed or religion.

955. There is no legitimate nondiscriminatory reason to treat religious exempt State employees who worked for WSDOT differently than secular medical exempt employees that worked for WSDOT.

956.    Any legitimate discriminatory reason that a Defendant may offer to justify the disparate treatment alleged herein is a pretext for the Defendants' true substantially motivating reason, which was unlawful discrimination. Plaintiffs were asserting fundamental rights to Free Exercise that are protected by the Free Exercise Clause in the United States Constitution's First Amendment that is made applicable to the State by the Fourteenth Amendment to the United States Constitution.

957.    Defendants violated WLAD's prohibition against discrimination based on creed or religion.

958.    Each Plaintiff is entitled to be awarded their reasonable attorney fees and expanded costs as a prevailing party under WLAD.

959.    Due to Defendants' actions, each Plaintiff found it necessary to hire the services of their attorneys and have agreed to pay them a reasonable fee therefore.

## VI.    FOURTH CAUSE OF ACTION – STATE TORT ACTION FOR WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF THE STATE'S PUBLIC POLICY

960.    Plaintiffs reallege the prior allegations of this Complaint.

961.    Defendants wrongfully terminated each Plaintiff's continued public employment in violation of this State's public policy.

962.    Washington law recognizes a private right of action for tort damages when employers terminate their employee's employment for reasons that are against Washington's stated public policy.

963.    Washington's stated public policy is determined by Washington's State Constitution, its statutes, and its Supreme Court's binding judicial decisions.

SECOND AMENDED COMPLAINT                161        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

964.    Moreover, the Washington Constitution, Article I, §2, expressly acknowledges the United States Constitution is the supreme law of the land. Accordingly, binding decisions from the United States Supreme Court interpreting and construing the United States Constitution are also Washington's public policy.

965.    The Washington State Constitution, Article I, §11, protects each Plaintiff from State interference with their right to freely exercise their sincerely held religious beliefs that is not narrowly tailored to serve only the State's compelling interests.

966.    The Washington State Constitution's free exercise clause provides equal or greater protection to each Plaintiff than the Free Exercise Clause in the United States Constitution's First Amendment, which is made applicable to Washington State by the Fourteenth Amendment to the United States Constitution.

967.    The Washington State Constitution, Article I §7, protects each Plaintiff from state interference with their personal autonomy in making health care decisions for themselves.

968.    At the time Defendants made their decision to not accommodate any Plaintiff's religious exemption, the Washington State Supreme Court had long decided by binding judicial decision that each of the foregoing rights are fundamental, must withstand strict scrutiny, and needed to be narrowly tailored to serve only the State's compelling interests.

969.    Moreover, at this time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action infringing on Free Exercise rights was not generally applicable if there was a mechanism for the State to make individualized decisions amongst similarly situated persons as to who would be subject to the State action and who would not be subject to the State action.

SECOND AMENDED COMPLAINT                  162          **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                        720 Seneca Street, Ste. 107, No. 393
                                                        Seattle, WA 98101
                                                        (206) 799-4221

970.    In this case, it was clear to any State official, including Defendant Scarton, that the WSDOT official policy she created, promulgated and that WSDOT used was not generally applicable to all unvaccinated WSDOT employees because it provided a mechanism for Defendants to make individualized ad hoc determinations amongst its unvaccinated employees, as to those who would be accommodated and their public employment continued and those who would not be accommodated and their continued public employment terminated.

971.    At the time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action infringing upon Free Exercise rights was not generally applicable if it treated religious concerns differently and less favorably than secular concerns.

972.    In this case, Defendants significant discretion was used to treat religious exempt State employees differently and less favorably than they bestowed upon themselves to make individualized accommodation decisions that treated WSDOT's unvaccinated religiously exempt employees differently and less favorably than the way it treated its unvaccinated secularly exempt employees.

973.    At that time, the United States Supreme Court had decided by a series of binding majority decisions in late 2020 through June 2021 that State action that was not generally applicable and infringed upon Free Exercise rights had to withstand strict scrutiny and be narrowly tailored to serve only the State's compelling interests.

974.    At this time, the Washington State Supreme Court had long decided that the Washington Constitution, Article I, §7 protected each Plaintiff's right to medical and bodily autonomy and prohibited the State from mandating unwanted medical treatment.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

975.   Despite the foregoing provisions in the Washington State and the binding judicial decisions of the Washington State Supreme Court, Defendants committed the acts complained of in this Complaint.

976.   After each Plaintiff received notice that they may be subject to having their continued public employment terminated by Defendants if they did not begin the process of becoming fully vaccinated on October 18, 2021, each Plaintiff discerned for themselves no earlier than October 18, 2021, to not start the process of becoming fully vaccinated and face the prospect of having Defendants not grant them any religious accommodation or utilize a less restrictive alternative than terminating their continued public employment.

977.   Up until and including October 18, 2021, each Plaintiff themselves, or through one of them who represented their shared interests, attempted to engage the Defendants in an interactive process regarding reasonable accommodations or less restrictive alternatives.

978.   Despite Plaintiffs' good faith and sincere efforts to engage Defendants in that interactive process and Defendants tepid response, Defendants decided to not provide any religious accommodation to any Plaintiff, not to use any less restrictive alternative and took the penultimate adverse employment action against each Plaintiff, which was terminating their continued public employment effective on October 19, 2021.

979.   Defendants' decisions were motivated by reasons that contravened clear mandates of public policy and infringed on each Plaintiff's ability and insistence to exercise their legal rights and privileges.

980.   Defendants' policy-linked conduct was a significant and substantially motivating factor in their October 18, 2021, decisions.

SECOND AMENDED COMPLAINT                    164        **ARNOLD JACOBOWITZ & ALVARADO PLLC**
                                                            720 Seneca Street, Ste. 107, No. 393
                                                            Seattle, WA 98101
                                                            (206) 799-4221

## VII. FIFTH CAUSE OF ACTION – STATE LAW PRIVATE RIGHT OF ACTION FOR INVASION OF PRIVACY

981. Plaintiffs reallege the prior allegations in this complaint.

982. The Washington State Constitution, Article I, § 7, provides "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

983. Washington recognizes a private right of tort action for violations of privacy.

984. A person's privacy includes both medical and bodily autonomy.

985. Bodily autonomy includes being free from unwanted bodily intrusions including injections.

986. Unwanted injections are a medical battery.

987. Medical autonomy includes the right to make one's own health care decisions and to be free from unwanted medical treatments.

988. The Vaccine was not a sterilizing vaccine and did not provide vaccine immunity from COVID-19 infection or reduce transmission risk by infected individuals.

989. To the extent a COVID-19 Vaccine reduced the chance an individual infected with COVID-19 from developing serious adverse health consequences, hospitalizations, or death, it was a medical treatment.

990. Article I, §7 of the Washington Constitution prohibits the State from requiring individuals to undergo unwanted medical treatment.

991. Defendants violated each Plaintiff's rights to privacy when they denied each of them a reasonable accommodation and required them to comply with the Vaccine Requirement.

SECOND AMENDED COMPLAINT            165            **ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

992.    As a direct and proximate result of Defendants' actions each Plaintiff has suffered harm and injury to their privacy and economic damages

993.    Plaintiffs have also suffered attorney fees and costs as special damages caused by Defendants invading their privacy.

### VIII.    SIXTH CAUSE OF ACTION FOR ONLY DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF OF REINSTATEMENT

994.    Plaintiffs reallege the prior allegations in this Complaint.

995.    All the acts of Defendants were conducted by them under color of state law.

996.    The U.S. Constitution's First Amendment's Establishment Clause and Washington State Constitution Art. I, §11 forbid the State from establishing a religion.

997.    The U.S. Constitution's First Amendment and the Washington State Constitution, Art. I, §11 require the State allow individuals to freely exercise their religion.

998.    The U.S. Constitution's Fourteenth Amendment requires the State to guarantee an individual procedural due process prior to being deprived a property right.

999.    Individual Defendants Scarton and Flaig deprived each Plaintiff of their rights under the aforementioned provisions in the U.S. and Washington State Constitutions.

1000.   Procedural due process requires the State to each individual it employs who a pre-deprivation opportunity to present rebuttal declarations or affidavits and an opportunity to tell their side of the story prior to them being deprived of a property right to continued public employment.

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1001. Procedural due process also requires the State to allow a state employee who is so deprived a full evidentiary hearing post-termination to contest their termination. At either hearing the public employee is entitled to not only contest the grounds for termination but also whether termination is appropriate even if the grounds do exist.

1002. The State must guarantee procedural due process to any State employee who reasonably believes they have a property right to continued public employment.

1003. Individual Defendants Scarton and Flaig violated the U.S. and Washington State Constitution's Establishment Clause by preferring some religious beliefs over others when making accommodation decisions.

1004. Individual Defendants Scarton and Flaig violated the U.S. and Washington State Constitution's Free Exercise Clause because they infringed on each Plaintiff's free exercise rights in a manner that was neither operationally neutral or generally applicable because it created a mechanism with sufficient discretion for State officials to make individualized ad hoc accommodation and termination decisions and treated religious exempt State employees differently than secular medical exempt employees.

1005. Individual Defendants Scarton and Flaig violated each Plaintiff's rights to be guaranteed Procedural Due Process when they were not accommodated and terminated.

1006. Defendants' Scarton's and Flaig's acts and omissions alleged in this Second Amended Complaint caused each Plaintiff to be wrongfully denied accommodation for their religion and terminated from their continued public employment.

1007. Each Plaintiff suffered harm, injury and affront to their dignity by losing their livelihood. This harm and injury are irreparable.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

1008. Prospective injunctive relief of reinstatement will discontinue the continuing emotional distress, mental anguish and affront to each Plaintiff's dignity that was caused by these Defendants' acts and omissions.

1009. On July 31, 2025, the law on prospective injunctive relief was clarified and changed by the Ninth Circuit Court of Appeals *en banc*, so that prior decisions between these parties regarding the same nucleus of operative facts should not be the law of the case from which subsequent decisions should depart.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, request the Court:

1.      Grant prospective injunctive relief of reinstatement against Individual Defendants Scarton and Flaig in their official capacities only requiring them to reinstate each Plaintiff to their former State employment.

2.      Enter judgment against the State and Individual Defendants Scarton and Flaig in their personal capacities, jointly and severally as Employers for their WLAD violations.

3.      Enter Judgment against the State for the tort of unlawful termination in violation of public policy.

4.      Award Plaintiffs their reasonable attorney fees and expanded costs pursuant to WLAD, Washington's Equal Access to Justice Act, 42 U.S.C. §1988, and any other statute or recognized ground in equity.

5.      Such further relief that is just and equitable.

///

///

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

DATED this 18th day of September 2025.

**ARNOLD JACOBOWITZ &**
**ALVARADO PLLC**

*s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA No. 45356
Lesley Alvarado, WSBA No. 61465
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@AJAlawyers.com
*Counsel for Plaintiffs*

**THE WESTERN WASHINGTON**
**LAW GROUP, PLLC**

*s/ Dennis McGlothin*
Dennis McGlothin, WSBA No. 28177
10485 Northeast Sixth Street, No. 2620
Bellevue, WA 98004
(425) 728-7296
docs@westwalaw.com
*Counsel for Plaintiffs*